IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUMA BIOTECHNOLOGY, INC. and WYETH LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 21-1338 |
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA AB, and ASTRAZENECA PLC, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| ASTRAZENECA PHARMACEUTICALS LP, and ASTRAZENECA AB, | ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) | |
| PUMA BIOTECHNOLOGY, INC., WYETH LLC, and PFIZER INC. | ) ) ) | |
| Counterclaim-Defendants. | ) ) ) | |

## DEFENDANTS ASTRAZENECA PHARMACEUTICALS LP'S AND ASTRAZENECA AB'S ANSWER AND COUNTERCLAIMS

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca AB (collectively, "AstraZeneca" or "Defendants") hereby answer the Complaint for Patent Infringement ("Complaint") filed by Puma Biotechnology, Inc. and Wyeth, LLC (collectively, "Plaintiffs"). To the extent the Complaint contains allegations

1

against AstraZeneca PLC through the use of the term "Defendants," "AstraZeneca," or otherwise, AstraZeneca Pharmaceuticals LP and AstraZeneca AB respond on their own behalf only and make no response on behalf of AstraZeneca PLC in this action.

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code § 100 et seq., including 35 U.S.C. § 271, for infringement of United States Patent Nos. 10,603,314 ("the '314 patent") and 10,596,162 ("the '162 patent") (collectively, "the patents-in-suit") directed to the treatment of non-small cell lung cancer.

**RESPONSE:** Defendants admit that the Complaint purports to state a claim for infringement of the patents-in-suit arising under the patent laws of the United States 35 U.S.C. §§ 100, *et seq*. Defendants admit that the Complaint contains allegations purporting to state causes of action for patent infringement of U.S. Patent Nos. 10,603,314 ("the '314 Patent") and 10,596,162 ("the '162 Patent"). Defendants deny the remaining allegations of Paragraph 1.

2.     Plaintiffs seek judgment that Defendants have infringed, and continue to infringe, the patents-in-suit arising out of Defendants' commercial manufacture, use, offer for sale, sale, distribution, and/or importation of osimertinib and Tagrisso® (osimertinib) dosage forms ("Tagrisso® Products") in the United States prior to the expiration of the patents-in-suit.

**RESPONSE:** Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs' Complaint purports to state a request for judgment that Defendants have infringed

the '314 and '162 Patents. Defendants further admit that Plaintiffs' Complaint purports to claim that Defendants' manufacture, use, importation, marketing, sale, and/or offer for sale of Tagrisso® products in or into the United States infringes the '314 and '162 Patents. Defendants deny the remaining allegations of Paragraph 2.

## THE PARTIES

3.    Plaintiff Puma is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 10880 Wilshire Boulevard, Suite 2150, Los Angeles, California 90024. Puma is the exclusive licensee of the patents-in-suit under a license agreement with Wyeth LLC ("Wyeth").

**RESPONSE:** Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 and therefore deny the allegations. Defendants further state that Plaintiff Puma, in filings with the United States Securities and Exchange Commission ("SEC"), has stated that it is an exclusive licensee to patents and patent applications under a license agreement with Pfizer Inc. ("Pfizer") and has submitted redacted versions of a license agreement and amendments between Plaintiff Puma and Pfizer Inc. That redacted license agreement and amendments are attached hereto as Exhibits 1, 2, and 3. Upon information and belief, Plaintiff Puma has not disclosed in any filing with the SEC a license agreement between Plaintiff Puma and Wyeth LLC.

4.    Plaintiff Wyeth is a limited liability company organized and existing under the laws of the State of Delaware with offices at 235 East 42nd Street, New York, NY 10017. Wyeth LLC is a wholly owned subsidiary of Pfizer, Inc. Wyeth is a co-owner of the patents-in-suit.

**RESPONSE:** Defendants lack the knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 and therefore deny the allegations.

5.      On information and belief, Defendant AstraZeneca Pharmaceuticals LP is a limited partnership organized and existing under the laws of the State of Delaware, with a principal place of business at 1800 Concord Pike, P.O. Box 15437, Wilmington, Delaware 19850. On information and belief, AstraZeneca Pharmaceuticals LP is a wholly owned subsidiary of Defendant AstraZeneca PLC, wherein the ownership is held as a partnership interest. *See* AstraZeneca Annual Report and Form 20-F Information 2020 ("2020 Annual Report") at 236–37, available                                                                            at https://www.astrazeneca.com/content/dam/az/Investor_Relations/annual-report-2020/pdf/AstraZeneca_AR_2020.pdf.

**RESPONSE:** Defendants admit the allegations of Paragraph 5.

6.      On information and belief, Defendant AstraZeneca Pharmaceuticals LP is the holder of New Drug Application ("NDA") No. 208065 for Defendants' Tagrisso® Products, including tablets of 40 mg and 80 mg dosage strength, and is a distributor of Defendants' Tagrisso® Products throughout the United States, including in the State of Delaware. *See* Tagrisso® Product Label.

**RESPONSE:** Defendants admit that AstraZeneca Pharmaceuticals LP is the holder of New Drug Application ("NDA") No. 208065 for Tagrisso®, including tablets of 40 mg and 80 mg strength. Defendants further admit that AstraZeneca Pharmaceuticals LP distributes Tagrisso® throughout the United States, including Delaware.

7.      On information and belief, Defendant AstraZeneca Pharmaceuticals LP is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, distributing, and/or importing pharmaceutical products, including the Defendants' Tagrisso® Products, throughout the United

States, including in this Judicial District, through its own actions and through the actions of its agents.

**RESPONSE:** Defendants admit that AstraZeneca Pharmaceuticals LP manufactures, markets, sells, offers for sale, and distributes Tagrisso® throughout the United States, including Delaware. Defendants deny the remaining allegations of Paragraph 7.

8.     On information and belief, Defendant AstraZeneca AB is a public limited liability company organized under the laws of Sweden with its principal place of business at Karlebyhus, Astraallén, Södertälje, S-151 85, Sweden. On information and belief, AstraZeneca AB is a wholly owned subsidiary of Defendant AstraZeneca PLC. On information and belief, the President of AstraZeneca AB serves on the AstraZeneca PLC Senior Executive Team. *See* 2020 Annual Report at 106.

**RESPONSE:** Defendants admit the allegations of Paragraph 8.

9.     On information and belief, Defendant AstraZeneca AB is the European Marketing Authorization Holder for Defendants' Tagrisso® Product, including tablets of 40 mg and 80 mg dosage strength. On information and belief, AstraZeneca AB is in the business of, among other things, manufacturing, promoting, marketing, selling, offering for sale, using, and/or distributing pharmaceutical products, including the Defendants' Tagrisso® Products, throughout the world, including in Europe and in the United States, through its own actions and through the actions of its agents. *See* Center For Drug Evaluation And Research, Application Number 208065Orig1s000, Chemistry Review(s), effective date March 13, 2015, at 10–13, 50–52,         136–138,         and         164,         available         at https://www.accessdata.fda.gov/drugsatfda_docs/nda/2015/208065Orig1s000ChemR.pdf.

**RESPONSE:** Defendants admit that AstraZeneca AB is the European Marketing Authorization Holder for Tagrisso®, including tablets of 40 mg and 80 mg dosage strength. Defendants deny the remaining allegations of Paragraph 9.

10.     On information and belief, Defendant AstraZeneca PLC is a public limited company domiciled in the United Kingdom and having a location at 1 Francis Crick Avenue, Cambridge Biomedical Campus, Cambridge CB2 0AA, United Kingdom. *See* 2020 Annual Report at 288. On information and belief, AstraZeneca PLC, through its 100% ownership of subsidiaries Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB, derived and reported substantial revenue in 2020 from the worldwide sales ($4.328 billion USD) associated with Defendants' Tagrisso® Products, and particularly sales revenue from within the United States ($1.566 billion USD), including in this Judicial District. *See* 2020 Annual Report at 87 and 187.

**RESPONSE:** Defendants admit that the 2020 Annual Report reported $4.328 billion USD in worldwide sales of Tagrisso® and $1.566 billion USD from sales of Tagrisso® within the United States. Defendants further admit that AstraZeneca PLC is a public limited company domiciled in the United Kingdom having a location at 1 Francis Crick Avenue, Cambridge Biomedical Campus, Cambridge CB2 0AA, United Kingdom. Defendants deny the remaining allegations of Paragraph 10.

## JURISDICTION AND VENUE

11.     Plaintiffs incorporate each of the preceding paragraphs 1–10 as if fully set forth herein.

**RESPONSE:** Defendants incorporate in full the responses to paragraph 1–10 as if fully set forth herein.

12.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, including 35 U.S.C. § 271, for infringement of the asserted patents-in-suit.

**RESPONSE:** Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that the Complaint

purports to state a claim for infringement of the patents-in-suit arising under the

patent laws of the United States 35 U.S.C. §§ 100, *et seq*.

13.   This Court has jurisdiction over the subject matter of this action
pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**RESPONSE:** Paragraph 13 states legal conclusions to which no response is

required. To the extent a response is required, Defendants do not contest that this

Court has subject matter jurisdiction over this action.

14.   This Court has personal jurisdiction over AstraZeneca Pharmaceuticals
LP because AstraZeneca Pharmaceuticals LP is a corporation with a principal place
of business in Delaware and has at least one other regular and established place of
business in Delaware.

**RESPONSE:** Paragraph 14 states legal conclusions to which no response is

required. To the extent a response is required, AstraZeneca Pharmaceuticals LP

responds that, solely for purposes of this action and solely for the claims asserted in

the Complaint, it does not contest personal jurisdiction. Defendants deny the

remaining allegations of Paragraph 14.

15.   AstraZeneca Pharmaceuticals LP is also subject to personal jurisdiction
in Delaware because, among other things, upon information and belief, it has
purposely availed itself of the benefits and protections of Delaware's laws such that
it should reasonably anticipate being sued in this Court. On information and belief,
AstraZeneca Pharmaceuticals LP develops, manufactures, imports, markets,
distributes, uses, offers to sell, and/or sells, or causes others to use, promote, market,
offer to sell, or sell pharmaceutical products, including Tagrisso® Products,
throughout the United States, including in the State of Delaware related to Plaintiffs'
claims, and therefore, transacts business within the State of Delaware related to
Plaintiffs' claims, and/or has engaged in systematic and continuous business
contacts within the State of Delaware.

**RESPONSE:** Paragraph 15 states legal conclusions to which no response is required. To the extent a response is required, AstraZeneca Pharmaceuticals LP responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction. Defendants deny the remaining allegations of Paragraph 15.

16.   Upon information and belief, AstraZeneca Pharmaceuticals LP, as the holder of NDA No. 208065 and distributor of Defendants' Tagrisso® Products throughout the United States, including in the State of Delaware, also derives substantial revenue from interstate and/or international commerce, including substantial revenue from pharmaceutical products, including Tagrisso® Products, used and/or consumed or services rendered in the State of Delaware and this Judicial District and that are manufactured and/or distributed by Defendants.

**RESPONSE:** Defendants admit that AstraZeneca Pharmaceuticals LP is the holder of NDA No. 208065 and distributes Tagrisso® products throughout the United States. Defendants further admit that AstraZeneca Pharmaceuticals LP derives revenue from the distribution of Tagrisso® throughout the United States. Defendants deny the remaining allegations of Paragraph 16.

17.   On information and belief, AstraZeneca Pharmaceuticals LP is one of AstraZeneca PLC's principal U.S. trading entities. *See* AstraZeneca Annual Report and Form 20-F Information 2014 ("2014 Annual Report") at 98, available at https://www.astrazeneca.com/content/dam/az/Investor_Relations/annual-reports-homepage/2014-Annual-report-English.pdf.

**RESPONSE:** Defendants admit that AstraZeneca Pharmaceuticals LP is a subsidiary of AstraZeneca PLC. Defendants further admit that AstraZeneca

Pharmaceuticals LP is a trading entity in the United States for AstraZeneca PLC.

Defendants deny the remaining allegations of Paragraph 17.

18.    AstraZeneca Pharmaceuticals LP, in concert with AstraZeneca AB, and under the direct or indirect control of AstraZeneca PLC, has committed acts of infringement and continues to commit such acts in this Judicial District by developing, manufacturing, importing, marketing, distributing, using, offering to sell, and/or selling pharmaceutical products, including Tagrisso® Products, under its NDA No. 208065 in or into this Judicial District, prior to the expiration of the patents-in-suit.

RESPONSE: Defendants deny the allegations of Paragraph 18.

19.    AstraZeneca AB is subject to personal jurisdiction in Delaware because, among other things, AstraZeneca AB purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court. On information and belief, AstraZeneca AB itself, develops, manufactures, imports, markets, distributes, uses, offers to sell, and/or sells, or causes others to use, offer to sell, or sell pharmaceutical products, including Tagrisso® Products, throughout the United States, including in the State of Delaware related to Plaintiffs' claims, and therefore, transacts business within the State of Delaware related to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware. Upon information and belief, AstraZeneca AB also derives substantial revenue from interstate and/or international commerce, including substantial revenue from pharmaceutical products, including Tagrisso® Products, used and/or consumed or services rendered in the State of Delaware and this Judicial District.

RESPONSE: Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, AstraZeneca AB responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction. Defendants deny the remaining allegations of Paragraph 19.

20.    On information and belief, AstraZeneca AB has consented to jurisdiction in Delaware in one or more prior cases arising out of its filing of an action for patent infringement under the provisions of § 271 related to the filing of Abbreviated New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA") and/or it has filed counterclaims in such cases. These actions include cases specifically related to enforcement actions concerning ANDAs concerning generic alternatives to Tagrisso®. *See, e.g., AstraZeneca AB and AstraZeneca Pharmaceuticals LP v. Alembic Pharmaceuticals Limited et al.*, C.A. No: 20-202-RGA (D. Del. Feb. 11, 2020).

**RESPONSE:** Defendants admit that AstraZeneca AB has previously consented to jurisdiction in Delaware in patent infringement actions and has previously filed counterclaims in patent infringement actions in Delaware. Defendants further admit that AstraZeneca AB is a named plaintiff in *AstraZeneca AB and AstraZeneca Pharmaceuticals LP v. Alembic Pharmaceuticals Limited et al.*, C.A. No. 20-202-RGA (D. Del. Feb. 11, 2020). Defendants deny the remaining allegations of Paragraph 20.

21.    Additionally, this Court has personal jurisdiction over AstraZeneca AB because the requirements of Federal Rule of Civil Procedure 4(k)(2)(A) are met since (a) Plaintiffs' claims arise under federal law; (b) AstraZeneca AB is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) AstraZeneca AB has sufficient contacts in the United States as a whole, including, but not limited to, by participating in the preparation of AstraZeneca Pharmaceuticals LP's NDA No. 208065, including drug product manufacturing, quality control testing, drug product release, and stability testing, and/or manufacturing and/or selling pharmaceutical products, including Tagrisso® Products, distributed throughout the United States, including in this Judicial District, such that this Court's exercise of jurisdiction over AstraZeneca AB satisfies due process.

**RESPONSE:** Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, AstraZeneca Pharmaceuticals AB

responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest personal jurisdiction. Defendants deny the remaining allegations of Paragraph 21.

22.     AstraZeneca PLC is subject to personal jurisdiction in Delaware because, among other things, AstraZeneca PLC itself, and through its wholly owned subsidiaries AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB, purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being sued in this Court. On information and belief, AstraZeneca PLC itself, and through its wholly owned subsidiaries AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB, develops, manufactures, imports, markets, distributes, uses, offers to sell, and/or sells pharmaceutical products, including Tagrisso® Products, throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware related to Plaintiffs' claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

**RESPONSE:** Paragraph 22 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 22.

23.     In addition, AstraZeneca PLC is subject to personal jurisdiction in Delaware because, on information and belief, it controls, either directly or indirectly, and dominates AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB, and therefore, the activities of AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB in this jurisdiction are attributed to AstraZeneca PLC. *See* 2020 Annual Report at 236. The AstraZeneca global website presents the company as a single entity and presents the AstraZeneca PLC Board as responsible for setting strategy and policies and monitoring progress toward meeting annual plans of the company, further indicating central control of AstraZeneca PLC over its wholly owned subsidiaries AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB. *See, e.g.*, https://www.astrazeneca.com/ourcompany/leadership.html.

**RESPONSE:** Paragraph 23 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 23.

24.    On information and belief, Defendants regularly do business in Delaware, and their practices have involved placing pharmaceutical products, including Tagrisso® Products, into the stream of commerce for distribution throughout the United States, including in Delaware. On information and belief, Defendants' pharmaceutical products, including Tagrisso® Products, are used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Tagrisso® Products are prescribed by physicians practicing within Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities has a substantial effect within Delaware and constitutes infringement of the patents-in-suit before their expiration.

**RESPONSE:** Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Tagrisso® and other products distributed by AstraZeneca Pharmaceuticals LP are used and/or consumed throughout the United States, including Delaware. Defendants further admit that doctors prescribe, pharmacies dispense, and patients use Tagrisso® in Delaware and that these activities have had the effect of treating disease and improving lives in Delaware. Defendants deny the remaining allegations of Paragraph 24.

25.    AstraZeneca PLC's annual report states that their largest selling product in 2020 was Tagrisso®, of which sales revenue from the United States accounted for $1.566 billion USD, which includes sales in this Judicial District.

**RESPONSE:** Defendants admit that the 2020 annual report states that AstraZeneca PLC derived $1.566 billion USD in sales revenue from sales of Tagrisso® in the United States. Defendants deny the remaining allegations of Paragraph 25.

26.     Additionally, this Court has personal jurisdiction over AstraZeneca PLC because the requirements of Federal Rule of Civil Procedure 4(k)(2)(A) are met since (a) Plaintiffs' claims arise under federal law; (b) AstraZeneca PLC is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) AstraZeneca PLC itself, through its wholly owned subsidiaries AstraZeneca Pharmaceuticals LP and/or AstraZeneca AB, has sufficient contacts in the United States as a whole, including, but not limited to, either directly or indirectly, participating in the preparation of AstraZeneca Pharmaceuticals LP's NDA No. 208065, and/or manufacturing and/or selling pharmaceutical products, including Tagrisso® Products, distributed throughout the United States, including in this Judicial District, such that this Court's exercise of jurisdiction over AstraZeneca PLC satisfies due process.

**RESPONSE:** Paragraph 26 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 26.

27.     On information and belief, Defendants have systematic and continuous contacts with Delaware; have established distribution channels for Tagrisso® Products in Delaware; regularly and continuously conduct business in Delaware, including by selling Tagrisso® Products in Delaware, either directly or indirectly through their subsidiaries, agents, or affiliates; have purposefully availed themselves of the privilege of doing business in Delaware; and derive substantial revenue from the sale of Tagrisso® Products in Delaware.

**RESPONSE:** Paragraph 27 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that AstraZeneca Pharmaceutical LP distributes and sells Tagrisso® in Delaware. Defendants deny the remaining allegations of Paragraph 27.

28.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) as to AstraZeneca Pharmaceuticals LP because AstraZeneca Pharmaceuticals LP resides in Delaware and has a regular and established place of business in Delaware.

**RESPONSE:** Paragraph 28 states legal conclusions to which no response is required. To the extent a response is required, AstraZeneca Pharmaceuticals LP responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest venue. Defendants further admit that AstraZeneca Pharmaceuticals LP has a place of business and employs citizens of the State of Delaware.

29.    Venue is proper in this Court as to AstraZeneca AB because AstraZeneca AB is a foreign entity that may be sued in any judicial district, including in the District of Delaware. 28 U.S.C. § 1391(c)(3); *see also* 28 U.S.C. § 1400(b).

**RESPONSE:** Paragraph 29 states legal conclusions to which no response is required. To the extent a response is required, AstraZeneca AB responds that, solely for purposes of this action and solely for the claims asserted in the Complaint, it does not contest venue. Defendants deny the remaining allegations of Paragraph 29.

30.    Venue is proper in this Court as to AstraZeneca PLC because AstraZeneca PLC is a foreign entity that may be sued in any judicial district, including in the District of Delaware. 28 U.S.C. § 1391(c)(3); *see also* 28 U.S.C. § 1400(b).

**RESPONSE:** Paragraph 30 states legal conclusions to which no response is required. To the extent a response is required, Defendants admit that AstraZeneca

PLC is organized under the laws of England and Wales. Defendants deny the remaining allegations of Paragraph 30.

## FACTUAL BACKGROUND

31.     Non-Small Cell Lung Cancer ("NSCLC") is an epithelial lung cancer and the leading cause of cancer death in the United States, Japan, and Western Europe. Approximately 75 percent of lung cancer cases are categorized as NSCLC.

**RESPONSE:** Defendants admit that Non-Small Cell Lung Cancer ("NSCLC") is an epithelial lung cancer and, according to some reports, constitutes approximately 75% of all lung cancer cases. Defendants also admit that lung cancer is reported to be the leading cause of cancer death in the United States, Japan, and Western Europe. Defendants deny the remaining allegations of Paragraph 31.

32.     In 2003, the FDA approved the compound known as gefitinib (marketed under the tradename IRESSA®) for the treatment of epidermal growth factor receptor (EGFR)-mediated NSCLC in the United States. Soon after, the FDA also approved the compound known as erlotinib (marketed under the tradename TARCEVA®) for treating EGFR-mediated NSCLC in the United States. Both gefitinib and erlotinib are small molecule EGFR Tyrosine Kinase Inhibitors ("TKIs"). Unfortunately, some NSCLC patients treated with gefitinib or erlotinib later were recognized as desensitized or resistant, or never initially responsive to these treatments (together categorized as "gefitinib and/or erlotinib resistant NSCLC").

**RESPONSE:** Defendants admit that FDA approved Iressa® (gefitinib) for the treatment of NSCLC in 2003, pursuant to a New Drug Application submitted by AstraZeneca Pharmaceuticals LP. Defendants also admit that this was the first-ever FDA approval of an EGFR Tyrosine Kinase Inhibitor and represented an important advance in the treatment of NSCLC, saving and improving lives. Gefitinib was

followed by the development and approval of other EGFR TKIs, including erlotinib. Defendants admit that, unfortunately, some NSCLC patients do not respond to gefitinib or erlotinib or stop responding during the course of treatment and that the reasons for this are varied, sometimes unknown, and may involve issues other than resistance. Defendants deny the remaining allegations of Paragraph 32.

33.   The inventors of the patents-in-suit determined that small molecule inhibitors that irreversibly bind to the EGFR tyrosine kinase domain via a covalent bond to cysteine 773 of the EGFR catalytic domain in EGFR ("irreversible EGFR TKIs") are effective in treating cancers like NSCLC that are resistant to gefitinib and/or erlotinib therapy. The inventions arising out of this research are described and claimed in the patents-in-suit: the '314 patent and the '162 patent.

**RESPONSE:** Defendants deny the allegations of Paragraph 33.

34.   Puma is a biopharmaceutical company that focuses on the development and commercialization of products for the treatment of cancer. In 2011, Puma licensed the patent rights for the patents-in-suit from Pfizer and Wyeth to fully develop treatments for cancer, bring approved therapies to market, and deliver them to patients in need. Puma has invested millions of dollars in this endeavor.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 34 and on that basis deny the allegations. Defendants further state that, upon information and believe, Plaintiff Puma has not succeeded in obtaining FDA approval for a treatment for NSCLC and does not market any treatment for NSCLC.

35.   Pursuant to the licensing agreement, Puma is the holder of NDA 208051 for NERLYNX® (neratinib), an intracellular kinase inhibitor that irreversibly binds to EGFR, human epidermal growth factor receptor 2 ("HER2"), and human epidermal growth factor receptor 4 ("HER4"). NERLYNX® was approved on July 17, 2017, by the FDA for use (1) as a single agent for extended

adjuvant treatment of adult patients with early-stage HER2-positive breast cancer, to follow adjuvant trastuzumab based therapy and (2) in combination with capecitabine for the treatment of adult patients with advanced or metastatic HER2-positive breast cancer who have received two or more prior anti-HER2 based regimens in the metastatic setting.

**RESPONSE:** Defendants admit that, according to publicly available information, Nerlynx® (neratinib) is the subject of NDA No. 208051, which was first approved on July 17, 2017. Defendants further admit that Puma purports to be the holder of NDA No. 208051. Defendants deny the remaining allegations of Paragraph 35.

36.     Additionally, Puma is currently in phase 2 clinical trials investigating the use of neratinib in treating EGFR-mutant mediated lung cancers.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 36 and on that basis deny the allegations. Defendants further state that, upon information and belief, Plaintiffs previously sponsored a Phase 2 clinical trial of neratinib in NSCLC patients, including those whose disease progressed after treatment with gefitinib or erlotinib, the trial was completed in 2009, and it failed to show that neratinib was an effective treatment for NSCLC in patients whose disease progressed after treatment with gefitinib or erlotinib.

## THE PATENTS-IN-SUIT

37.     The '314 patent, titled "Method For Treating Gefitinib Resistant Cancer" was duly and lawfully issued on March 31, 2020. Plaintiff Wyeth co-owns, and Plaintiffs Wyeth and Puma are the exclusive licensees of, and together have all the rights to enforce, the '314 patent. The '314 patent is the U.S. national entry of

17

corresponding international application PCT/US2006/003717, filed February 2, 2006. A true and correct copy of the '314 patent is attached hereto as Exhibit A.

**RESPONSE:** Defendants admit that the '314 Patent is entitled "Method for Treating Gefitinib Resistant Cancer" and that an issuance date of March 31, 2020 appears on the face of the '314 Patent. Defendants further admit that Exhibit A purports to be a true and correct copy of the '314 Patent. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 37 and on that basis deny the allegations.

38.    The patents-in-suit are assigned to Wyeth LLC and The General Hospital Corporation ("GHC").

**RESPONSE:** Defendants admit that on the face of the '314 and '162 Patents, Wyeth LLC and The General Hospital Corporation are listed as assignees. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 38 and on that basis deny the allegations.

39.    GHC is a corporation organized and existing under the laws of the State of Massachusetts with its principal office at 55 Fruit Street, Boston, MA 02114. Wyeth LLC is the exclusive licensee of the patents-in-suit under a license agreement with GHC. Under the license, GHC transferred all substantial rights to the patents-in-suit, including the exclusive right to enforce and sub-license those patents, to Wyeth LLC, and the only limited rights retained by GHC relate to their retained research rights to the patents-in-suit.

**RESPONSE:** Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations of Paragraph 39 and on that basis deny the allegations.

40.    The '314 patent claims methods for treating patients with NSCLC that are resistant to gefitinib and/or erlotinib using an irreversible EGFR inhibitor that covalently binds to cysteine 773 residue in the ligand-binding pocket of EGFR. According to the claimed method, the irreversible EGFR inhibitor is administered daily and can be delivered orally. NSCLCs with a T790M EGFR mutation, including those treated with Tagrisso®, are resistant to gefitinib and/or erlotinib treatment.

**RESPONSE:** Paragraph 40 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 40.

41.    The '162 patent, titled "Method For Treating Gefitinib Resistant Cancer" was duly and lawfully issued on March 24, 2020. Plaintiff Wyeth co-owns, and Plaintiffs Wyeth and Puma are the exclusive licensees of, and together have the right to enforce, the '162 patent. A true and correct copy of the '162 patent is attached hereto as Exhibit B.

**RESPONSE:** Defendants admit that the '162 Patent is entitled "Method for Treating Gefitinib Resistant Cancer" and that an issuance date of March 24, 2020 appears on the face of the '162 Patent. Defendants further admit that Exhibit B purports to be a true and correct copy of the '162 Patent. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 41 and on that basis deny the allegations.

42.    The '162 patent claims methods for treating gefitinib and/or erlotinib resistant NSCLC having a T790M EGFR mutation using an irreversible EGFR inhibitor that covalently binds to cysteine 773 of the catalytic domain within the EGFR T790M mutant. According to the claimed method, the irreversible EGFR inhibitor is administered daily with a unit dosage of 2–500 mg. NSCLCs with a T790M EGFR mutation, including those treated with Tagrisso®, are resistant to gefitinib and/or erlotinib treatment.

**RESPONSE:** Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 42.

## THE TAGRISSO® PRODUCT

43.     A decade after publication of the provisional applications that led to the patents-in-suit and disclosure to the public of the inventors' contribution to the relevant field of medicine, on November 13, 2015, the FDA approved Tagrisso® (osimertinib), as an irreversible EGFR inhibitor. Tagrisso® was approved by the FDA under NDA No. 208065 held by Defendant AstraZeneca Pharmaceuticals LP, for the indication of treating patients with metastatic EGFR T790M mutation-positive NSCLC who have progressed on or after EGFR TKI therapy. A copy of the current prescribing information for Tagrisso® (the "Tagrisso® Product Label") is attached hereto as Exhibit C.

**RESPONSE:** Defendants admit that FDA approved Tagrisso® on November 13, 2015, under NDA. No. 208065 held by Defendant AstraZeneca Pharmaceuticals LP. Defendants further admit that Exhibit C is a true and correct copy of the current prescribing information for Tagrisso® and that Tagrisso®'s approved indications are reflected in Plaintiffs' Exhibit C. Defendants deny the remaining allegations of Paragraph 43.

44.     Since November 13, 2015, the Tagrisso® Product has been approved by the FDA to treat metastatic EGFR T790M mutation-positive NSCLC, and AstraZeneca through this Label knowingly and intentionally instructs end users to administer Tagrisso® Products to humans to treat EGFR T790M mutation-positive NSCLC.

**RESPONSE**: Defendants admit that Tagrisso® was approved by FDA in November 2015. A true and correct copy of the originally approved prescribing information for

Tagrisso® is attached as Exhibit A. Defendants admit that Exhibit A reflects the uses

for which Tagrisso® was originally approved. Defendants deny the remaining

allegations of Paragraph 44.

45.     On April 18, 2018, the FDA granted the supplemental approval of
Tagrisso® (osimertinib), under NDA No. 208065/S-008 held by Defendant
AstraZeneca Pharmaceuticals LP, and the Tagrisso® Product Label was amended to
include an indication for first-line treatment of patients with metastatic NSCLC
whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as
detected by an FDA-approved test.

**RESPONSE**: Defendants admit that FDA approved a supplement to the NDA for

Tagrisso® on April 18, 2018. A true and correct copy of the April 2018 revised

prescribing information for Tagrisso® is attached as Exhibit B. Defendants admit

Exhibit B reflects the uses for which Tagrisso® was approved in 2018. Defendants

deny the remaining allegations of Paragraph 45.

46.     On December 18, 2020, the FDA granted the supplemental approval of
Tagrisso® (osimertinib), under NDA No. 208065/S-21 held by Defendant
AstraZeneca Pharmaceuticals LP, and the Tagrisso® Product Label was amended to
include an indication for an adjuvant therapy after tumor resection in adult patients
with NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R
mutations, as detected by an FDA-approved test.

**RESPONSE**: Defendants admit that FDA approved a supplement to the NDA for

Tagrisso® on December 18, 2020. A true and correct copy of the December 2020

revised prescribing information for Tagrisso® is attached as Exhibit C. Defendants

admit that Exhibit C reflects the uses for which Tagrisso® was approved in

December 2020. Defendants deny the remaining allegations of Paragraph 46.

47.     Use of AstraZeneca's Tagrisso® Products according to the Tagrisso® Product Label infringes at least claim 1 of each of the patents-in-suit.

**RESPONSE**: Defendants deny the allegations of Paragraph 47.

## **COUNT I: INFRINGEMENT OF THE '314 PATENT**

48.     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in Paragraphs 1–47.

**RESPONSE:** Defendants incorporate in full the responses to paragraph 1–47 as if fully set forth herein.

49.     The use of Tagrisso® Products to treat patients according to the Tagrisso® Product Label is covered by one or more claims of the '314 patent, including at least claim 1 of the '314 patent, because claim 1 of the '314 patent encompasses treating patients with gefitinib and/or erlotinib resistant NSCLC using an irreversible EGFR TKI.

**RESPONSE**: Defendants deny the allegations of Paragraph 49.

50.     AstraZeneca's commercial manufacture, use, importation, marketing, sale, and/or offer for sale of the Tagrisso® Products, including tablets of 40 mg and 80 mg dosage strength, in or into the United States directly infringes, contributes to the infringement of, and/or actively induces the infringement by others of one or more claims of the '314 patent under 35 U.S.C. § 271(a)–(c).

**RESPONSE**: Defendants deny the allegations of Paragraph 50.

51.     The use of AstraZeneca's Tagrisso® Products by pharmacies, hospitals, clinics, healthcare professionals, and other end users to treat NSCLC patients under the indications specified in the Tagrisso® Product Label directly infringes one or more claims of the '314 patent under 35 U.S.C. § 271(a).

**RESPONSE**: Defendants deny the allegations of Paragraph 51.

52.     On information and belief, AstraZeneca, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Tagrisso® Products to resellers, pharmacies, hospitals, clinics, healthcare

professionals, and other end users. On information and belief, AstraZeneca knowingly and intentionally accompany the Tagrisso® Products with a product label or product insert that includes instructions for using or administering the Tagrisso® Products to treat NSCLC patients which infringes the '314 patent. Accordingly, AstraZeneca induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of the Tagrisso® Products to directly infringe the '314 patent. On information and belief, AstraZeneca encourage acts of direct infringement with knowledge of the '314 patent and knowledge that they are encouraging infringement thereof.

**RESPONSE**: Defendants admit that AstraZeneca Pharmaceuticals LP markets and/or distributes Tagrisso® products in the United States. Defendants deny the remaining allegations of Paragraph 52.

53.   On information and belief, AstraZeneca are actively inducing infringement of the '314 patent. AstraZeneca's activities are done with knowledge of the '314 patent and specific intent to infringe that patent.

**RESPONSE**: Defendants deny the allegations of Paragraph 53.

54.   On information and belief, prior to the '314 patent issuing, AstraZeneca were aware of the corresponding European Patent 1 848 414 B1 (or respectively, the underlying PCT application publication WO 2006/084058), issued April 6, 2011, including the same or similar claims as the '314 patent and having the same owner (Plaintiff Wyeth LLC) and exclusive licensee (Plaintiff Puma). Two patents that are listed in the FDA Orange Book for Tagrisso®, US 8946235 and US 9732058, recite the inventors' WO 2006/084058 as important prior art. On information and belief, as of March 31, 2020, the date of issuance of the '314 patent, AstraZeneca knew that a U.S. patent containing claims such as those in the '314 patent would issue.

**RESPONSE**: Defendants admit that U.S. Patent Nos. 8,946,235 and 9,732,058 are listed in the FDA Orange Book for Tagrisso® and refer to WO 2006/084058. Defendants also admit that employees of Defendants were aware of European Patent 1 848 414 B1 and/or PCT application publication WO 2006/084058 and were aware,

on or about March 31, 2020, the date of issuance of the '314 Patent, that a U.S. patent containing the claims of the '314 Patent had issued. Defendants deny the other allegations of Paragraph 54.

55.   On information and belief, AstraZeneca know that the Tagrisso® Products and Tagrisso® Product Label are especially made or adapted for use in infringing the '314 patent, that the Tagrisso® Products are not staple articles or commodities of commerce, and that the Tagrisso® Products and accompanying Tagrisso® Product Label are not suitable for substantial noninfringing use. On information and belief, AstraZeneca contribute to infringement of the '314 patent.

**RESPONSE**: Defendants deny the allegations of Paragraph 55. Defendants further state that Tagrisso® products have substantial uses that Plaintiffs themselves have acknowledged are non-infringing. Tagrisso® is indicated both (1) as adjuvant therapy after tumor resection in adult patients with non-small cell lung cancer (NSCLC) whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test and also (2) for the first-line treatment of adult patients with metastatic NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test. Each of those indications is a substantial use of Tagrisso®. Pfizer is the holder of approved NDA No. 211288 for Vizimpro® (dacomitinib) tablets. Dacomitinib is an irreversible inhibitor of EGFR. According to its approved prescribing information, "VIZIMPRO is indicated for the first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations

as detected by an FDA-approved test." Pfizer has not submitted patent information for the '314 or '162 Patents to FDA for listing in the Orange Book with the approved Vizimpro® NDA. Pfizer has thus recognized, acknowledged, and informed the public that the '314 and '162 Patents do not claim the use of an irreversible EGFR inhibitor for first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations as detected by an FDA-approved test. Pfizer has accordingly acknowledged that Tagrisso® has substantial non-infringing uses.

56.     The foregoing actions by AstraZeneca constitute and/or will constitute direct infringement of the '314 patent, active inducement of infringement by others of the '314 patent, and contribution to the infringement by others of the '314 patent under 35 U.S.C. § 271(a)–(c).

**RESPONSE**: Defendants deny the allegations of Paragraph 56.

57.     Plaintiffs have been and will continue to be damaged by AstraZeneca's infringement of the '314 patent. Plaintiffs are entitled to recover from AstraZeneca the damages sustained by Plaintiffs as a result of AstraZeneca's wrongful acts, including at a minimum a reasonable royalty.

**RESPONSE**: Defendants deny the allegations of Paragraph 57.

58.     AstraZeneca's infringement is deliberate and willful, entitling Plaintiffs to seek enhanced damages under 35 U.S.C. § 284 and to seek attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285. AstraZeneca's infringement of the '314 patent is with full and complete knowledge of the '314 patent and its applicability to the use of Tagrisso® Products without a good faith belief that the '314 patent is invalid or not infringed.

**RESPONSE**: Defendants deny the allegations of Paragraph 58.

59.   Plaintiffs have been and will continue to be substantially and irreparably damaged by infringement of the '314 patent. Unless AstraZeneca are enjoined from actively inducing infringement of the '314 patent, and contributing to the infringement of the '314 patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and AstraZeneca, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**RESPONSE**: Defendants deny the allegations of Paragraph 59. On information and belief, despite conducting numerous clinical trials, neither Plaintiffs nor any entity owned or controlled by Pfizer Inc. has succeeded in developing a TKI approved for a use claimed in the patents-in-suit. On information and belief, neither the '314 nor the '162 Patents are listed in the Orange Book for any FDA-approved drug product. Indeed, upon information and belief, neither Plaintiff holds an approved NDA for the treatment of any form of NSCLC. By contrast, Defendants' Tagrisso® (osimertinib mesylate) product has been approved by the FDA and is an important treatment option for NSCLC patients. Tagrisso® is approved: (1) as adjuvant therapy after tumor resection in adult patients with non-small cell lung cancer (NSCLC) whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test; (2) for the first-line treatment of adult patients with metastatic NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test; and (3) for the treatment of adult patients with metastatic EGFR T790M mutation positive NSCLC, as detected by an FDA-approved test, whose

disease has progressed on or after EGFR TKI therapy. A substantial majority of prescriptions are for the first two of these uses, which Plaintiffs themselves have recognized as outside the claims of the '314 and '162 Patents. Enjoining the manufacture, use, or sale of Tagrisso® would deny patients with a grave and progressive disease access to an important and innovative treatment, for which there is no equivalent substitute, resulting in substantial public harm.

## COUNT II: INFRINGEMENT OF THE '162 PATENT

60.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth in Paragraphs 1–59.

**RESPONSE:** Defendants incorporate in full the responses to paragraph 1–59 as if fully set forth herein.

61.    The use of Tagrisso® Products to treat patients according to the Tagrisso® Product Label is covered by one or more claims of the '162 patent, including at least claim 1 of the '162 patent, because claim 1 of the '162 patent encompasses treating patients with gefitinib and/or erlotinib resistant NSCLC having a T790M mutation in EGFR using an irreversible EGFR TKI administered daily in a dosage amount of 2–500 mg.

**RESPONSE**: Defendants deny the allegations of Paragraph 61.

62.    AstraZeneca's commercial manufacture, use, importation, marketing, sale, and/or offer for sale of the Tagrisso® Products, including tablets of 40 mg and 80 mg dosage strength, in or into the United States directly infringes, contributes to the infringement of, and/or actively induces the infringement by others of one or more claims of the '162 patent under 35 U.S.C. § 271(a)–(c).

**RESPONSE**: Defendants deny the allegations of Paragraph 62.

63.    The use of AstraZeneca's Tagrisso® Products by pharmacies, hospitals, clinics, healthcare professionals, and other end users to treat NSCLC

patients under the indications specified in the Tagrisso® Product Label directly infringes one or more claims of the '162 patent under 35 U.S.C. § 271(a).

**RESPONSE**: Defendants deny the allegations of Paragraph 63.

64.    On information and belief, prior to the '162 patent issuing, AstraZeneca were aware of the corresponding European Patent 1 848 414 B1, issued April 6, 2011 (or respectively, the underlying PCT application publication WO 2006/084058), circumscribing the same or similar claims as the '162 patent and having the same owner (Plaintiff Wyeth LLC) and exclusive licensee (Plaintiff Puma). Two patents that are listed in the FDA Orange Book for Tagrisso®, US 8946235 and US 9732058, recite the inventors' WO 2006/084058 as important prior art. On information and belief, as of March 24, 2020, the date of issuance of the '162 patent, AstraZeneca knew that a U.S. patent containing claims such as those in the '162 patent would issue.

**RESPONSE**: Defendants admit that U.S. Patent Nos. 8,946,235 and 9,732,058 are listed in the FDA Orange Book for Tagrisso® and refer to WO 2006/084058. Defendants also admit that employees of Defendants were aware of European Patent 1 848 414 B1 and/or PCT application publication WO 2006/084058 and were aware, on or about March 24, 2020, the date of issuance of the '162 Patent, that a U.S. patent containing the claims of the '162 Patent had issued. Defendants deny the allegations of Paragraph 64.

65.    On information and belief, AstraZeneca, through their own actions or through the actions of their agents, affiliates, and subsidiaries, market and/or distribute Tagrisso® Products to resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users. On information and belief, AstraZeneca knowingly and intentionally accompany the Tagrisso® Products with a product label or product insert that includes instructions for using or administering the Tagrisso® Products to treat NSCLC patients that infringes the '162 patent. Accordingly, AstraZeneca induce resellers, pharmacies, hospitals, clinics, healthcare professionals, and other end users of the Tagrisso® Products to directly infringe the '162 patent. On information and belief, AstraZeneca encourage acts of direct

infringement with knowledge of the '162 patent and knowledge that they are encouraging infringement.

**RESPONSE**: Defendants admit that AstraZeneca Pharmaceuticals LP markets and/or distributes Tagrisso® products in the United States. Defendants deny the remaining allegations of Paragraph 65.

66.    On information and belief, AstraZeneca are actively inducing infringement of the '162 patent. AstraZeneca's activities are done with knowledge of the '162 patent and specific intent to infringe that patent.

**RESPONSE**: Defendants deny the allegations of Paragraph 66.

67.    On information and belief, AstraZeneca know that the Tagrisso® Products and Tagrisso® Product Label are especially made or adapted for use in infringing the '162 patent, that the Tagrisso® Products are not staple articles or commodities of commerce, and that the Tagrisso® Products and accompanying Tagrisso® Product Label are not suitable for substantial noninfringing use. On information and belief, AstraZeneca contribute to infringement of the '162 patent.

**RESPONSE**: Defendants deny the allegations of Paragraph 67. Defendants further state that Tagrisso® products have substantial uses that Plaintiffs themselves have acknowledged are non-infringing. Tagrisso® is indicated both (1) as adjuvant therapy after tumor resection in adult patients with non-small cell lung cancer (NSCLC) whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test and also (2) for the first-line treatment of adult patients with metastatic NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test. Each of those indications is a substantial use of Tagrisso®.

Pfizer is the holder of approved NDA No. 211288 for Vizimpro® (dacomitinib) tablets. Dacomitinib is an irreversible inhibitor of EGFR. According to its approved prescribing information, "VIZIMPRO is indicated for the first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations as detected by an FDA-approved test." Pfizer has not submitted patent information for the '314 or '162 Patents to FDA for listing in the Orange Book with the approved Vizimpro® NDA. Pfizer has thus recognized, acknowledged, and informed the public that the '314 and '162 Patents do not claim the use of an irreversible EGFR inhibitor for first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations as detected by an FDA-approved test. Pfizer has accordingly acknowledged that Tagrisso® has substantial non-infringing uses.

68.    The foregoing actions by AstraZeneca constitute and/or will constitute direct infringement of the '162 patent, active inducement of infringement by others of the '162 patent, and contribution to the infringement by others of the '162 patent under 35 U.S.C. § 271(a)–(c).

**RESPONSE**: Defendants deny the allegations of Paragraph 68.

69.    Plaintiffs have been and will continue to be damaged by AstraZeneca's infringement of the '162 patent. Plaintiffs are entitled to recover from AstraZeneca the damages sustained by Plaintiffs as a result of AstraZeneca's wrongful acts, including at a minimum a reasonable royalty.

**RESPONSE**: Defendants deny the allegations of Paragraph 69.

70.    AstraZeneca's infringement is deliberate and willful, permitting Plaintiffs to seek enhanced damages under 35 U.S.C. § 284 and to seek attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285. AstraZeneca's infringement of the '162 patent is with full and complete knowledge of the '162 patent and its applicability to the use of Tagrisso® Products without a good faith belief that the '162 patent is invalid or not infringed.

**RESPONSE**: Defendants deny the allegations of Paragraph 70.

71.    Plaintiffs are and will continue to be substantially and irreparably damaged by infringement of the '162 patent. Unless AstraZeneca are enjoined from actively inducing infringement of the '162 patent, and contributing to the infringement of the '162 patent, Plaintiffs will suffer irreparable injury. Plaintiffs have no adequate remedy at law, and considering the balance of hardships between Plaintiffs and AstraZeneca, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of an injunction.

**RESPONSE**: Defendants deny the allegations of Paragraph 71. On information and belief, despite conducting numerous clinical trials, neither Plaintiffs nor any entity owned or controlled by Pfizer Inc. has succeeded in developing a TKI approved for a use claimed in the patents-in-suit. On information and belief, neither the '314 nor the '162 Patents are listed in the Orange Book for any FDA-approved drug product. Indeed, upon information and belief, neither Plaintiff holds an approved NDA for the treatment of any form of NSCLC. By contrast, Defendants' Tagrisso® (osimertinib mesylate) product has been approved by FDA and is an important treatment option for NSCLC patients. Tagrisso® is approved: (1) as adjuvant therapy after tumor resection in adult patients with non-small cell lung cancer (NSCLC) whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test: (2) for

the first-line treatment of adult patients with metastatic NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test; and (3) for the treatment of adult patients with metastatic EGFR T790M mutation positive NSCLC, as detected by an FDA-approved test, whose disease has progressed on or after EGFR TKI therapy. A substantial majority of prescriptions are for the first two of these uses, which Defendants themselves have recognized as outside the claims of the '314 and '162 Patents. Enjoining the manufacture, use, or sale of Tagrisso® would deny patients with a grave and progressive disease access to an important and innovative treatment, for which there is no equivalent substitute, resulting in substantial public harm.

## **AFFIRMATIVE DEFENSES**

72.     Further answering the Complaint, Defendants assert the following defenses without assuming any burden that they would not otherwise have, including without admitting or acknowledging that they bear the burden of proof as to any of them. Defendants reserve the right to amend their answer with additional defenses as further information is obtained.

### **FIRST AFFIRMATIVE DEFENSE**
### **(NON-INFRINGEMENT OF THE '314 PATENT)**

73.     Defendants have not infringed any claim of the '314 Patent, either directly or indirectly.

## SECOND AFFIRMATIVE DEFENSE
## (NON-INFRINGEMENT OF THE '162 PATENT)

74.     Defendants have not infringed any claim of the '162 Patent, either directly or indirectly.

## THIRD AFFIRMATIVE DEFENSE
## (INVALIDITY OF THE '314 PATENT)

75.     Each and every claim of the '314 patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## FOURTH AFFIRMATIVE DEFENSE
## (INVALIDITY OF THE '162 PATENT)

76.     Each and every claim of the '162 Patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

## FIFTH AFFIRMATIVE DEFENSE
## (LACHES, WAIVER, EQUITABLE ESTOPPEL, UNCLEAN HANDS)

77.     The relief sought by Plaintiffs is barred in whole or in part under the doctrines of laches, waiver, equitable estoppel, and/or unclean hands.

## SIXTH AFFIRMATIVE DEFENSE
## (FAILURE TO STATE A CLAIM)

78.     Plaintiffs' Complaint fails to state a claim on which relief can be granted.

## SEVENTH AFFIRMATIVE DEFENSE
## (NO WILLFUL INFRINGEMENT)

79.     Defendants have not willfully infringed any claim of the patents-in-suit

## SEVENTH AFFIRMATIVE DEFENSE
## (PATENT MISUSE)

80.     Pfizer, Wyeth and/or Puma have sought to enforce and/or license the patents-in-suit for products and acts they know are outside the claims of the patents-in-suit, rendering the patents-in-suit unenforceable on account of patent misuse.

## COUNTERCLAIMS

Counterclaimants AstraZeneca Pharmaceutical LP and AstraZeneca Pharmaceuticals AB (collectively, "AstraZeneca" or "Defendants" or "Counterclaimants") on personal knowledge as to their own acts, and on information and belief as to all others based on their own and their attorneys' investigation, and without admitting the allegations of Plaintiffs Puma and Wyeth other than those expressly admitted herein, bring the following Counterclaims against Puma, Wyeth and Pfizer Inc. (collectively, "Counterclaim-Defendants") for declaratory judgment that U.S. Patent No. 10,603,314 (the "'314 Patent") and U.S. Patent No. 10,596,162 (the "'162 Patent") (collectively, the "patents-in-suit") are invalid and/or not infringed by AstraZeneca and are unenforceable for patent misuse.

## THE PARTIES

1.      Counterclaimant AstraZeneca Pharmaceuticals LP is a limited partnership organized and existing under the laws of the State of Delaware, with a principal place of business at 1800 Concord Pike, P.O. Box 15437, Wilmington, Delaware 19850.

2.      Counterclaimant AstraZeneca AB is a public limited liability company organized under the laws of Sweden with its principal place of business at Karlebyhus, Astraallén, Södertälje, S-151 85, Sweden.

3.      On information and belief, and according to Plaintiffs' Complaint, Counterclaim Defendant Puma is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 10880 Wilshire Boulevard, Suite 2150, Los Angeles, California 90024. According to Plaintiff Puma's Complaint, Defendant Puma is an exclusive licensee of the '314 and '162 Patents.

4.      On information and belief, and according to Plaintiffs' Complaint, Counterclaim Defendant Wyeth is a limited liability company organized and existing under the laws of the State of Delaware with offices at 235 East 42nd Street, New York, NY 10017. According to Plaintiffs' Complaint, Wyeth LLC is a wholly owned subsidiary of Pfizer, Inc.

5.      On information and belief, Counterclaim Defendant Pfizer Inc. ("Pfizer") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 235 East 42nd Street, New York, New York 10017.

6.      According to Plaintiffs' Complaint, Puma licensed the patent rights for the patents-in-suit from Pfizer. Upon information and belief, Puma's filings with the Securities and Exchange Commission ("SEC") state that Puma obtained its patent rights from a license agreement with Pfizer and that Pfizer nonetheless retains substantial rights with respect to the patents-in-suit. A true and correct copy of the redacted version of the license agreement and amendments between Puma and Pfizer that were submitted by Puma to the SEC are attached hereto as Exhibits 1, 2, and 3.

7.      According to the redacted license agreement and amendments submitted by Puma to the SEC, both parties are required to provide written notice to the other party with respect to, *inter alia*, any actual or threatened infringement or challenge to the validity or enforceability of the patents-in-suit. In any litigation brought by Puma to enforce the patents-in-suit, Puma is required to consult with Pfizer concerning the conduct of the litigation and cannot settle the litigation without Pfizer's consent. Also, in any such litigation brought by Puma, Pfizer is obligated to participate as a party if necessary for standing. Under the agreement, if Puma does not enforce the patents-in-suit, Pfizer retains the right to enforce the patents-in-suit

and also to control such litigation. Additionally, regardless of whether litigation is brought by Pfizer, Pfizer is entitled to share in monies recovered in enforcing the '314 and '162 Patents. Wyeth is not entitled to share in monies recovered in enforcing the '314 and '162 Patents. The agreement also requires Pfizer's written consent before Puma may assign its interest in the agreement to a third party. Further still, the publicly-available information in the agreement suggests that Pfizer retains the right (for itself and its Affiliates) to make, have made, use, have used, import and export products purportedly within the scope of the patents-in-suit.

8.     Upon information and belief, Pfizer is a real party in interest to litigation concerning infringement or validity of the '314 and '162 Patents.

### JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C §§ 1331 and 1338(a) and pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     This Court has personal jurisdiction over Puma because Puma is a Delaware corporation and because Puma has submitted to the jurisdiction of this Court by filing this lawsuit.

11.     This Court has personal jurisdiction over Wyeth because Wyeth is a Delaware corporation and Wyeth has submitted to the jurisdiction of this Court by filing this lawsuit.

12.     This Court has personal jurisdiction over Pfizer because Pfizer is a Delaware corporation.

13.     Pfizer is also subject to personal jurisdiction in Delaware because, among other things, upon information and belief, it has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being suited in this Court. Upon information and belief, Pfizer markets, distributes, uses, offers to sell, and/or sells pharmaceutical products throughout the United States, including in the State of Delaware. Upon information and belief, Pfizer derives substantial revenue from pharmaceutical products used and/or consumed in the State of Delaware that are manufactured or marketed by Pfizer.

14.     Upon information and belief, Pfizer has consented to jurisdiction in Delaware in more than one prior case arising out of its filing of an action for patent infringement under the provisions of Section 271 related to the filing of an Abbreviated New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA") and/or has filed counterclaims in such cases. These actions include cases specifically related to patent enforcement actions concerning ANDAs seeking FDA approval for generic versions of Tarceva® (erlotinib). *See, e.g., OSI Pharmaceuticals, Inc., Pfizer, Inc., and Genentech Inc. v. Teva Pharmaceuticals USA*, Civ. No. 09-185-SLR (D. Del. Mar. 19, 2009) and *OSI Pharmaceuticals, Inc., Pfizer, Inc., and Genentech Inc. v. Mylan Pharmaceuticals, Inc*., Civ. No. 09-186-

SLR (D. Del. Mar. 19, 2009). In addition, upon information and belief, Pfizer has consented to participate as a party in a lawsuit enforcing the patents-in-suit if necessary for standing and hence has consented to the jurisdiction of this Court in this action.

15.     Venue is proper in this judicial district under 28 U.S.C. §§1391 and 1400. All Defendants reside in Delaware for purposes of 28 U.S.C. §§1391 and 1400. Further, Puma and Wyeth have consented to the venue by filing this lawsuit in this judicial district.

## ACTUAL CONTROVERSY

16.     According to Plaintiffs' Complaint, Puma claims to be an exclusive licensee of the '314 and '162 Patents pursuant to a license agreement with Pfizer and Wyeth. On September 22, 2021, Puma and Wyeth filed the present lawsuit against Defendants alleging that Counterclaimants' commercial manufacture, use, importation, marketing, sale, and/or offer for sale of Tagrisso® Product infringes the '314 and '162 Patents. Upon information and belief, Pfizer is a real party in interest to that lawsuit and, under its license agreement with Puma, has certain rights to enforce the patents-in-suit, control such litigation, and share in any recovery, and Pfizer also retains rights to prevent Puma's assignment of its rights in the Agreement and to practice the patents-in-suit. Counterclaimants deny Plaintiffs' allegations.

17.    An actual, substantial, and justifiable controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Counterclaimants and Counterclaim Defendants. Counterclaimants seek a declaration that the '314 and '162 Patents are not, and have not been, infringed and the '314 and '162 Patents are invalid and unenforceable.

18.    This controversy is of sufficient immediately and reality to warrant the issuance of a declaratory judgment.

## BACKGROUND FACTS

19.    AstraZeneca Pharmaceuticals LP is the holder of New Drug Application No. 208065 for Tagrisso® (osimertinib mesylate) which has been approved by the FDA. The prescribing information currently approved for Tagrisso® is attached hereto as Exhibit 4.

20.    Plaintiffs' Complaint alleges that "claim 1 of the '314 patent encompasses treating patients with gefitinib and/or erlotinib resistant NSCLC using an irreversible EGFR TKI."

21.    Plaintiff's Complaint alleges that "claim 1 of the '162 patent encompasses treating patients with gefitinib and/or erlotinib resistant NSCLC having a T790M mutation in EGFR using an irreversible EGFR TKI administered daily in a dosage amount of 2–500 mg."

22.     The '314 Patent contains no report or data from a clinical study of an irreversible inhibitor in patients with gefitinib and/or erlotinib resistant NSCLC. The '162 Patent contains no report or data from a clinical study of an irreversible inhibitor in patients with gefitinib and/or erlotinib resistant NSCLC.

23.     The '314 Patent contains no report or data from a clinical study of an irreversible inhibitor in patients with gefitinib and/or erlotinib resistant NSCLC having a T790M mutation in EGFR. The '162 Patent contains no report or data from a clinical study of an irreversible inhibitor in patients with gefitinib and/or erlotinib resistant NSCLC having a T790M mutation in EGFR.

24.     On information and belief, since the filing of the earliest patent applications leading to the '314 and '162 Patents, Pfizer, Wyeth, and/or Puma have conducted numerous clinical studies on TKIs in an attempt to develop a treatment as claimed in the '314 and '162 Patents. None of those clinical studies succeeded. Pfizer, Wyeth, and/or Puma do not market any product for a treatment claimed in the '314 or '162 Patents.

25.     Upon information and belief, the '314 and '162 Patents are not listed in the Orange Book for any FDA-approved product.

26.     On information and belief, Pfizer, Wyeth and/or Puma have conducted numerous clinical studies on TKIs in an attempt to develop a treatment of patients with gefitinib or erlotinib resistant NSCLC having a T790M mutation in EGFR.

None of those clinical studies succeeded. Pfizer, Wyeth, and/or Puma do not market any product for the treatment of patients with gefitinib or erlotinib resistant NSCLC having a T790M mutation in EGFR.

27.     For example, the '314 and '162 Patents state that the TKI EKB-569 is a preferred embodiment of the claimed invention. EKB-569 is a code name for the irreversible tyrosine kinase inhibitor pelitinib. Pfizer and/or Wyeth sponsored a Phase II clinical study of pelitinib as a second-line or later-stage treatment for NSCLC. Pfizer and/or Wyeth discontinued development of pelitinib after that study was completed. Pelitinib is not approved by FDA for any use.

28.     The '314 and '162 Patents state that the TKI HKI-357 is a preferred embodiment. HKI-357 is an irreversible tyrosine kinase inhibitor. Pfizer and/or Wyeth conducted a Phase I clinical study of HKI-357 to determine the safety, tolerability, and pharmacokinetics of HKI-357 in humans. Pfizer and/or Wyeth discontinued development of HKI-357 after that study was completed.

29.     The '314 and '162 Patents state that HKI-272 is a preferred embodiment. HKI-272 is a code name for the irreversible tyrosine kinase inhibitor neratinib. Pfizer,Wyeth, and/or Puma sponsored a Phase II clinical study of HKI-272 in patients with advanced NSCLC, including patients previously treated with gefitinib or erlotinib and including patients with EGFR T790M mutation positive NSCLC. The Phase II clinical study of HKI-272 failed to show a benefit from

treatment with HKI-272 to patients with advanced NSCLC. The Phase II clinical study also failed to show a benefit from treatment with HKI-272 to patients with advance NSCLC who had previously received gefitinib or erlotinib. The Phase II clinical study also failed to show a benefit from treatment with HKI-272 to patients with EGFR T790M mutation positive NSCLC.

30.     Neratinib is not approved for the treatment of NSCLC.

31.     Upon information and belief, Pfizer, Wyeth and/or Puma have made numerous attempts to develop a kinase inhibitor for the treatment of patients with NSCLC whose disease progressed after treatment with gefitinib or erlotinib. None of those attempts succeeded. Pfizer, Wyeth, and/or Puma do not market any kinase inhibitor treatment for patients with NSCLC whose disease progressed after treatment with gefitinib or erlotinib.

32.     Upon information and belief, Pfizer, Wyeth and/or Puma have made numerous attempts to develop a kinase inhibitor for the treatment of patients with EGFR T790M mutation positive NSCLC. None of those attempts succeeded. Pfizer, Wyeth, and/or Puma do not market any kinase inhibitor treatment for patients with EGFR T790M mutation positive NSCLC.

33.     The development of an inhibitor of EGFR useful for the treatment of gefitinib or erlotinib resistant NSCLC was an unpredictable task in 2005 and remains

unpredictable today. There have been many failed attempts to develop an inhibitor of EGFR for the treatment of gefitinib and/or erlotinib resistant NSCLC.

34.　The '314 and '162 Patents identify only four irreversible inhibitors of EGFR. Those four inhibitors are EKB-569, HKI-272, HKI-357, and CL-387,785. None of those four inhibitors are approved for the treatment of gefitinib or erlotinib resistant NSCLC.

35.　The '314 Patent does not describe the irreversible tyrosine kinase inhibitor osimertinib. The '162 Patent does not describe the irreversible tyrosine kinase inhibitor osimertinib. Osimertinib is the only inhibitor of EGFR approved by the U.S. Food and Drug Administration for the treatment of patients with EGFR T790M mutation positive NSCLC.

**COUNT I**
**(DECLARATORY JUDGMENT OF**
**NON-INFRINGEMENT OF THE '314 PATENT)**

36.　Counterclaimants incorporate by reference paragraphs 1–35 above.

37.　Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '314 Patent.

38.　Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '314 Patent.

39.    This is an exceptional case under 35 U.S.C. § 285, entitling Counterclaimants to an award of attorneys' fees incurred in connection with this action

## COUNT II
## (DECLARATORY JUDGMENT OF INVALIDITY OF THE '314 PATENT)

40.    Counterclaimants incorporate by reference paragraphs 1–39 above.

41.    Each and every claim of the '314 Patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

42.    One or more claims of the '314 Patent are invalid under 35 U.S.C. § 101 because the claims are not directed to patent eligible subject matter and do not pertain to an inventive concept sufficient to transform the patent-ineligible subject matter into a patent-eligible application.

43.    One or more claims of the '314 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art including the references cited on the face of the '314 Patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '314 Patent. For example, one or more claims of the '314 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: Kobayashi, *et al.*, EGFR *Mutation and*

*Resistance of Non-Small-Cell Lung Cancer to Gefitinib*, 352 N. ENGL. J. MED. 786–92 (Feb. 2005).

44.     One or more claims of the '314 Patent are invalid under 35 US.C. § 112 for (1) failing to comply with the "written description" requirement, (2) failing to comply with the "enablement" requirement, and (3) failing to comply with the "definiteness" requirement. One or more claims of the '314 Patent lack sufficient written description because the specification of the '314 Patent does not convey with reasonable clarity to those skilled in the art, as of the patent's filing date, that the inventors were in possession of the claimed invention(s). One or more claims of the '314 Patent do not satisfy the enablement requirement because the specification does not teach those skilled in the art to make and how to use the full scope of the claimed invention without undue experimentation to any extent that could fairly be construed as covering the accused subject matter. One or more claims of the '314 Patent do not satisfy the definiteness requirement because those skilled in the art would not understand the full scope of the claims when read in light of the specification.

45.     One or more claims of the '314 Patent are invalid under 35 U.S.C. § 116 because the '314 Patent does not correctly name the inventor(s) of the claimed invention.

46.     Counterclaimants are entitled to a declaratory judgment from this Court that each and every claim of the '314 Patent is invalid.

47.   This is an exceptional case under 35 U.S.C. § 285, entitling Counterclaimants to an award of attorneys' fees incurred in connection with this action.

## COUNT III
## (DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF THE '162 PATENT)

48.   Counterclaimants incorporate by reference paragraphs 1–48 above.

49.   Counterclaimants do not and have not infringed, either directly or indirectly, any claim of the '162 Patent.

50.   Counterclaimants are entitled to a declaratory judgment from this Court that they do not and have not infringed any claim of the '162 Patent.

51.   This is an exceptional case under 35 U.S.C. § 285, entitling Counterclaimants to an award of attorneys' fees incurred in connection with this action.

## COUNT IV
## (DECLARATORY JUDGMENT OF
## INVALIDITY OF THE '162 PATENT)

52.   Counterclaimants incorporate by reference paragraphs 1–51 above.

53.   Each and every claim of the '162 Patent is invalid for failing to meet one or more of the requisite conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103, 112 and/or 116.

54.    One or more claims of the '162 Patent are invalid under 35 U.S.C. § 101 because the claims are not directed to patent eligible subject matter and do not pertain to an inventive concept sufficient to transform the patent-ineligible subject matter into a patent-eligible application.

55.    One or more claims of the '162 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in light of prior art including the references cited on the face of the '162 Patent, and articles, patents, products, and processes that were publicly available or disclosed before the priority date of the '162 Patent. For example, one or more claims of the '162 Patent are invalid under 35 U.S.C. §§ 102 and/or 103 in view of at least the following prior art: Kobayashi, *et al.*, EGFR *Mutation and Resistance of Non-Small-Cell Lung Cancer to Gefitinib*, 352 N. ENGL. J. MED. 786–92 (Feb. 2005).

56.    One or more claims of the '162 Patent are invalid under 35 US.C. § 112 for (1) failing to comply with the "written description" requirement, (2) failing to comply with the "enablement" requirement, and (3) failing to comply with the "definiteness" requirement. One or more claims of the '162 Patent lack sufficient written description because the specification of the '162 Patent does not convey with reasonable clarity to those skilled in the art, as of the patent's filing date, that the inventors were in possession of the claimed invention(s). One or more claims of the '162 Patent do not satisfy the enablement requirement because the specification does

not teach those skilled in the art to make and how to use the full scope of the claimed invention without undue experimentation to any extent that could fairly be construed as covering the accused subject matter. Finally, one or more claims of the '162 Patent do not satisfy the definiteness requirement because those skilled in the art would not understand the full scope of the claims when read in light of the specification.

57.    One or more claims of the '162 Patent are invalid under 35 U.S.C. § 116 because the '162 Patent does not correctly name the inventor(s) of the claimed invention.

58.    Counterclaimants are entitled to a declaratory judgment from this Court that each and every claim of the '162 Patent is invalid.

59.    This is an exceptional case under 35 U.S.C. § 285, entitling Counterclaimants to an award of attorneys' fees incurred in connection with this action.

### COUNT V
### (DECLARATORY JUDGMENT OF PATENT MISUSE)

60.    Counterclaimants incorporate by reference paragraphs 1–59 above.

61.    Pfizer, Wyeth and Puma have sought to enforce and/or license the patents-in-suit for products and acts they know are outside the claims of the patents-in-suit.

62.   For example, Plaintiffs Wyeth and Puma have alleged that the Tagrisso® product has no substantial non-infringing use and sought royalties for and an injunction against uses of Tagrisso® that they know do not infringe the patents-in-suit.

63.   Tagrisso® products have substantial uses that Plaintiffs themselves have acknowledged are non-infringing. Tagrisso® is indicated both (1) as adjuvant therapy after tumor resection in adult patients with non-small cell lung cancer (NSCLC) whose tumors have epidermal growth factor receptor (EGFR) exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test and also (2) for the first-line treatment of adult patients with metastatic NSCLC whose tumors have EGFR exon 19 deletions or exon 21 L858R mutations, as detected by an FDA-approved test. Each of those indications is a substantial use of Tagrisso®.

64.   Pfizer is the holder of approved NDA No. 211288 for Vizimpro® (dacomitinib) tablets. Dacomitinib is an irreversible inhibitor of EGFR. According to its approved prescribing information, "VIZIMPRO is indicated for the first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations as detected by an FDA-approved test." Pfizer has not submitted patent information for the '314 or '162 Patents to FDA for listing in the Orange Book with the approved Vizimpro® NDA. Pfizer has thus recognized,

acknowledged, and informed the public that the '314 and '162 Patents do not claim the use of an irreversible EGFR inhibitor for first-line treatment of patients with metastatic non-small cell lung cancer (NSCLC) with epidermal growth factor receptor (EGFR) exon 19 deletion or exon 21 L858R substitution mutations as detected by an FDA-approved test. Pfizer has accordingly acknowledged that Tagrisso® has a substantial non-infringing use.

65.     Counterclaim Defendants conduct in seeking to license and enforce the '314 and '162 Patents against products and acts they know to be outside the scope of the claims of those patents seek improper economic benefit.

66.     Counterclaim Defendants have engaged in a course of conduct that seeks to broaden the scope of the '314 and '162 Patents with anticompetitive effect.

67.     Counterclaim Defendants misuse of the patents-in-suit render the '314 and '162 Patents unenforceable.

### PRAYER FOR RELIEF

Wherefore, Defendants respectfully request an Order and Judgment from this Court:

a)      declaring that Defendants do not and have not infringed any claim of the '314 Patent;

b)      declaration that each and every claim of the '314 Patent is invalid;

c)      declaring that Defendants do not and have not infringed any claim of the '162 Patent;

d)      declaring that each and every claim of the '162 Patent is invalid;

e)      declaring that the '314 and '162 Patents are unenforceable for patent misuse;

f)      adjudging this an exceptional case under 35 U.S.C. § 285 and granting Defendants an award of attorneys' fees, expenses, and costs;

g)      denying any and all relief sought by Puma and Wyeth in its Complaint; and

h)      granting such other relief as the Court deems proper.

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
jcastellano@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys AstraZeneca*
*Pharmaceuticals LP and*
*AstraZeneca AB*

OF COUNSEL:
Christopher Sipes
Einar Stole
Megan Keane
Ashley Winkler
Jason Reinecke
Melissa Keech
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Dated: November 5, 2021