IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PUMA BIOTECHNOLOGY, INC. and )
WYETH LLC, )
 )
Plaintiffs, )
 ) C.A. No. 21-1338 (MFK)
v. )
 )
ASTRAZENECA PHARMACEUTICALS )
LP and ASTRAZENECA AB, )
 )
Defendants. )
 )

**STIPULATION AND ORDER REGARDING PRODUCTION
OF DOCUMENTS AND INFORMATION**

This Order sets forth the protocol for the production of documents, both hard-copy documents and electronically stored information ("ESI"), by and between the Parties, including as stipulated by D.I. 20 and D.I. 21, in the above-captioned action (the "Action").

1. **GENERAL**

    1.1 This Order will help to streamline Document and ESI (defined below) discovery to best carry out the requirements set forth in the local rules of the United States District Court for the District of Delaware and the Federal Rules of Civil Procedure.

    1.2 The Parties shall take all reasonable steps to comply with the protocols set forth herein.

    1.3 The Parties agree to negotiate in good faith regarding requests for production of documents to ensure discovery is reasonable and proportional to the matter.

    1.4 Except as specifically limited herein, this Order governs the production of discoverable Documents and ESI (defined below) by the Parties during the Action.

In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor Order.

1.5     This Order shall not enlarge or affect the proper scope of discovery in this Action, nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation.  Additionally, this Order does not alter or expand the preservation obligations of the Parties.

1.6     Subject to the Parties' objections and responses to requests for production of Documents, and subject to the Parties' Stipulated Protective Order, all Documents or portions of Documents that are identified as responsive to discovery requests not designated as "privileged" and not concerning, regarding, or relating to other products not the subject of the Action shall be produced in the manner provided herein.  Portions of responsive documents that contain confidential or commercially sensitive information may be redacted as provided for in the Stipulated Protective Order, including, but not limited to, portions of documents that concern, regard, or relate to other products not the subject of the Action or proprietary names for products in development.  Nothing in this Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by federal rule, the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable and valid.  Data that is governed by the EU Data Privacy Directive and/or other applicable privacy law or regulation, such as private personal information of employees or other persons, may be redacted.

1.7     The Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other Parties concerning any technical problems associated with complying with this Order.  To the extent compliance with this Order imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue.

1.8     Consistent with their obligations under the applicable local rules of the United States District Court for the District of Delaware and the Federal Rules of Civil Procedure, the Parties will attempt to resolve—in person, in writing (including email) or by telephone—disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

1.9     **Other Proceedings.** By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as "highly confidential" pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

2.     **DEFINITIONS**

2.1     "**Document**" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure.  The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI as defined herein.

**2.2**     **"Electronic Document or Data,"** abbreviated herein as "E-Doc", means Documents or Data existing in electronic form, including, but not limited to: email or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

**2.3**     **"Electronically Stored Information"** or **"ESI,"** as used herein, has the same meaning as in the Federal Rules of Civil Procedure.

**2.4**     **"Hard-Copy Document"** means Documents existing in tangible form, including, but not limited, to paper Documents.

**2.5**     **"Native Format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

**2.6**     **"Metadata"** means: (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

**2.7**     **"Media"** means an object or device, real or virtual, including, but not limited, to a disc, tape, computer, or other device on which data is or was stored.

**2.8**     **"Optical Character Recognition"** or **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner

4

that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

2.9 "**Hash Value**" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

2.10 "**Confidentiality Designation**" means the legend affixed to Documents and ESI for Confidential Discovery Information as defined by, and subject to, the terms of the Parties' Stipulated Protective Order in the Action.

2.11 "**Searchable Text**" means the native text extracted from an Electronic Document or any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

2.12 "**Load file**" means an electronic file provided with a production set of document images that facilitate the loading of such information into a requesting party's document review platform, and the correlation of such data in the platform.

2.13 "**Unitization**" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

3.     **DATA SOURCES AND CULLING CRITERIA**

3.1    **Custodians**.  The Parties will exchange ESI initial disclosures on March 18, 2022 identifying the custodians most likely to have discoverable information in accordance with the District of Delaware Default Standard For Discovery Paragraph 3(a).  The Parties may conduct attorney-guided collection interviews with the identified custodians and perform targeted collections of the custodians' Documents and ESI.  All collections shall be limited to the time period for which the custodian had responsibility for or involvement with the issues relevant to this Action.  Subject to the Parties' objections and responses to requests for production of Documents and ESI, and subject to the Parties' Stipulated Protective Order, the Parties shall begin producing responsive, non-privileged Documents and ESI on a rolling basis, from the files of the identified custodians.

3.2    **Non-Custodial Sources**.  The Parties will exchange ESI initial disclosures on March 18, 2022, identifying the non-custodial sources most likely to have discoverable information in accordance with the District of Delaware Default Standard for Discovery.  Subject to the Parties' objections and responses to requests for production of Documents and ESI, and subject to the Parties' Stipulated Protective Order, the Parties shall begin producing responsive, non-privileged Documents and ESI on a rolling basis, from the identified non-custodial sources. Parties will meet and confer regarding production format of any structured data. The Parties agree to undertake reasonable efforts to provide the data in a reasonably useable format.

3.3    **Foreign Documents.**  The producing parties shall meet and confer regarding any collection and production of documents that are located outside of the United

States.  Where possible the parties will seek to locate relevant data from a source within the United States to the extent it is duplicative of data otherwise maintained outside of the United States.

3.4     **Search Queries and Methodologies**.  If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party.  Absent a showing of good cause, a requesting party may request no more than ten (10) additional terms to be used in connection with the electronic search within two weeks of receipt of the producing party's disclosure of search terms.  Focused terms, rather than overbroad terms (e.g., product and company names), shall be employed.  The Parties shall meet and confer on any modifications to the requesting party's proposed terms as needed to exclude information that is not proportional to the needs of the case under Fed. R. Civ. P. 26, including modifying terms where the burden or expense of the proposed term outweighs the likely benefit.  The Parties shall then search the custodial and non-custodial sources identified in Sections 3.1. and 3.2, above.  After the Parties agree upon the final list of search queries, no search queries will be added to the list absent written agreement by the Parties or, if the Parties reach an impasse after meeting and conferring in good faith, by Court order.

3.5     **System Files**.  The Parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

3.6     **Global De-Duplication**.  A Party is only required to produce a single copy of a responsive Document, and a Party may take reasonable efforts to de-duplicate responsive Documents and ESI (parties shall use commercially acceptable

methods) across custodians.  The Parties may use advanced search and retrieval technologies, including email threading. The producing party, at its option, may elect to produce only inclusive emails, and suppress duplicative email chains from production and logging.  For emails with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.  However, Metadata identifying all custodians in possession of each document, that is removed as a duplicate must be produced in the "ALL CUSTODIANS" fields in the production Load File.  In addition, outlook.ost files are excluded from processing as duplicative of outlook.pst files.

3.7    **Technology Assisted Review**.    A Party must disclose if it intends to use technology-assisted review ("TAR").  If a Party discloses that it intends to use TAR, the Parties shall meet and confer in good faith regarding the scope of information that shall be disclosed regarding the Party's intended use.

## 4.    PRESERVATION

4.1    The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve and collect discoverable information in the Party's possession, custody or control.

4.2    The Parties agree that certain sources of information are not reasonably accessible, and therefore need not be preserved or collected.  The Parties agree that the following Documents or ESI are not reasonably accessible:

4.2.1    Shadowed, deleted, residual, slack, fragmented, or other data only accessible by forensics.

4.2.2   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

4.2.3   On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.2.4   Data in Metadata fields that are frequently updated automatically, such as last opened dates.

4.2.5   Back-up data that are substantially duplicative of data that are more accessible elsewhere.

4.2.6    Voice messages.

4.2.7   Instant messages, e.g., Microsoft Teams instant messages, that are not ordinarily printed or maintained in a server dedicated to instant messaging.

4.2.8   Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

4.2.9   Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

4.2.10  Logs of calls made from mobile devices.

4.2.11  Server, system or network logs.

4.2.12  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

4.2.13   Data remaining from systems no longer in use that is unintelligible on the system in use.

4.2.14   Documents deleted in the normal course of business before the time a preservation obligation in this Action came into effect.

## 5.      FORMAT OF PRODUCTION

5.1     **Non-Redacted Electronically Stored Information Not Produced in Native Form**.  The producing party shall produce Documents as they exist in the ordinary course of business and therefore shall not be required to organize or label productions to correspond to specific discovery requests.  Any custodial files or Non-Custodial Document Sources (collectively "Sources") will be produced in the reasonably usable and searchable format.  ESI will be produced in single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (OPT or DII files).  Conversion of Word documents:  When Word documents are converted to TIFFs, the version that will be converted is as it was last saved and with track changes turned on.  This means the images and extracted text will reflect the track changes.  In all events, conversion of Microsoft Office document types to TIFF shall reflect comments, speaker notes, footers, headers, track changes, and any other hidden content, as applicable.  To the extent processing exceptions exist that prevent records from being converted to TIFF format, a placeholder TIFF image bearing a label such as "Document Cannot be Rendered to TIFF" will be produced.

5.2     Non-redacted ESI shall be produced with searchable extracted text of the entire Document (at the document level in a .TXT file) and the following Metadata fields, to the extent such metadata exists: Custodian, All Custodians, Email Subject,

Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, Doc Title, Doc Type, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the Document.  The Parties acknowledge there can be differences between the Operating System (Windows) and Application date/time fields and also agree that Producing Party has no obligation to try and reconcile the differences, if any.

The parent-child relationships (the association between an attachment and its parent document) must be preserved; however, non-relevant attachments may be excluded from production.  All non-relevant attachments excluded from production should be produced as a slipsheet or placeholder. **Parties may request the production of a non-relevant attachment on a selective basis.**

**5.3**     **ESI to Be Produced in Native Form**.  Microsoft Excel files, audio files, or video files will be produced as native files, unless redacted.  If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format.  Files produced in Native Format shall be named either with a sequential Bates number followed by the file name or with

11

a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name.  A placeholder TIFF with the original file name, the language "Document Produced in Native" (or similar language), and stamped with the assigned Bates number and confidentiality designation shall be included for each native file produced.   To the extent native files, including electronic spreadsheets or presentations, are redacted, production shall be made in TIFF format in accordance with the section on redacted documents and not in Native Format, with the exception that Microsoft Excel files may be redacted and produced in Native Format.

**5.4**     **Redacted Documents**.  The Parties may redact Documents or ESI on the following bases: attorney-client privilege, attorney work-product privilege, HIPAA-related privacy information, data governed by EU Data Privacy Directive and/or other applicable privacy law or regulation, information pertaining to other unrelated products or subject matter, and for any other reason provided for in the Parties' Stipulated Protective Order.  If the requesting party finds a document to be incomprehensible or unintelligible because of a redaction, the Parties will meet and confer to try in good faith to resolve the dispute.  For redacted electronic files, and redacted Hard-Copy Documents, the Parties agree to produce ESI and Hard-Copy Documents as redacted single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party), with Metadata in the .DAT file.  All Electronic Documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent email.  The Metadata fields for a

redacted Document or ESI will include BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, TEXT, which shall contain the OCR or Optical Character Recognition text so as not to reveal redacted text, and REDACTION_TYPE, which shall identify the privilege asserted or other basis for redaction of documents for any electronic mail or document.  To the extent Documents or ESI have been de-duplicated, the ALL CUSTODIANS field shall list all custodians that had possession of the Document.  No other Metadata fields will be produced for a redacted Document.

5.5     **Hard-Copy Documents**.  Hard-Copy Documents should be produced as single-page, black and white, 300 DPI, Group IV TIFF image file format together with Concordance or Summation Load Files (depending on the preference of the requesting party) with coded data contained in a separate file.  The producing party shall also provide document level OCR text files to accompany the TIFF format production.  The minimum fields for a scanned Hard-Copy Document record will be BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, PAGECOUNT, and TEXT, indicating the beginning and ending Bates numbers, attachments ranges of all documents, the custodian information, and the OCR or Optical Character Recognition text.

5.6     **Document Unitization for Hard-Copy Documents**.  If a Hard-Copy Document consists of more than one page, the Unitization of the Document and any attachments and/or affixed notes shall be maintained as it existed in the original Document, so that each page will not be split, but instead sequenced and saved together, as they existed in the original.  In the case of an organized compilation of

separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately.  The Parties will make their best efforts to unitize documents.

5.7     **Non-Custodial Documents**.  For Documents and ESI from non-custodial sources, the Parties shall cooperate to produce responsive Documents and ESI in a reasonably useable production format.

5.8     **Searchable Text**.  The Parties agree that they will produce Searchable Text for all Electronic Documents and Electronic Data produced where reasonably available and possible.  For all non-redacted ESI, the Searchable Text will be extracted directly from the native file.  Likewise, the Parties agree that they will produce Searchable Text for all Hard-Copy Documents that have been converted to images. For any document where text has been redacted, Searchable Text will be provided for the non-redacted text.

5.9     **Bates Numbering**.  Each page of a produced image shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production.  No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

5.10    **No Color**.  Documents and ESI in color need not be produced in color.  If a requesting party finds the black and white version of a document insufficient, the requesting party may request that the producing party provide a color image.  The

producing party will not unreasonably deny a request to provide a color image.  If the Parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute.  However, the requesting party does not have to make a good cause showing when it initially requests the document in color; instead, the requesting party may simply identify the document.  If a producing party converts a document to color image in response to a request from a requesting party, the producing party shall do so in JPEG or such other format as agreed with the requesting party.

5.11    **Foreign Language Documents**.  To the extent that Documents or ESI are produced that contain languages other than English, in whole or in part, the producing party shall produce all foreign language documents and ESI in the original language.  The producing party has no obligation to provide a translation of the Document or ESI or any portion thereof.

5.12    **Production Media**.  Documents shall be produced on CDs, DVDs, USB hard drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The Production Media shall be labeled with the Volume Number along with the Bates number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.  All documents produced on media will be produced in an encrypted format.

5.13    **Technical Issue Documents.**  The producing party will take reasonable steps, prior to production, to unencrypt and restore any discoverable ESI that is encrypted (e.g., password-protected) and will produce relevant, non-privileged Documents that can be reasonably unencrypted or restored.

6.  **PRIVILEGE AND PRIVILEGE LOGS**

6.1   The parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged.

6.2   With respect to information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

6.3   Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

7.  **MISCELLANEOUS**

7.1   **Third Party Documents**.  A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to these Actions have requested that third parties produce documents in accordance with the specifications set forth herein.  Within 14 days of receiving any Documents or ESI obtained pursuant to a non-Party subpoena, the Issuing Party shall produce such Documents or ESI to all other Parties, except where the Third Party Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents or ESI to all other Parties no later than three (3) days prior to the deposition.  Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

7.2   **Good Faith**.  The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Order.  If a producing party cannot comply with any material aspect of this Order, such Party shall inform the

requesting party in writing at or before the time of production as to why compliance with the Order was unreasonable or not possible.  No Party may seek relief from the Court concerning compliance with the Order unless it has conferred with other affected Parties to these actions.

7.3     **No Effect on Discovery or Admissibility**.  This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of any ESI.  Nothing in this Order shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

7.4     **Protective Order**.  All documents produced by the Parties will be subject to the terms of the Stipulated Protective Order entered in this Action.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP        SHAW KELLER LLP

*/s/ Rodger D. Smith II*                              */s/ Karen E. Keller*
Jack B. Blumenfeld (#1014)                     Karen E. Keller (#4489)
Rodger D. Smith II (#3778)                     I.M. Pei Building
Megan E. Dellinger (#5739)                    1105 North Market Street, 12th Floor
1201 North Market Street                         Wilmington, DE 19801
P.O. Box 1347                                          (302) 298-0700
Wilmington, DE  19899                           kkeller@shawkeller.com
(302) 658-9200
jblumenfeld@morrisnichols.com             *Attorneys for Defendants AstraZeneca*
rsmith@morrisnichols.com                      *Pharmaceuticals LP and AstraZeneca AB*
mdellinger@morrisnichols.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Steven N. Geise
Anthony M. Insogna
Meredith A. Stewart
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121-3134
(858) 314-1200

Gasper J. LaRosa
Lisamarie LoGiudice
JONES DAY
250 Vesey Street
New York, NY  10281
(212) 326-3939

Jason G. Winchester
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL  60601-1692
(312) 782-3939

Shehla Wynne*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
(212) 326-3939
*Admitted in New York; not admitted in
District of Columbia; practice limited to cases
in federal court and agencies

Attorneys for Puma Biotechnology, Inc.

Sara T. Horton
WILKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, IL  60654-3406
(312) 728-9040

Attorneys for Wyeth LLC

March 11, 2022

OF COUNSEL:

Christopher Sipes
Einar Stole
Megan Keane
Ashley Winkler
Jason Reinecke
Melissa Keech
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC  20001-4956
(202) 662-6000

**APPROVED AND SO ORDERED** this 15th day of March, 2022.

_____

THE HONORABLE JUDGE MATTHEW F. KENNELLY