IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUMA BIOTECHNOLOGY, INC. and WYETH LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. 21-1338-MFK |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA AB, | ) ) ) | |
| Defendants. | ) ) | |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA AB, | ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| PUMA BIOTECHNOLOGY, INC. and WYETH LLC, | ) ) ) | |
| Counterclaim-Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OF NO PRE-ISSUANCE DAMAGES**

OF COUNSEL:
Christopher N. Sipes
Einar Stole
Megan P. Keane
Ashley Winkler
Jason Reinecke
Melissa Keech
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Dated:  May 27, 2022

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for AstraZeneca Pharmaceuticals LP and AstraZeneca AB*

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 2

II.     STATEMENT OF FACTS ........................................................................................... 4

III.    SUMMARY OF ARGUMENT ..................................................................................... 4

IV.     ARGUMENT ............................................................................................................ 5

        A.      Plaintiffs have not pleaded a claim for pre-issuance damages. ............................. 7

        B.      Section 154(d) does not permit pre-issuance damages for the contributory
                and induced invasion of provisional rights of which AstraZeneca is
                accused. ................................................................................................................ 9

        C.      Plaintiffs' claims for pre-issuance damages under section 154(d) are
                statutorily barred because the invention claimed in the patents-in-suit is
                not substantially identical to the invention claimed in the published patent
                application. ........................................................................................................ 13

CONCLUSION ...................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Alza Corp. v. Andrx Pharms., LLC*,
   607 F. Supp. 2d 614 (D. Del. 2009)......................................................................................12

*Bayer Healthcare LLC v. Baxalta Inc.*,
   No. 16-cv-1122-RGA, 2019 WL 291143 (D. Del. Jan. 22, 2019)...........................................8

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
   129 F.3d 1247 (Fed. Cir. 1997).....................................................................................15, 20

*Classen Immunotherapies, Inc. v. Shionogi, Inc.*,
   993 F. Supp. 2d 569 (D. Md. 2014)......................................................................................14

*Cohen v. United States*,
   487 F.2d 525 (Ct. Cl. 1973) ...................................................................................................1

*De La Vega v. Microsoft Corp.*,
   No. W-19-cv-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020) ............................8

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
   No. 07-cv-3770 (DMC), 2009 WL 1444606 (D.N.J. May 21, 2009)......................................12

*GAF Bldg. Materials Corp. v. Elk Corp.*,
   90 F.3d 479 (Fed. Cir. 1996)...................................................................................................1

*Gayler v. Wilder*,
   51 U.S. 477 (1850)...................................................................................................................1

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
   72 F. Supp. 3d 521, 526 (D. Del. 2014)................................................................................15

*Hitkansut LLC v. United States*,
   130 Fed. Cl. 353 (2017) ........................................................................................................10

*Icon Outdoors, LLC v. Core Res., Inc.*,
   No. RDB-11-2967, 2013 WL 2476392 (D. Md. June 7, 2013) ........................................14, 16

*Jablonski v. Pan Am. World Airways, Inc.*,
   863 F.2d 289 (3d Cir. 1988)....................................................................................................5

*Laitram Corp v. NEC Corp.*,
   163 F.3d 1342 (Fed. Cir. 1998)...................................................................................14, 16, 20

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014)..............................................................................................................10

*McRee v. Goldman*,
　No. 11-CV-00991-LHK, 2012 WL 3745190 (N.D. Cal. Aug. 28, 2012)..............................11

*Meyer Intell. Props. Ltd. v. Bodum, Inc*.,
　690 F.3d 1354 (Fed. Cir. 2012)........................................................................................12

*MonoSol RX, LLC v. Biodelivery Scis. Int'l, Inc*.,
　No 10-5695 (FLW/DEA), 2015 WL 5679891 (D.N.J. Sept. 25, 2015)................................14

*Nat'l Presto Indus. v. West Bend Co*.,
　76 F.3d 1185 (Fed. Cir. 1996)..........................................................................................11

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
　414 U.S. 453 (1974).........................................................................................................10

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
　No. 10-CV-4686, 2011 WL 2837401 (N.D. Cal. July 14, 2011)..........................................11

*Pandora Jewelry, LLC v. Cappola Cap. Corp.*,
　No. 8:06-CV-845-T-24 EAJ, 2009 WL 10670285 (M.D. Fla. May 6, 2009).........................16

*Par Pharms., Inc. v. Twi Pharms., Inc.*,
　No. CCB-11-2466, 2013 WL 3777028 (D. Md. July 17, 2013)............................................12

*Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather & Plastic Co.*,
　767 F. Supp. 2d 806 (E.D. Mich. 2011)..................................................................14, 15, 20

*Rosebud LMS Inc. v. Adobe Sys*.,
　812 F.3d 1070 (Fed. Cir. 2016)................................................................................ *passim*

*Sloan Valve Co. v. Zurn Indus. Inc.*,
　No. 10–cv–00204, 2012 WL 6214608 (N.D. Ill. Dec. 12, 2012) ........................................11

*Sloan Valve Co. v. Zurn Indus., Inc.*,
　No. 10 C 204, 2012 WL 5306287 (N.D. Ill. Oct. 26, 2012)...........................................14, 15

*Sorias v. Nat'l Cellular USA, Inc.*,
　124 F. Supp. 3d 244, 256–57 (E.D.N.Y. 2015) ..................................................................9

*Sorna Corp. v. Pacsgear, Inc.*,
　No. 13-cv-2794 (ADM/LIB), 2014 WL 12605453 (D. Minn. Nov. 14, 2014) .......................8

*Warner-Lambert Co. v. Apotex Corp*.,
　316 F.3d 1348 (Fed. Cir. 2003).............................................................................7, 12, 13

*Worldwide Home Prods., Inc. v. Time, Inc.*,
　No. 11 Civ. 03633(LTS)(MHD), 2012 WL 6705876 (S.D.N.Y. Dec. 21, 2012)...................11

**Statutes**

28 U.S.C. § 1498(a) ....................................................................................................10

35 U.S.C. § 154(d) ................................................................................................ *passim*

35 U.S.C. § 252 .........................................................................................................14

35 U.S.C. § 271 ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................................1, 5, 14

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca AB (collectively, "AstraZeneca" or "Defendants") respectfully move this Court to grant judgment on the pleadings for AstraZeneca that Plaintiffs Puma Biotechnology, Inc. ("Puma") and Wyeth LLC ("Wyeth") (collectively, "Plaintiffs") are not entitled to damages for accused conduct occurring before the two patents-in-suit issued in March 2020.

It is well established that "there can be no infringement of a patent prior to its issuance." *Cohen v. United States*, 487 F.2d 525, 527 (Ct. Cl. 1973) (citations omitted); *see, e.g.*, *Gayler v. Wilder*, 51 U.S. 477, 493 (1850) ("The inventor of a new and useful improvement certainly has no exclusive right to it, until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued."); *GAF Bldg. Materials Corp. v. Elk Corp*., 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent[.]"). This limitation is embedded in the statutory definition of infringement, 35 U.S.C. § 271(a), which both defines infringing acts in terms of the "patented" invention and requires them to occur "during the term of the patent."

In 1999, Congress amended the Patent Code to add a limited set of "provisional rights" for a patent owner to obtain a reasonable royalty for certain pre-issuance acts under specific circumstances. These provisional rights are codified at 35 U.S.C. § 154(d). "Section 154(d) is a **narrow exception** to th[e] rule" that "patent owners may only collect damages for patent infringement that takes place during the term of the patent." *Rosebud LMS Inc. v. Adobe Sys*., 812 F.3d 1070, 1073 (Fed. Cir. 2016) (emphasis added). As discussed below, the availability of pre-issuance damages is strictly limited by statute with regard to both the acts and patent claims giving rise to pre-issuance liability.

In their Complaint, Plaintiffs do not plead the existence of provisional rights and their prayer for relief does not seek royalties under section 154(d). However, in their infringement contentions, Plaintiffs asserted infringement beginning in November 2015, almost five years before Plaintiffs' patents issued. In subsequent correspondence, Plaintiffs' counsel confirmed that that Plaintiffs are seeking pre-issuance royalties under section 154(d). Because the patents themselves did not issue until March 2020, Plaintiffs' new contentions seeking pre-issuance royalties dramatically expand, by more than a factor of two, the time period for remedies sought in this case.

Plaintiffs' belated claim for pre-issuance royalties should be dismissed for three independent reasons. First, Plaintiffs neither seek remedies under section 154(d) in their Complaint nor plead the factual predicates for their recovery. Second, as applicable here, provisional rights are limited to those instances where a party "makes, uses, offers for sale, or sells in the United States the invention," *see* 35 U.S.C. § 154(d)(1)(A)(i), and Plaintiffs do not allege that AstraZeneca itself makes, uses, offers for sale, or sells the purported invention. Instead, Plaintiffs allege only that AstraZeneca sells a product that others use in carrying out the claimed method—conduct that, even as alleged, amounts at most to induced or contributory infringement, for which pre-issuance damages are not available. And third, Plaintiffs claims are independently barred by the statutory requirement under section 154(d)(2) that, to recover pre-issuance damages, the patent claims as issued must be "substantially identical" to those in the earlier, published patent application. For any of these reasons, Plaintiffs' purported claim for pre-issuance damages should be dismissed.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On September 22, 2021, Plaintiffs filed this lawsuit alleging infringement of one or more claims of United States Patent Nos. 10,603,314 ("the '314 Patent") and 10,596,162 ("the '162

2

Patent") (collectively, the "patents-in-suit"), both of which issued in March 2020. D.I. 1, ¶¶ 37, 41; Ex. 7 (the '314 Patent);[1] Ex. 8 (the '162 Patent). The patents-in-suit are directed to methods of treating resistant forms of non-small cell lung cancer ("NSCLC"). *See id.*, ¶¶ 40, 42. In their complaint, Plaintiffs' allege infringement based on AstraZeneca's "commercial manufacture, use, importation, marketing, sale, and/or offer for sale" of Tagrisso®, an FDA approved drug, and "[t]he use of AstraZeneca's Tagrisso® products by pharmacies, hospitals, clinics, healthcare professionals, and other end users to treat NSCLC patients" in accordance with Tagrisso®'s FDA-approved labeling. D.I. 1, ¶¶ 50–51, 62–63. Plaintiffs seek, among other things, judgment that AstraZeneca contributed to, and induced, infringement of the patents-in-suit. *See id.* at 19 (prayer for relief, items a and c). AstraZeneca filed its answer, affirmative defenses, and counterclaims on November 5, 2021. D.I. 8.

On March 18, 2022, pursuant to this Court's scheduling order, Plaintiffs served their infringement contentions. *See* D.I. 43 (Notice of Service of Plaintiffs' Disclosure of Asserted Claims and Infringement Contentions Regarding U.S. Patent Nos. 10,603,314 and 10,596,162). In their contentions (*see* Ex. 1), Plaintiffs assert that AstraZeneca's alleged infringement began in November 2015, upon approval of its Tagrisso® drug product. Ex. 1, at 3. After Defendants sought clarification, Plaintiffs stated in a letter dated April 7, 2022 that they seek "pre-issuance damages" under section 154(d) dating back to that date.[2] Ex. 2, Plaintiffs' April 7, 2022 Letter, at 1–2.

---

[1] Ex. _ refers to the exhibits attached to the Declaration of Jason Reinecke.

[2] Section 154(d) does not authorize "damages" but rather the "right to obtain a reasonable royalty" in limited circumstances. AstraZeneca understands Plaintiffs' claim for "pre-issuance damages" under section 154(d) to be limited to the statutorily authorized reasonable royalty. Throughout the brief, AstraZeneca refers to the statutorily authorized reasonable royalty as "pre-issuance damages" and "pre-issuance royalties."

Discovery has just begun. Under the governing Scheduling Order, discovery is not scheduled to close until March 24, 2023, and trial is set for on or after May 13, 2024.

## II.    STATEMENT OF FACTS

The two patents-at-issue here claim methods of treating patients. More specifically, the patents claim certain methods of treating patients with "gefitinib and/or erlotinib resistant non-small cell lung cancer." The earliest patent applications to which the patents claim priority were filed in 2005. However, the Patent Office raised repeated objections to the proposed claims, the applicants amended the claims numerous times to overcome those objections, and the patents-in-suit did not issue until March 2020.

AstraZeneca is a pharmaceutical manufacturer and does not itself treat patients. Plaintiffs do not allege that AstraZeneca engages in the claimed methods of treatment. Instead, Plaintiffs allege that "end users" such as "pharmacies, hospitals, clinics, and health care professionals" directly infringe the claimed methods under 35 U.S.C. § 271(a) by using Tagrisso® in accordance with its FDA-approved labeling. D.I. 1, ¶¶ 51, 63. Plaintiffs' allege that AstraZeneca, by its manufacture and marketing of Tagrisso®, indirectly infringes under §§ 271(b), (c) by inducing and/or contributing to the alleged infringement by those third-party end users. *Id.*, ¶¶ 52–53, 55, 65–67. Plaintiffs, in their prayer for relief, do not seek a judgment that AstraZeneca directly infringes the claims of the patents-in-suit. *See* D.I. 1 at 19.

## III.    SUMMARY OF ARGUMENT

This Court should dismiss Plaintiffs' claim for pre-issuance damages. First, Plaintiff's complaint contains no claim for pre-issuance damages and fails to allege the necessary factual predicates for such a claim. Section 154(d) contains specific and exacting requirements for seeking pre-issuance damages, limiting both the parties subject to such liability and the patent claims that may support such a claim. And second, even had Plaintiffs asserted such a claim in

4

their complaint, it would nonetheless be legally deficient for two separate reasons—Plaintiffs do not allege acts by AstraZeneca that would support a claim under section 154(d)(1) and because the patents asserted by Plaintiffs cannot meet the "substantial identicality" requirement of section 154(d)(2).

As to the former, pre-issuance damages is limited by section 154(d) to those parties who commit acts amounting to direct infringement of the claims. But here the asserted claims are directed to methods of treating patients. AstraZeneca, as a drug manufacturer, develops, manufactures, and markets new drugs. AstraZeneca does not directly treat patients (and Plaintiffs' do not plead otherwise), and the law is well settled that the actions AstraZeneca is alleged to have committed do not amount to direct infringement; as such, they cannot support a claim for pre-issuance damages.

As to the latter, the claims of the patents Plaintiffs assert here were all substantially amended during prosecution to narrow their scope before they were allowed and the patents issued.  They are therefore not "substantially identical" to the patent claims published in Plaintiffs' published patent application, as a matter of law, and accordingly pre-issuance damages are barred by section 154(d)(2).

## IV.    ARGUMENT

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (citation and quotation marks omitted).

In general, patent owners may collect damages only for acts that takes place during the term of the patent. *See Rosebud*, 812 F.3d at 1073. Section 154(d) provides a narrow exception to that rule, providing for "Provisional Rights" to pre-issuance damages under very limited circumstances:

> (1) [A] patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent under section 122(b), . . . and ending on the date the patent is issued—
>
> > (A)(i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States . . . and
> >
> > (B) had actual notice of the published patent application . . . .
>
> (2) [A] reasonable royalty shall not be available under this subsection unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application . . . .

35 U.S.C. § 154(d).[3] Under the statute, pre-issuance damages are available only for certain enumerated acts, and even then only if the invention claimed in the patent is substantially identical to the invention claimed in the published patent application and the acts were undertaken with actual notice of the published application. Plaintiffs are not entitled to pre-issuance damages for at least the following reasons: (1) Plaintiffs neither plead the factual predicates for enforcement of provisional rights in their Complaint nor sought recovery under section 154(d); (2) section 154(d) does not, in any event, provide for pre-issuance damages for

---

[3] 35 U.S.C. § 154(d)(1) also provides that "if the invention as claimed in the published patent application is a process," the patent owner may seek royalties for uses, offers for sale, or sales of "products made by that process as claimed in the published patent application." That provision is not applicable here, as neither the issued claims nor those of the published application are directed to a process for making a product, and Plaintiffs do not allege that AstraZeneca's product is made by a patented process.

the acts that Plaintiffs accuse AstraZeneca of performing (i.e., inducing others to use and contributing to the use of the methods claimed in the published patent application); and (3) the invention claimed in the patents-in-suit is not substantially identical to the invention as claimed in the published patent application that Plaintiffs assert was known to AstraZeneca. These are discussed in turn below.

**A.   Plaintiffs have not pleaded a claim for pre-issuance damages.**

Plaintiffs failed to plead a claim for pre-issuance damages under section 154(d). As noted above, Plaintiffs' Complaint never alleges the existence of provisional rights and the prayer for relief does not seek a remedy under section 154(d).

Nor have Plaintiffs pleaded the factual predicates for enforcement of provisional rights in their Complaint. The Complaint identifies a single published application to which the patents-in-suit claim priority, WO 2006/084058 A2, as allegedly within the knowledge of AstraZeneca. *See* D.I. 1,¶¶ 54, 64. Plaintiffs do not allege that AstraZeneca "makes, uses, offers for sale, or sells in the United States the invention as claimed in" that (or any other) published patent application, as required by section 154(d)(1)(A)(i). Nor could they, since the claims in that application are directed to methods of treatment—activity engaged in by healthcare providers, not pharmaceutical manufacturers. *See, e.g.*, *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 n.7 (Fed. Cir. 2003) ("[P]harmaceutical companies do not generally treat diseases; rather, they sell drugs to wholesalers or pharmacists, who in turn sell the drugs to patients possessing prescriptions from physicians. Pharmaceutical companies also occasionally give samples of drugs to doctors and hospitals. In none of these cases, however, does the company itself *treat* the disease." (emphasis in original)).

In addition, section 154(d)(2) requires that the claims of the published patent application be "substantially identical" to those of the patents-in-suit. As discussed in Section C below, the

7

claims of WO 2006/084058 A2 are not substantially identical to those of the patents-in-suit. And Plaintiffs do not allege otherwise. To the contrary, in their Complaint, they allege only that the claims of a **European patent** that issued in April 2011¸ EP 1848414 B1, are "the same or similar" to those of the patents-in-suit. D.I. 1, ¶¶ 54, 64. Not only is this the wrong standard— "same or similar" does not meet the strict statutory requirement of "substantially identical"— Plaintiffs also apply that standard to the wrong thing. The statute requires the claims of the patent-in-suit to be substantially identical to the published *application* to which it claims priority; that a related European patent may have substantially identical claims (which in any event it does not) is irrelevant. *See Rosebud*, 812 F.3d at 1075 (rejecting reliance on publication of related patent for purposes of pre-issuance damages under section 154(d)); *Bayer Healthcare LLC v. Baxalta Inc.*, No. 16-cv-1122-RGA, 2019 WL 291143, at *2 (D. Del. Jan. 22, 2019) (explaining that "'the published patent application' in § 154(d) is limited to the initial published application").

In short, Plaintiffs have failed to plead a claim for pre-issuance damages. *See* D.I. 1 (no reference to section 154(d) or provisional rights, no allegations that AstraZeneca engaged in the conduct specified in section 154(d)(1), and no allegations that the patents-in-suit contain claims meeting the requirements of section 154(d)(2)). For that reason, Plaintiffs' claim for pre-issuance damages should be dismissed. *See, e.g.*, *De La Vega v. Microsoft Corp.*, No. W-19-cv-00612-ADA, 2020 WL 3528411, at *5 n.6 (W.D. Tex. Feb. 11, 2020) (dismissing claim for pre-issuance damages for failure to plead required elements); *Sorna Corp. v. Pacsgear, Inc.*, No. 13-cv-2794 (ADM/LIB), 2014 WL 12605453, at *5 (D. Minn. Nov. 14, 2014) (reviewing cases and concluding that "a claim of pre-issuance infringement pursuant to 35 U.S.C. § 154(d) should

generally be expressly pled in a complaint as a claim that is separate from a claim of infringement pursuant to 35 U.S.C. § 271").

**B.      Section 154(d) does not permit pre-issuance damages for the contributory and induced invasion of provisional rights of which AstraZeneca is accused.**

As noted above, a patent holder must meet specific requirements concerning the accused conduct and enforced patent claims in order to recover under section 154(d). "These requirements are strict," since section 154(d) provides an "extraordinary remedy" to a patentee— collecting damages before its patent issues. *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 256–57 (E.D.N.Y. 2015). Plaintiffs' allegations against AstraZeneca do not, and Plaintiffs cannot, meet the requirements for pre-issuance damages under section 154(d) because Plaintiffs accuse AstraZeneca only of conduct amounting to inducing or contributing to others' alleged infringement (collectively, "indirect infringement"), and not of directly infringing the claims themselves, and section 154(d) does not permit recovery for pre-issuance damages from indirect infringers.

Section 154(d)(1) specifies two types of parties who may be held liable for pre-issuance damages. First, section 154(d)(1)(a)(i) permits recovery (assuming the other requirements are met) from "any person who . . . makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States." This provision parallels the language of section 271(a) that defines the act of direct infringement. Second, section 154(d)(1)(a)(ii) permits recovery, "if the invention claimed in the published patent application is a process," from any person who "uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application." This provision incorporates the language of 35 U.S.C. § 271(g), which originated in the Process Patent Amendments Act. Importantly,

9

Congress did not include in section 154(d) any provision incorporating the language of 35 U.S.C. §§ 271(b) or (c)—the provisions defining induced and contributory infringement. *Cf. Hitkansut LLC v. United States*, 130 Fed. Cl. 353, 367–68 (2017) (waiver of sovereign immunity in 28 U.S.C. § 1498(a) for the government's "use or manufacture" of a claimed invention limited to directed infringement and does not permit recovery for induced or contributory infringement).

The statutory language imposing liability for induced or contributory infringement is very different than anything found in section 154(d)(1). Section 271(b) expressly provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). And section 271(c) provides that "[w]hoever offers to sell or sells within the United States or imports into the United States a component . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c). Section 154(d) contains no such language, and Congress' decision to limit pre-issuance damages to entities that directly infringe and not to include induced or contributory infringement should be respected. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."); *see also Rosebud*, 812 F.3d at 1074–75 (refusing to expand section 154(d) beyond its plain text).

There is nothing surprising about Congress's decision not to extend pre-issuance damages to indirect infringers. It is well established that there can be no liability for indirect infringement without the existence first of direct infringement. *See, e.g.*, *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 917, 921 & n.3 (2014). Thus, the Federal Circuit has

10

held that there can be no liability for allegedly inducing acts that precede the issuance of a patent, even if the infringing acts themselves occur later. *See Nat'l Presto Indus. v. West Bend Co*., 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("[I]nducement of infringement under § 271(b) does not lie when the acts of inducement occurred before there existed a patent to be infringed."). Especially given what the Federal Circuit, in construing section 154(d), has called "the extraordinary nature of statutory pre-issuance damages," *Rosebud*, 812 F.3d at 1074, it was perfectly sensible for Congress to limit pre-issuance damages to those who directly infringe provisional rights and not to impose that liability as well upon those accused only of conduct indirectly leading to alleged infringement.

In any event, the language of section 154(d) clearly does not impose pre-issuance liability on those accused only of induced or contributory infringement, and district courts considering the issue after the enactment of section 154(d) have followed *National Presto* and dismissed claims for pre-issuance damages alleged against indirect infringers. *See, e.g.*, *Worldwide Home Prods., Inc. v. Time, Inc.*, No. 11 Civ. 03633(LTS)(MHD), 2012 WL 6705876, at *2 (S.D.N.Y. Dec. 21, 2012) (reviewing cases and dismissing claim for pre-issuance damages for induced infringement); *Sloan Valve Co. v. Zurn Indus. Inc.*, No. 10–cv–00204, 2012 WL 6214608, at *3 (N.D. Ill. Dec. 12, 2012) ("*Sloan Valve II*") (striking allegations of induced and contributory infringement as irrelevant to claims for provisional damages under section 154(d)); *McRee v. Goldman*, No. 11-CV-00991-LHK, 2012 WL 3745190, at *3 (N.D. Cal. Aug. 28, 2012) (dismissing claim for pre-issuance damages for induced infringement); *Nazomi Commc'ns, Inc. v. Nokia Corp.*, No. 10-CV-4686, 2011 WL 2837401, at *2 (N.D. Cal. July 14, 2011) (same).

Here, Plaintiffs accuse AstraZeneca only of conduct amounting to induced or contributory infringement. They do not allege that AstraZeneca "makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States," as section 154(d)(1) requires. Nor could they, since the claims in the published application are directed to methods of treatment—activity engaged in by healthcare providers, not pharmaceutical manufacturers like AstraZeneca. *See, e.g.*, *Warner-Lambert*, 316 F.3d at 1363 n.7.

It is well established that "[a] method claim is *directly* infringed only by one practicing the patented method." *Joy Techs.*, 6 F.3d at 775 (Fed. Cir. 1993) (emphasis in original); *see also Meyer Intell. Props. Ltd. v. Bodum, Inc*., 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced."). "[A] method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method." *Joy Techs.*, 6 F.3d at 774–75. For this reason, a claim to a method of treatment is directly infringed only by those who carry out the claimed method; the sale of drug product for use in carrying out the method is not sufficient. *See Warner-Lambert*, 316 F.3d at 1363 (no direct infringement of method claims where accused drug manufacture did not and would not practice the claimed method); *see also, e.g.*, *Par Pharms., Inc. v. Twi Pharms., Inc.*, No. CCB-11-2466, 2013 WL 3777028, at *6 (D. Md. July 17, 2013) ("[P]harmaceutical companies cannot be held liable for directly infringing a method-of-treatment patent where the company will not directly treat any patients."); *Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-cv-3770 (DMC), 2009 WL 1444606, at *4 (D.N.J. May 21, 2009) (no direct infringement where accused drug manufacturers "do not treat patients or prescribe drugs"); *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 623 (D. Del. 2009) ("Andrx, a

12

pharmaceutical company that does not treat diseases, can at most be liable as a contributory infringer or an inducer of infringement."). Plaintiffs do not, and cannot, allege that AstraZeneca itself treats patients or prescribes drugs, and therefore do not allege the factual predicate necessary for a claim of direct infringement.[4] Plaintiffs' allegations do not amount to making, using, selling, or offering for sale the claimed method of treatment, as required for section 154(d)(1)(A)(i).

Accordingly, Plaintiffs do not, and cannot, state a claim for recovery of pre-issuance damages under section 154(d), and its belated claim for such relief should be dismissed.

### C. Plaintiffs' claims for pre-issuance damages under section 154(d) are statutorily barred because the invention claimed in the patents-in-suit is not substantially identical to the invention claimed in the published patent application.

Provisional rights under section 154(d) apply only where "the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application." 35 U.S.C. § 154(d)(2). Because Plaintiffs' patent claims are not substantially identical to the claims of the published patent application, provisional rights are barred irrespective of whether Plaintiffs' asked for such rights in their complaint (which they have not, *see supra* Section IV.A), and even if such rights were available for alleged acts of indirect infringement (which they are not, *see supra* Section IV.B).

---

[4] Although Plaintiffs' complaint assert that AstraZeneca directly infringes the claims and cites 35 U.S.C. § 271(a), the conduct alleged is only AstraZeneca's "commercial manufacture, use, importation, marketing, sale, and/or offer for sale" of Tagrisso® products. D.I. 1, ¶¶ 50, 62. None of the alleged conduct constitutes treating patients or prescribing drugs and hence, under settled law, does not support a claim for direct infringement by AstraZeneca. Moreover, activity AstraZeneca undertook in developing Tagrisso® would be protected from infringement liability by the safe harbor of 35 U.S.C. § 271(e)(1). *See, e.g.*, *Warner-Lambert*, 316 F.3d at 1363 n.7 (noting that the activities of pharmaceutical companies in developing a product, such as "in-house testing to establish bioequivalence and bioavailability," "would in any event be noninfringing according to 35 U.S.C. § 271(e)(1))").

Whether the claims of a published patent application are "substantially identical" to those of the issued patent is a question of law. *See Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2012 WL 5306287, at *4 (N.D. Ill. Oct. 26, 2012) ("*Sloan Valve I*"); *see also Laitram Corp v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). Claims for pre-issuance damages under section 154(d) can be denied in a Rule 12(c) motion when the patent claims are not substantially identical to its published application's claims. *See, e.g.*, *Classen Immunotherapies, Inc. v. Shionogi, Inc.*, 993 F. Supp. 2d 569, 579–80 (D. Md. 2014) (dismissing on a Rule 12(b)(6) motion claim for pre-issuance damages under section 154(d)); *Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather & Plastic Co.*, 767 F. Supp. 2d 806, 813 (E.D. Mich. 2011) (same).

To determine whether "the invention as claimed in the patent is substantially identical to the published patent application," 35 U.S.C. § 154(d)(2), courts have looked to case law (such as *Laitram*) addressing whether reissue claims are "substantially identical" to original claims for purposes of intervening rights under 35 U.S.C. § 252. *See Icon Outdoors, LLC v. Core Res., Inc.*, No. RDB-11-2967, 2013 WL 2476392, at *14 (D. Md. June 7, 2013); *Sloan Valve I*, 2012 WL 5306287, at *4. Under this test, the issued claims are "substantially identical" to the published claims "if they are 'without substantive change.'" *Laitram*, 163 F.3d at 1346 (quoting *Seattle Box Co. v. Indus. Crating & Packing*, 731 F.2d 818, 827–28 (Fed. Cir. 1984)). The test looks to the scope of the claim, not its words: "in determining whether substantive changes have been made, we must discern whether the *scope* of the claims are identical, not merely whether different words are used." *Laitram*, 163 F.3d at 1346 (emphasis in original); *MonoSol RX, LLC v. Biodelivery Scis. Int'l, Inc.*, No 10-5695 (FLW/DEA), 2015 WL 5679891, at *9 (D.N.J. Sept. 25, 2015) ("[T]he focus is on whether the amended claims are of a 'different scope' than the original claims."). A patent claim narrowed by amendment is not substantially identical to the published

14

claim. *See Prestige*, 767 F. Supp. 2d at 812 ("[A]n amendment that narrows the scope of a claim is a substantial change."); *see also, e.g.*, *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (explaining that an amendment was a substantive change where it "narrowed the claims to exclude an injected gas stream that includes combustion air, and to require a separate combustion air stream," and where the change was necessary to overcome prior art); *Sloan Valve I*, 2012 WL 5306287, at *6.

As noted above, Plaintiffs identify a single published patent application in their Complaint—WO 2006/084058 A2, which published on August 10, 2006. Unsurprisingly, given that the patents-in-suit were not issued until almost 14 years later, in March 2020, the claims in the published application underwent substantial amendment prior to issuance. It is facially apparent that the claims of Plaintiffs' published patent applications are not substantially identical to those in the issued patents.[5] Exhibit 4 hereto compares claims of the published patent application with the asserted claims of the patents-in-suit. Importantly, all of the claims of the issued patent are limited to methods of treating gefitinib and/or erlotinib resistant non-small cell lung cancer by administering daily doses of certain pharmaceutical compositions. By contrast, the claims of WO 2006/084058 are directed to methods of treating gefitinib and/or erlotinib resistant cancer generally, with even the narrowest dependent claims directed to treating any one of **sixteen** different types of gefitinib and/or erlotinib resistant cancers—including cancer not just of the lung (and not just NSCLC) but also cancers of 14 other organs. Ex. 3, WO 2006/084058, at

---

[5] The Court can take judicial notice of, and consider, the published patent application and the prosecution histories of the patents-in-suit because those are matters of public record. *See, e.g.*, *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014).

claims 10, 20, 27.[6] Moreover, while all of the claims of the patents-in-suit are limited to

administration of daily doses of medicament, none of the claims of the published application are

so limited, with the application instructing that "[t]he quantity to be administered and timing

depends upon the subject to be treated, capacity of the subject's system to utilize the active

ingredient, and degree of therapeutic effect desired." *Id.*, ¶ 0044.

The claims of the patents-in-suit are thus manifestly narrower than those of the published

application, both as to the type of patients administered treatment (just non-small cell lung

cancer patients rather than any of at least sixteen different cancers) and as to the dosing regimen

(just daily dosing rather than any dosing regimen). These differences alone suffice to establish

that the claims as issued are not substantially identical to those of published patent application.

*See Laitram*, 163 F.3d at 1349 (concluding that a change from "alphanumeric characters" to

"type quality alphanumeric characters" "narrowed the original claims, substantively changing

them"); *Icon Outdoors*, 2013 WL 2476392, at *14–15 (rejecting section 154(d) claim because

change in claim from "waterproof or windproof" to "waterproof and windproof" garment was "a

substantive change, narrowing the types of garments that the [patent-in-suit] would encompass");

*Pandora Jewelry, LLC v. Cappola Cap. Corp.*, No. 8:06-CV-845-T-24 EAJ, 2009 WL

10670285, at *5 (M.D. Fla. May 6, 2009) (holding change from "two or more" beads to "at least

one" ornament was substantive, precluding pre-issuance damages).

The prosecution histories of the '314 and '162 Patents further illustrate that the claims

here were substantively changed from those of the published WO 2006/084058. With regard to

---

[6] The published application also contains claims to treatment of "epithelial cell cancer," *id.* at claims 9, 19, 26, a category of cancers encompassing a wide range of affected organs: "for example, prostate cancer, breast cancer, colon cancer, lung cancer, pancreatic cancer, ovarian cancer, cancer of the spleen, testicular cancer, cancer of the thymus, etc.," *id.* at [001].

the '314 Patent, for example, in a May 9, 2016 Final Rejection, the Examiner rejected the

pending claims, which were then directed to treating gefitinib and/or erlotinib resistant cancer, as

unpatentable because they lacked novelty (that is, were anticipated under section 102(b)) over a

prior art published patent application, "Agus," that the Examiner understood to describe methods

of treating resistant cancers such as "epithelial cancers," and "prostate, breast, gastric, colorectal,

pancreatic, and ovarian cancer and glioblastoma." Ex. 5, May 9, 2016 Final Rejection at 3

(PUMAWYETH-TAG00009911). In their August 1, 2016 Amendment and Response, the

applicants amended the pending claims to limit them to treatment of resistant non-small cell lung

cancer. Ex. 5, August 1, 2016 Response at 2 (PUMAWYETH-TAG00010029) (amending

pending claim 29 to add a limitation to treating resistant NSCLC). Based on the amendment, the

applicants argued that "unlike the amended claims, Agus fails to teach a method for treating

gefitinib and/or erlotinib resistant non-small cell lung cancer, comprising . . . ." *Id.* at 4

(PUMAWYETH-TAG00010031).

In response, the Examiner rejected the amended claims as unpatentable, this time as

obvious in light of Agus and other prior art (Smaill and Harare), which together taught the then-

pending claimed method of treating resistant NSCLC. *See* Ex. 5, March 28, 2017 Final Rejection

at 2 (PUMAWYETH-TAG10101). In response, the applicants again amended the claims to add

yet another limitation, requiring the NSCLC patient be administered the specified medicament as

a "unit dosage." Ex. 5, July 28, 2017 Amendment and Response at 2 (PUMAWYETH-

TAG00010119). The applicants argued that "the method of administering a pharmaceutical

composition comprising a unit dosage of an irreversible epidermal growth factor receptor

(EGFR), as specified in the amended claims, is neither taught nor suggested by Agus." *Id.* at 5

(PUMAWYETH-TAG00010122).

However, the Examiner did not agree that the limitation to administration of medicament in a "unit dosage" sufficed to distinguish the prior art, and thus issued a final rejection of all the pending claims on February 14, 2019, stating that "the limitation of a unit dosage in the claims dose [*sic*; does] not differentiate the claims from the prior art." Ex. 5, February 14, 2019 Final Rejection at 6 (PUMAWYETH-TAG00010396). In response, the applicants introduced yet another new limitation into the claims, amending them to require "daily" administration of the unit dosage. Ex. 5, August 14, 2019 Amendment and Response at 2 (PUMAWYETH-TAG00010419); *see also id.* at 4 (PUMAWYETH-TAG00010421) (explaining that the sole pending independent claim "has been amended to specify daily administration of the specified pharmaceutical composition"). Applicants argued that "Agus *teaches away* from conventional TKI therapy involving standard daily dosing administration of a TKI, because the increased daily dosages [resistant-surmounting quantity] are not well-tolerated. Accordingly, as Agus fails to teach or suggest each of the limitations of the amended claims, Applicants submit that the amended claims are patentable over Agus." *Id.* at 8 (PUMAWYETH-TAG00010425) (emphasis and alterations in original).

As issued, the sole independent claim (and hence all the claims) of the '314 Patent contains all three of these new limitations and require, in a method of treating resistant NSCLC, the daily administration to such patients of a unit dosage of the specified pharmaceutical composition. *See* Ex. 7, '314 Patent, claim 1. None of these limitations as to type of patient (NSCLC), type of composition (unit dosage), and type of dosing regimen (daily administration) appear in the claims of the published patent application. Ex. 3, WO 2006/084058, at 33–35. And each of these limitations was added to the claims deliberately, for purposes of overcoming the Examiner's rejections and distinguishing the cited prior art.

18

The prosecution history of the '162 Patent claims is similar. Here, too, the applicants responded to the Examiner's rejection of the pending claims by amending the claims to limit the type of cancer to treat to "gefitinib and/or erlotinib resistant non-small cell lung cancer" having "a T790M mutation in EGFR." Ex. 6, July 24, 2017 Amendment and Response at 2 (PUMAWYETH-TAG00011026); *see also id.* at 3–4 (PUMAWYETH-TAG00011027–28). Here, too, the applicants responded to a subsequent rejection by further amending the claims to require administration of the medicament as a "unit dosage" (and also to exclude the medicament CL-387,785). *See* Ex. 6, Feb. 22, 2018 Amendment and Response at 2 (PUMAWYETH-TAG00011063); *see also id.* at 3 (PUMAWYETH-TAG00011064) (describing the applicants' amendments to the pending claims). And here, too, the applicants further amended the claims, in response to a later rejection, to limit the claimed methods to daily administration of the unit dosage (and to limit the dosing to 2-500 mg). *See* Ex. 6, May 7, 2019 Amendment and Response at 2 (PUMAWYETH-TAG00011275); *see also id.* at 5 (PUMAWYETH-TAG00011268), 7–8 (PUMAWYETH-TAG00011270–71) (describing claim amendments and distinguishing prior art based on the claim requirement of daily administration). As issued, the sole independent claim, and hence all the claims, of the '162 Patent contain all the above limitations and require in a method of treating resistant NSCLC with a T790M mutation, the daily administration to such patients of a unit dosage of the specified pharmaceutical composition with the specified amount of medicament (excluding CL-387,785). *See* Ex. 8, '162 Patent, claim 1. And here, too, each of these limitations was added to the claims deliberately, for purposes of overcoming the Examiner's rejections and distinguishing the cited prior art.

Thus, the prosecution history further confirms that the claims of the issued patents were limited by narrowing amendments that substantively changed the scope of the claims. *See, e.g.,*

*Bloom*, 129 F.3d at 1251 (holding that a narrowing amendment made to overcome prior art was a substantive change); *Prestige*, 767 F. Supp. 2d at 813 (same); *see also Laitram,* 163 F.3d at 1348.

Accordingly, the claims in the published patent applications were substantively changed prior to issuance, and for that reason Plaintiffs' request for pre-issuance damages is improper under section 154(d)(2).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant judgment on the pleadings for AstraZeneca that Plaintiffs are not entitled to pre-issuance patent damages under section 154(d).

*/s/ Karen E. Keller*
 Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for AstraZeneca Pharmaceuticals LP and AstraZeneca AB*

OF COUNSEL:
Christopher N. Sipes
Einar Stole
Megan P. Keane
Ashley Winkler
Jason Reinecke
Melissa Keech
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Dated: May 27, 2022