IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUMA BIOTECHNOLOGY, INC. and WYETH LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 21-1338 (MFK) |
| | ) | |
| v. | ) | ▉▉▉▉▉▉▉▉ |
| | ) | |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA AB, | ) | ▉▉▉▉▉▉▉▉▉ |
| | ) | ▉▉▉▉▉▉▉▉▉▉ |
| Defendants. | ) | REDACTED - PUBLIC VERSION |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Megan E. Dellinger (#5739)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
mdellinger@morrisnichols.com
tmurray@morrisnichols.com

OF COUNSEL:

Steven N. Geise
Anthony M. Insogna
Meredith A. Stewart
Miguel A. Alvarez
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA  92121-3134
(858) 314-1200

*Attorneys for Plaintiffs*

Gasper J. LaRosa
Lisamarie LoGuidice
JONES DAY
250 Vesey Street
New York, NY  10281
(212) 326-3939

Sara T. Horton
Ren-How Harn
Henry C. Thomas
WILKIE FARR & GALLAGHER LLP
300 North LaSalle
Chicago, IL  60654-3406
(312) 728-9040

Jason G. Winchester
Michelle B. Smit
Jeffrey S. Messing
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL  60606
(312) 782-3939

*Attorneys for Wyeth LLC*

John C. Evans, Ph.D.
JONES DAY
North Point 901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939

Alexis Adian Smith
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071
(213) 243-1542

Daniele San Román
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
(202) 879-3939

*Attorneys for Puma Biotechnology, Inc.*

January 12, 2024

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... v

TABLE OF EXHIBITS ....................................................................................................... vi

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.  LEGAL STANDARDS ............................................................................................ 4

III. BACKGROUND .................................................................................................... 4

IV.  ARGUMENT .......................................................................................................... 5

    A.   AZ's Arguments Are Untimely and Cannot Justify Summary Judgment ............. 5

    B.   Summary Judgment for Lack of Enablement Should Be Denied ......................... 6

        1.   The Claims Are Enabled ............................................................................ 6

        2.   The Claims Are Enabled with Respect to G/E-Resistant NSCLC ...................... 9

    C.   Summary Judgment for Lack of Written Description Should Be Denied ........... 11

        1.   The Claims Are Described for an Irreversible EGFR Inhibitor ........................ 12

        2.   The Claims Are Described for G/E-Resistant NSCLC .................................... 17

        3.   Claim 1 of the '162 Patent Has Adequate Written Description Support for the Exclusion of a Known Compound .......................................... 18

V.   CONCLUSION .................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page**

<span style="font-variant: small-caps;">Cases</span>

*10X Genomics, Inc. v. NanoString Techs., Inc.*,
   Case No. 21-cv-653 (D. Del. Nov. 8, 2023) ..........................................................16

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
   759 F.3d 1285 (Fed. Cir. 2014)......................................................................12, 13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003)................................................................................1

*Amgen Inc. v. Sanofi*,
   598 U.S. 594 (2023).................................................................................1, 8, 9

*Ariad Pharms., Inc. v. Eli Lilly and Co.*,
   598 F.3d 1336 (Fed. Cir. 2010)......................................................................12, 16

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
   750 F.2d 1569 (Fed. Cir. 1984)..............................................................................11

*Baxalta Inc. v. Genentech, Inc.*,
   81 F.4th 1362 (Fed. Cir. 2023) ...............................................................................3

*Biogen Int'l GmbH v. Mylan Pharms.*,
   18 F.4th 1333 (Fed. Cir. 2021) ..............................................................................17

*Capon v. Eshhar*,
   418 F.3d 1349 (Fed. Cir. 2005)..............................................................................12

*Cradle IP, LLC v. Texas Instruments, Inc.*,
   5 F.Supp.3d 626 (D. Del. 2013)..............................................................................10

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
   276 F. Supp. 3d 629 (E.D. Tex. 2017), *aff'd*, 739 F. App'x 643 (Fed. Cir.
   2018) ........................................................................................................ passim

*Gavrieli Brands LLC v. Soto Massini (USA) Corp.*,
   No. 18-462 (MN), 2019 WL 10248462 (D. Del. Apr. 18, 2019) ...............................5

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Bimeda Res. & Dev. Ltd.*,
724 F.3d 1320 (Fed. Cir. 2013)...................................................................................18

*In re Johnson*,
558 F.2d 1008 (C.C.P.A. 1977) ..................................................................................18

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988)......................................................................................1

*Inventio AG v. ThyssenKrupp Elevator Corp.*,
No. CV 08-00874-RGA, 2014 WL 468897 (D. Del. Feb. 3, 2014) .........................5

*Invitrogen Corp. v. Clontech Labs., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005)..................................................................................12

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
10 F.4th 1330 (Fed. Cir. 2021) ..................................................................................16

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
959 F.3d 1091 (Fed. Cir. 2020)...............................................................................8, 9

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)........................................................................................................4

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013 (Fed. Cir.
2022), *cert. denied sub nom.*, 143 S. Ct. 1748 (2023) ...........................................18

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*,
923 F.3d 1368 (Fed. Cir. 2019)..................................................................................17

*Pernix Ireland Pain DAC v. Alvogen Malta Operations*,
323 F. Supp. 3d 566 (D. Del. 2018)...........................................................................15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018).....................................................................................7

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985)..................................................................................14

iii

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Turco v. City of Englewood, New Jersey*,
 935 F.3d 155 (3d Cir. 2019).........................................................................4

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
 74 F.4th 1360 (Fed. Cir. 2023) ...........................................................11, 18

*Wyeth & Cordis Corp. v. Abbott Lab'ys*,
 720 F.3d 1380 (Fed. Cir. 2013)...................................................................3

**STATUTES**

35 U.S.C. § 282 ..............................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56.............................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '314 patent | U.S. Patent No. 10,603,314 |
| '162 patent | U.S. Patent No. 10,596,162 |
| Asserted Claims | collectively, claims 1, 3, and 9 of the '314 patent and claim 1 of the '162 patent |
| cys773 | Cysteine 773 |
| AZ | collectively, AstraZeneca Pharmaceuticals LP and AstraZeneca AB |
| g/e | gefitinib and/or erlotinib |
| g/e-resistant NSCLC | gefitinib and/or erlotinib resistant NSCLC |
| Inventors | named inventors of the Patents-in-Suit |
| NSCLC | non-small cell lung cancer |
| Patents-in-Suit | '314 patent and '162 patent |
| SOF | Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts and Plaintiffs' Statement of Additional Disputed Material Facts that Preclude Summary Judgment on Invalidity |
| POSA | Person of Ordinary Skill in the Art |
| TKI | Tyrosine Kinase Inhibitor |

## TABLE OF EXHIBITS

These Tables of Exhibits include exhibits cited in this Answering Brief and the accompanying Statement of Facts, filed concurrently, in Support of Plaintiffs' Answering Brief in Opposition to Defendant's Motion for Summary Judgment of Invalidity.

### A.      New Exhibits

Numbered new exhibits refer to exhibits attached to the Declaration of Jason G. Winchester in Support of Plaintiffs' Answering Briefs in Opposition to Defendants' Motions: D.I. 268, 270, 273, and 276 or the concurrently filed expert declarations.

| Ex. No. | Description |
|---|---|
| Hausheer-Ex A | Excerpts of Opening Expert Report of Frederick H. Hausheer, M.D., dated July 28, 2023 |
| Hausheer-Ex B | Excerpts of Rebuttal Expert Report of Frederick H. Hausheer, M.D., dated Sept. 8, 2023 |
| Jorgensen-Ex. A | Excerpts of Rebuttal Expert Report of William L. Jorgensen dated Sept. 8, 2023 |
| Weiss-Ex. B | Excerpts of Rebuttal Expert Report of Glen J. Weiss, M.D., M.B.A., dated Sept. 4, 2023 |
| Weiss-Ex. C | Excerpts of Reply Expert Report of Glen J. Weiss, M.D., M.B.A., dated Oct. 6, 2023 |
| Ex. 5 | Excerpts of Deposition Transcript of Defendants' Expert Paul J. Reider, Ph.D., Nov. 7, 2023 |
| Ex. 10 | Excerpts of Deposition Transcript of Plaintiffs' Expert William L. Jorgensen, Ph.D., Nov. 17, 2023 |
| Ex. 13 | Excerpts of Deposition Transcript of Pasi A. Jänne, M.D., Nov. 14, 2023 |
| Ex. 14 | Excerpts of Deposition Transcript of Defendants' Expert Benjamin Levy, M.D., Nov. 2, 2023 |
| Ex. 15 | T. Holbro & N. Hynes, ErbB Receptors: Directing Key Signaling Networks Throughout Life, 44 Ann. Rev. Pharmacol. Toxicol. 195 (2004) (PUMAWYETH-TAG00035370) |
| Ex. 19 | Excerpts of Opening Expert Report of Defendants' Expert Pasi A. Jänne, M.D., Ph.D., dated July 28, 2023 |
| Ex. 21 | Lynch et al., Activating Mutations in the Epidermal Growth Factor Receptor Underlying Responsiveness of Non-Small-Cell Lung Cancer to Gefitinib, 21 New England Journal of Medicine 350, 2129-39 (2004) (WYETH-TAG00948736) |
| Ex. 32 | Excerpts of the Transcript of Robert Armitage's deposition dated May 19, 2023 |
| Ex. 33 | Excerpts of Deposition Transcript of Jeffrey Settleman, Ph.D., dated May 10, 2023 |
| Ex. 34 | Excerpts of Deposition Transcript of Plaintiffs' Expert Frederick H. Hausheer, M.D., Nov. 10, 2023 |
| Ex. 35 | Excerpts of Deposition Transcript of Glen J. Weiss, M.D., M.B.A. dated Oct. 24, 2023 |
| Ex. 36 | Excerpts of Deposition Transcript of David R. Taft, Ph.D. dated Nov. 1, 2023 |

| Ex. No. | Description |
|---------|-------------|
| Ex. 37 | Excerpts of AstraZeneca's Invalidity Contentions Regarding U.S. Patent Nos. 10,603,314 and 10,596,162 dated April 29, 2022 |
| Ex. 38 | Excerpts of Transcript of Proceedings Before the Honorable Matthew F. Kennelly on March 17, 2023 (Markman Hearing) |
| Ex. 39 | De Bono et al., *The ErbB Receptor Family: A Therapeutic Target for Cancer*, Trends in Molecular Medicine 8(4), S19-26 (2002) |
| Ex. 46 | Carlos L. Arteaga, *ErbB-Targeted Therapeutic Approaches in Human Cancer*, Experimental Cell Res. 284, 122-30 (2003) |
| Ex. 47 | Tsou et al., *Optimization of 6,7-Disubstituted-4-(arylamino)quinoline-3-carbonitriles as Orally Active, Irreversible Inhibitors of Human Epidermal Growth Factor Receptor-2 Kinase Activity*, J. Med. Chem. 48, 1107-31 (2005) |
| Ex. 48 | Stamos et al., *Structure of the Epidermal Growth Factor Receptor Kinase Domain Alone and in Complex with a 4-Anilinoquinazoline Inhibitor*, J. Biolog. Chem. 277(48), 46265-72 (2002) |
| Ex. 49 | Excerpts of Deposition Transcript of Daniel Haber, M.D., Ph.D. dated April 26, 2023 |

### B. Previously Filed Exhibits

| D.I. No. | Description |
|----------|-------------|
| 121 | Memorandum Opinion and Order (Mar. 29, 2023) |
| 281-1 | U.S. Patent No. 10,603,314, issued Mar. 31, 2020 (PUMAWYETH-TAG00000048) |
| 281-2 | U.S. Patent No. 10,596,162, issued Mar. 24, 2020 (PUMAWYETH-TAG00030501) |
| 281-16 | '314 Prosecution History, 08/14/2019 Amendment at PUMA-WYETH-TAG00028426 |
| 281-19 | Excerpts of Deposition Transcript of Plaintiffs' Expert Frederick H. Hausheer, M.D., Nov. 10, 2023 |
| 281-27 | Excerpts of S. Rabindran et al., *Antitumor Activity of HKI-272, an Orally Active, Irreversible Inhibitor of the HER-2 Tyrosine Kinase*, 64 Cancer Research 3958 (2004) (AZ-PW-TAG00422627) |
| 284 | Excerpts of Opening Expert Report of Defendants' Expert Pasi A. Jänne, M.D., Ph.D., dated July 28, 2023 |
| 295-3 | Excerpts of the Reply Expert Report of Dr. Paul J. Reider Regarding Invalidity of U.S. Patent Nos. 10,596,162 and 10,603,314 |

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

When the Inventors filed the Patents-in-Suit in 2005, NSCLC was the leading cause of cancer death in the United States. At the time, some NSCLC patients had certain genetic mutations, known as EGFR sensitizing mutations, making them candidates for treatment with the *reversible* EGFR inhibitors gefitinib or erlotinib ("g/e"). G/E fit into the intracellular kinase portion of EGFR. But resistance to these therapies ("g/e resistance") was a problem. The Inventors in this case discovered a solution: using *irreversible* EGFR inhibitors—known in the art and under clinical study for other purposes before 2005—overcame g/e resistance by more strongly, or covalently, binding to a part of the kinase domain of EGFR (cys773). The Patents-in-Suit are directed to this novel method of treatment. Subsequently, the field exploded with the use of irreversible EGFR inhibitors, both known and new, that irreversibly inhibit EGFR by covalently binding to cys773.

The novelty of the claimed invention is the method of treatment, *not* irreversible EGFR inhibitors themselves. Such compounds were well known before 2005: Plaintiffs' experts testified about the well-developed state of the art related to irreversible EGFR inhibitors, treatment of EGFR-mediated cancer, and the structure and function of irreversible EGFR inhibitors that could covalently bind to cys773 of EGFR inside a cell. AZ asks the Court to ignore these facts and rule that the Asserted Claims "lack written description or enabling support as a matter of law." D.I. 271 at 1. But the foundations of the written description and enablement inquiries are precisely such facts, including the state of the art, nature of the invention, and a POSA's knowledge at the time of the invention, *e.g.*, the *Wands* factors. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). As both the Supreme Court and the Federal Circuit have repeatedly emphasized, both the enablement and written description inquiries are highly fact dependent. *See, e.g.*, *Amgen Inc. v. Sanofi*, 598 U.S. 594, 612 (2023); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003).

1

Here, the parties dispute nearly every fact underlying enablement and written description, including: the state of the art prior art (mature), the breadth of the claims (limited given the POSA's knowledge and the specification's disclosure), the level of predictability in the art (high), whether the specification discloses a representative number of species (it does), and whether irreversible EGFR inhibitors have common structural features (they do).

AZ tries to paper over these myriad material fact disputes with strawman arguments that mischaracterize expert testimony. That transparent attempt, in itself, demonstrates that summary judgment is unwarranted. For example, Plaintiffs' experts did not "concede" that the Patents-in-Suit fail to enable the full scope of the claims by acknowledging that the patents do not enable "larger compounds" as EGFR inhibitors used in the claims. D.I. 274 at 2 (quotations omitted). As the Court recognized, and AZ does not dispute, an irreversible EGFR inhibitor must covalently bind to cys773 of EGFR. Neither the patent specification nor the prior art suggests that large molecules can do this. Instead of applying the claim language, AZ invokes the definition of the terms "drug"/"compound"—but those terms do not appear in the claims.

Nor did Plaintiffs' experts "concede" that the patents fail to enable or describe the full scope of g/e-resistant NSCLC. D.I. 271 at 2. AZ attempts to manufacture invalidity issues by referring to a "variety of other resistance mechanisms" (1) not discussed in the patents and (2) known in the art to be unconnected to EGFR, the target of irreversible EGFR inhibitors. But Plaintiffs' experts explained that the claimed method is overcoming resistance in NSCLC patients *appropriate for treatment with EGFR inhibitors*—i.e., NSCLC patients with EGFR sensitizing mutations and with resistance connected to EGFR.

AZ's attempt to lump this case in with other enablement and written description cases ignores their distinct factual and procedural postures. For example, cases like *Amgen v. Sanofi* and

*Baxalta* involved *composition* claims, not a *method of treatment* using a known type of compound. And only two of AZ's cited cases were decided on summary judgment. *See Baxalta Inc. v. Genentech, Inc.*, 81 F.4th 1362, 1366-67 (Fed. Cir. 2023) (undisputed that there were no working examples of humanized antibodies); *Wyeth & Cordis Corp. v. Abbott Lab'ys*, 720 F.3d 1380, 1386 (Fed. Cir. 2013) (undisputed that a POSA would need to screen each compound to determine an effective amount as required by the claims). Both turned on undisputed facts, unlike here.

Notably, AZ omits any references to the case most on point involving a method of treatment: *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629 (E.D. Tex. 2017), *aff'd*, 739 F. App'x 643 (Fed. Cir. 2018) (hereinafter, "*UroPep*"). In *UroPep*, the defendant sought to invalidate a method of using a known genus of compounds (PDE5 inhibitors) to selectively inhibit an enzyme found in prostatic tissue. Federal Circuit Judge Bryson, sitting by designation, rejected the written description and enablement challenges at summary judgment and again after trial. *Id.* at 659-63. The Federal Circuit summarily affirmed the decision.

In *UroPep*, as here, "[i]t was also clear that selective [] inhibitors were not themselves the invention." *Id.* at 647; *see also id.* at 662 ("the nature of the invention was . . . a novel method of treatment"). Judge Bryson found that the challenged patent enabled a skilled artisan to practice "the full scope of the invention" without undue experimentation where the specification taught what structures could meet the claimed function, in view of a high level of skill in a "mature" art. *Id.* at 661-62. Notably, the court expressly rejected arguments similar to those made by AZ here, noting that the defendant disregarded evidence the jury could credit in determining the defendant failed to carry its heavy burden. *Id.* at 659-62.

AZ's attempts to obfuscate the factual disputes are unavailing. AZ has not properly alleged, let alone shown, that the facts underlying the written description and enablement requirements are

undisputed. The motion should be denied.

## II.   LEGAL STANDARDS

Patents are presumed valid, and AZ bears the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). At the summary judgment stage, AZ bears the burden of showing "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the facts and any factual inferences in the light most favorable to Plaintiffs as the nonmovants. *See Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 161 (3d Cir. 2019).

## III.   BACKGROUND

Because AZ's brief rests on claim constructions that have not been adopted by the Court, and have even been expressly rejected, Plaintiffs set forth the governing constructions.

AZ did not dispute that the claimed irreversible EGFR inhibitors require covalent binding to a specified amino acid (cys773) located in the intracellular kinase domain of EGFR. Ex. 38 at 32:20-22 (Court: "There's a covalent b[i]nding requirement in both of the claims, but both parties repeat that essentially verbatim in their proposals."); D.I. 121 at 2, n.2. The Court subsequently construed "irreversible [EGFR] inhibitor" as a "compound that irreversibly inhibits EGFR," D.I. 121 at 14, but did not construe the covalent binding portion of the claims.

With respect to the "g/e-resistant NSCLC" terms, the Court agreed with Plaintiffs that they bear their plain and ordinary meaning. D.I. 121 at 10. From the specification, a POSA would understand the treatment population consists of NSCLC patients who would have been candidates for g/e—*i.e.*, those with EGFR sensitizing mutations. AZ never raised its current interpretation— that a POSA would consider NSCLC patients *not indicated* for g/e treatment (that is, patients without EGFR sensitizing mutations or with non-EGFR mediated resistance mechanisms, like KRAS mutations or MET amplifications) to have g/e-resistant NSCLC. Ex. 37 at 286, 338, 342.

4

Instead, AZ framed the dispute as g/e-resistant NSCLC "includes patients never administered [g/e]." *Id.*

## IV.    ARGUMENT

### A.    AZ's Arguments Are Untimely and Cannot Justify Summary Judgment

As discussed above, AZ bases its motion, in part, on theories it never disclosed in claim construction or fact discovery. These new theories cannot justify summary judgment. For the g/e-resistant NSCLC terms, AZ argues that the Patents-in-Suit do not enable or describe use of the claimed method for NSCLC patients without an EGFR sensitizing mutation, or those who have a KRAS mutation or MET amplification. D.I. 272 at 6. But AZ did not present those theories in its Invalidity Contentions or during claim construction. Ex. 37 at 286, 338, 342. This is not surprising—the art and the patents are clear that patients *must* have EGFR sensitizing mutations to be treated with the EGFR inhibitors g/e. SOF ¶¶ 29, 35. AZ should not be allowed to present these theories now. *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. 18-462 (MN), 2019 WL 10248462, at *2 (D. Del. Apr. 18, 2019) (excluding evidence at trial that was not disclosed in invalidity contentions). For the same reason, AZ's new argument that a POSA's understanding of "irreversible EGFR inhibitors" is divorced from the claims' requirement for covalently binding to cys773 of EGFR should be rejected because AZ explicitly declined construction of the "covalently binds" term. *See infra* Section III.

Both new arguments should also be rejected because, at most, they raise disputes of material facts: When the parties do not dispute a term's meaning during the *Markman* process, its plain and ordinary meaning is a fact question for the jury. *E.g.*, *Inventio AG v. ThyssenKrupp Elevator Corp.*, No. 08-00874-RGA, 2014 WL 468897, at *4 (D. Del. Feb. 3, 2014) (declining to construe "connected" when asked for the first time at summary judgment and denying the motion because "[i]t is a question of fact for the jury as to whether or not the two components are connected

in a way sufficient to meet the claim term").

**B.    Summary Judgment for Lack of Enablement Should Be Denied**

The record contains evidence on each of the facts to show adequate enablement. Instead of establishing that its non-enablement defense rests on undisputed material facts, AZ raises irrelevant arguments or facts that, at minimum, a jury is entitled to reject. AZ's enablement motion should therefore be denied.

**1.    The Claims Are Enabled**

Ample evidence contradicts AZ's assertion that the Patents-in-Suit lack enablement. Discovery and expert testimony establish that, at the time the patents were filed, researchers had been studying kinases—including EGFR—as cancer treatment targets for decades. Thus, by 2005, the state of the art was mature, SOF ¶ 46, and a POSA's skill level was high, SOF ¶ 47. Numerous irreversible EGFR inhibitors existed, including those highlighted in the specification and its cited references. SOF ¶¶ 10, 15. A POSA knew the precise 3-D structure of EGFR and, as a result, the common structural features for an inhibitor to covalently bind to cys773 in the kinase domain of EGFR (as required by the claims). SOF ¶¶ 16, 53; D.I. 272 at 12. In fact, the specification calls out structural features by citing several chemical scaffolds for EGFR inhibitors. SOF ¶ 15.

Based on the mature state of the art and the specification's teachings, a POSA need not unduly experiment to practice the claimed method with existing or new irreversible EGFR inhibitors. For example, because the relationship between irreversible EGFR inhibition, covalent binding, and the presence of a Michael acceptor group that can access cys773 "was so well-established in the art . . . [,] a POSA would not have to test each and every compound[.]" SOF ¶ 55. A POSA could "readily" test for irreversible EGFR inhibition "based on well-established EGFR kinase and cellular inhibition assays described in scientific references, including those cited in the [specification]." SOF ¶ 56 (Dr. Jorgensen describing a POSA's ability to test for EGFR inhibition).

Seeking to establish invalidity with clear and convincing evidence, AZ disputes these facts, each of which is material to the enablement inquiry. At summary judgment, that approach fails.

### (a) AZ's Irreversible EGFR Inhibitor Arguments Fail

AZ says that the term "EGFR irreversible inhibitor" is a vast and structureless genus given the Court's construction. *E.g.*, D.I. 271 at 1. But the claims recite, and were construed by the Court to require, a compound that (a) irreversibly inhibits EGFR and (b) *covalently binds* to cys773 in the kinase domain of EGFR. D.I. 272 ¶ 2. The patent specification and its references are completely consistent with this covalent binding requirement via irreversible inhibition. *Id.* (AZ admits at least this much. D.I. 271 at 5 (quoting 3:57-59).) As a result, the genus of EGFR irreversible inhibitors is not vast, limitless, or structureless—it is defined by structural features, both disclosed in the specification and known to a POSA in 2005. SOF ¶ 10.

AZ's main contention that the claims do not enable the full scope of EGFR irreversible inhibitors assumes that such inhibitors can be large molecules. D.I. 271 at 5-6. But large molecules are *not* irreversible EGFR inhibitors that can covalently bind to cys773 in the cell, as required by the claims and the Court's construction. A POSA knew that cys773 is located in the kinase domain inside a cell, and that irreversible EGFR inhibitors that bind cys773 do so in the kinase domain intracellularly (inside the cell). SOF ¶ 49. As Dr. Jorgensen explained, large molecules, like antibodies or siRNA, do not do this, and they were (and are) distinct from kinase inhibitors. SOF ¶¶ 8-9. Even today, 18 years after the priority date, AZ has not identified *any* large-molecule irreversible EGFR inhibitor that covalently binds to cys773. Ex. 13 at 49:12-18. The claims as construed by the Court—requiring irreversibly inhibiting EGFR by covalently binding cys773— simply do not include compounds incapable of this function. *Id.*; *accord Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 970-72 (Fed. Cir. 2018) (claims should not be construed to render the invention inoperable).

7

AZ mischaracterizes Dr. Jorgensen's testimony on this point, alleging he admitted the claims are not enabled with respect to larger compounds. D.I. 271 at 5. To the contrary, Dr. Jorgensen repeatedly made clear that the compounds used in the claimed methods did not "include any of the categories of larger compounds" and that a POSA would not understand large compounds to be encompassed by the functional language because they would not function according to the claims. SOF ¶ 8-9. AZ's "large molecule" argument fails.

AZ next argues that the patents do not enable epoxide irreversible EGFR inhibitors, relying on an article published five years *after* the relevant patents (D-Ex. 22 (Carmi 2010)). D.I. 271 at 6.[1] In AZ's view, because the patents do not expressly describe this alleged embodiment (epoxide compounds), the claims are overbroad. D.I. 271 at 4, 6 (quoting *Amgen*, 598 U.S. at 610). But as the Supreme Court explained in *Amgen*, enablement does not require "a specification [to] always . . . describe with particularity how to make and use e*very single embodiment* within a claimed class." *Amgen*, 598 U.S. at 611-12 (emphasis added). "That is not the correct inquiry." *UroPep*, 276 F. Supp. 3d at 661. The relevant question is a fact-intensive one: Whether a POSA would need to unduly experiment to practice the claims with purportedly omitted compounds. As a result, an allegation of a single undisclosed embodiment does not warrant summary judgment of invalidity for lack of enablement. *See Amgen*, 598 U.S. at 611-612.

Indeed, the evidence here supports the conclusion that a POSA would *not* need to unduly experiment to practice the claims with the Carmi epoxide compounds, or any other hypothetical alternative reactive agent. SOF ¶ 61; *see McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020). As Dr. Jorgensen testified, a POSA would recognize the Carmi

---

[1] It is telling that, given the allegedly broad scope of irreversible EGFR inhibitors AZ says are encompassed by the claims, and the nearly two decades since the patents' filing, AZ has come up with only one reference to allegedly successful reactive agents other than those taught in the patent specification (e.g., acrylamide-based Michael acceptor).

epoxide compounds as derivatives of the preferred reactive agent for irreversible EGFR inhibition in 2005 (acrylamide Michael acceptors). SOF ¶ 57. In fact, the Carmi epoxide compounds, when administered, may form an acrylamide Michael acceptor to covalently bond with cys773. *Id.* He also testified that making the Carmi epoxide compounds "is not complicated" and would not otherwise require undue experimentation. SOF ¶ 58. That is sufficient to deny summary judgment.

Again, it is worth emphasizing that AZ's reliance on *Amgen* is entirely misplaced: *Amgen*'s truism, "[t]he more one claims, the more one must enable," is meaningless in a vacuum. 598 U.S. at 610. The *Amgen* patents-in-suit claimed "at least millions" of novel compounds defined by their function. *Id.* at 613. Yet the specifications disclosed just 26 embodiments and offered artisans "little more than two research assignments" amounting to "advice to engage in 'trial and error'" to find an indefinite number of other functional antibodies. *Id.* at 614-15. In contrast, the patents here claim a method of treatment using well-studied irreversible EGFR inhibitors, SOF ¶ 54, and AZ identifies just a single reference to an allegedly successful reactive agent other than those expressly taught in the specification or the art cited therein. As discussed, a POSA need not unduly experiment to enable that compound—itself a derivative of those expressly disclosed. At minimum, that creates a disputed fact issue.

### 2.  The Claims Are Enabled with Respect to G/E-Resistant NSCLC

#### (a)  There Is a Genuine Dispute over the Types of NSCLC a POSA Would Consider "G/E Resistant"

The Court agreed with Plaintiffs that "g/e resistant NSCLC" should be construed according to its "plain and ordinary meaning." D.I. 121 at 13. Although AZ did not raise any argument during claim construction, it now disputes whether a POSA in 2005 would consider NSCLC without sensitizing mutations, or with KRAS mutations or MET amplification, as "g/e resistant." D.I. 271 at 7-9. While AZ asserts the POSA would, D.I. 272 at 36-45, Plaintiffs' experts repeatedly testified

to the contrary, SOF ¶¶ 30, 39, 42. Because the parties' experts disagree, summary judgment is precluded. *Cradle IP, LLC v. Texas Instruments, Inc.*, 5 F.Supp.3d 626, 650 (D. Del. 2013) (denying SJ on anticipation because experts disagreed on a term's plain and ordinary meaning).

For example, Plaintiffs' expert opined that a POSA would know that patients with g/e-resistant NSCLC have a sensitizing mutation. SOF ¶ 29, 35, 36. This is consistent with the specification's teaching that "[g/e] sensitivity may be predicted by the presence of EGFR mutations including, for example [listing sensitizing mutations]," and "not all cancers are sensitive to [g/e] treatment." *Id.*; D.I. 281-1 at 7:53-59. That is also how AZ described g/e resistance from the start of this case. *Infra.* Section. III. Even Dr. Jänne, AZ's expert, confirmed that it was known in 2005 that an EGFR sensitizing mutation was needed to benefit from EGFR inhibitors like g/e. SOF ¶¶ 34-35.

Whether a POSA would consider NSCLC with KRAS mutations or MET amplifications g/e-resistant is similarly disputed. Plaintiffs' experts testified that a POSA, based on the specification and the art, would not. SOF ¶¶ 39, 42. With respect to KRAS mutations, the specification distinguishes KRAS from EGFR, and a POSA knew both that KRAS mutations do not co-occur with EGFR and that an irreversible EGFR inhibitor would not be used to treat NSCLC with a KRAS mutation. SOF ¶¶ 29, 39-41. Because the term g/e-resistant requires an EGFR sensitizing mutation, this would exclude NSCLC patients with a KRAS mutation. With respect to MET amplifications, this mechanism was not discovered until 2007, and a POSA at that time would have known that MET amplification is treated with MET kinase inhibitors, not irreversible EGFR inhibitors. SOF ¶¶ 29, 42-43. As a result, Dr. Jänne admitted that "if [he] were reading the patent in 2005, [he] wouldn't think that it was directed to the treatment of MET amplification[.]" SOF ¶ 42.

### (b)    AZ's G/E Resistance Argument Fails

The Federal Circuit recently upheld method of treatment claims that required administering "a therapeutically effective" dose of treprostinil to treat pulmonary hypertension, which included treating five "subgroups" of patients. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360 (Fed. Cir. 2023). The defendants argued that the claims were not described or enabled because treprostinil was ineffective for treating one of the five subgroups. *Id.* at 1371. The court disagreed because, "for any given method of treatment claim, there may be a subset of patients who would not benefit from or should not take the claimed treatment . . . [but] [t]hat does not mean that such claims are not sufficiently enabled or supported by written description." *Id.*

Here, Plaintiffs disagree that g/e-resistant NSCLC encompasses NSCLC without EGFR sensitizing mutations, or NSCLC with KRAS mutations or MET amplification. But even if (1) these three groups of patients were included, and (2) AZ had established a lack of disputed material fact over whether irreversible EGFR inhibitors work in each, that would not render the claims invalid for lack of enablement or written description. As *United Therapeutics* instructs, no treatment is effective for the treatment of all patients, and method of treatment claims are not invalid because they may not be effective for every patient. 74 F.4th at 1371.

Moreover, under *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984), a patent is enabled—even with inoperative embodiments—if a POSA need not unduly experiment to tell between operative and inoperative embodiments. Under AZ's own interpretation of g/e-resistant NSCLC, SOF ¶¶ 35, 41, 44, a POSA need not experiment *at all* because EGFR kinase inhibitors are not used for NSCLC without sensitizing mutations, or NSCLC with only KRAS mutations or MET amplification. AZ's argument fails either way.

### C.    Summary Judgment for Lack of Written Description Should Be Denied

There are numerous disputed material facts that prevent summary judgment for lack of

written description, including the disputed facts reviewed above with respect to enablement.

**1.     The Claims Are Described for an Irreversible EGFR Inhibitor**

The record shows that the patents disclose (1) representative species, (2) common structural features, and (3) a known correlation between structure and function. AZ's disagreement raises only questions of fact for the jury.

**(a)     The Patents-in-Suit Disclose Representative Species to Demonstrate Possession of the Claimed Method**

The written description inquiry is satisfied if the specification shows the Inventors possessed the method of treating g/e-resistant NSCLC by administering an irreversible EGFR inhibitor that covalently binds to cys773. The specification here explicitly discusses and cites to numerous known irreversible inhibitors as well as the Inventors' experiments using certain inhibitors (EKB-569, HKI-272, and HKI-357) in gefitinib-resistant cells. SOF ¶¶ 10-11.

The law is clear that there is no "bright-line rule[]" prescribing the number of representative species required to satisfy the written description requirement. *Ariad Pharms., Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). In fact, in *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed. Cir. 2005), a written description for claims with only one representative species was sufficient because the specification and art at the time of filing would lead a POSA to understand that the inventors possessed the entire claimed genus. *See also UroPep*, 276 F. Supp. 3d at 645 (denying JMOL where four inhibitors were disclosed because "hundreds" were known at the time of filing, the field was mature, and the genus of inhibitors was not the invention); *Capon v. Eshhar*, 418 F.3d 1349, 1356-58 (Fed. Cir. 2005). The same is true here where many irreversible EGFR inhibitors were known at the time of filing, SOF ¶ 10, 15, the field was mature, SOF ¶ 46, and irreversible EGFR inhibitors themselves were not the invention.

AZ says that *AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285

(Fed. Cir. 2014), stands for the proposition that disclosure of even a large number of species does not adequately describe a genus. D.I. 271 at 11. Yet again, AZ's case only highlights that summary judgment is inappropriate. In *AbbVie*, the jury heard and weighed competing evidence about whether the patent disclosed sufficient species. *Abbvie*, 759 F.3d at 1300. The jury found the disclosures insufficient *after weighing all the evidence*. Subsequently, the Federal Circuit merely affirmed that substantial evidence supported the jury's decision—not that the jury's decision was the *only* result possible in light of that record. *Id.* at 1298. Here, the jury is similarly entitled to hear the disputed evidence, including the number of species disclosed, SOF ¶ 10, and the state of the art, to determine whether they represent the scope of the genus.

AZ's mischaracterizations of the record do not support a different conclusion. ***First***, Dr. Jorgensen did not admit that only three compounds (HKI-357, HKI-272, and EKB-569) were disclosed in the specification. D.I. 271 at 10; SOF ¶ 10. He testified that the specification also "describes promising EGFR TKIs based on quinazoline, pyridopyrimidine, and pyrrolopyrimidine scaffolds" and discloses scientific references describing additional irreversible EGFR inhibitors. SOF ¶ 10. He repeatedly made clear that a POSA in 2005 would have been aware of numerous additional irreversible EGFR inhibitors, including some then in clinical testing. SOF ¶¶ 11, 15-16. This is consistent with Dr. Reider's reliance on alleged prior art with these compounds for his anticipation and obviousness opinions. *See, e.g.* Ex. 16 ¶¶ 302-307, 530-537, 598-609, 667-668.

***Second***, Plaintiffs' evidence shows that the disclosed species represent the scope of the irreversible EGFR inhibitors used in the claimed methods. For example, Dr. Jorgensen disagreed with AZ's characterization of HKI-357, HKI-272, and EKB-569 as "very similar," instead calling them "quite different" because they contained "dissimilar components showing some variety in the structures." SOF ¶ 59. He also testified that the genus of irreversible EGFR inhibitors was not

13

unlimited because there are few scaffolds—"maybe tens"—that a medicinal chemist would use for an irreversible EGFR inhibitor. SOF ¶ 60. Even AZ's supposed outliers, the Carmi epoxide compounds, meet all but one of the known and common structural features[2]; and their alleged difference (in the reactive agent) is, in fact, a derivative of the third common structural feature (an acrylamide Michael acceptor). SOF ¶ 63.

At bottom, AZ's argument about lack of representativeness relies on the idea that Tagrisso® (AZ's infringing product) is allegedly unique, structurally and functionally. AZ is wrong on the law and the facts. "The law does not require . . . that an applicant describe in his specification every conceivable and possible future embodiment of his invention." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). Factually, record evidence shows Tagrisso® shares the common structural features identified by Dr. Jorgensen, SOF ¶ 51, and a POSA in 2005 would have been aware of irreversible EGFR inhibitors with the monocylic pyrimidine scaffold of Tagrisso®.[3] SOF ¶ 52. Thus, AZ practices the claimed method of treating g/e-resistant NSCLC using an irreversible inhibitor that covalently binds cys773.

Failing to establish an undisputed structural uniqueness, AZ turns to function, arguing that the patents do not disclose a "wild-type sparing, mutant-selective irreversible EGFR inhibitor[]" like Tagrisso®. D.I. 271 at 10. Putting aside that these are not claim limitations, SOF ¶ 23, AZ is simply wrong. The patents disclose such irreversible inhibitors because wild-type sparing is a matter of degree and "most of the EGFR-TKIs" including afatinib and dacomitinib *are* wild-type sparing, mutant selective. SOF ¶ 23. In the end, "[t]he wild-type sparing is still making use of the fundamental mechanism of action in terms of inhibiting EGFR phosphorylation" via irreversible

---

[2] That the Carmi epoxide compounds even bind to cys773 as epoxides is disputed. SOF ¶¶ 18, 64.
[3] After all, the specification discloses such a compound, imatinib, and its role in treating a mutation analogous to the g/e resistance mutation T790 in a different cancer. Ex. D-1 at 6:34-36, 47-51.

inhibition with a covalent bond to cys773. Ex. 34 at 183:20-25.

Finally, Dr. Jorgensen's statements in another case, which addressed the unpredictable effects of small changes to a molecule, concerned the state of the art of irreversible EGFR inhibitors in 2000—prior to many important developments including the approval of g/e and the discovery of EGFR sensitizing mutations. D.I. 271 at 11; SOF ¶ 19. Those statements are not relevant here. Opining about the relevant time period, Dr. Jorgensen testified that a POSA would have the benefit of the patents and known about the structural features for binding to cys773.[4] Thus, generalized concerns about small changes are not applicable. SOF ¶ 19, 48. As to whether a POSA could distinguish compounds that function as claimed, Dr. Jorgensen testified that the relationship between Michael acceptors and irreversible inhibition of EGFR was "so well-established in the art" that a POSA would not need to test every compound. SOF ¶ 55. A jury has a strong basis to find undue experimentation is not needed based on this record.

### (b)     The Patents Disclose Common Structural Features

Even when there is a functional aspect to the claims, the written description inquiry requires fact finding to determine whether structural features would help a POSA identify species falling within the claimed genus. *See Pernix Ireland Pain DAC v. Alvogen Malta Operations*, 323 F. Supp. 3d 566, 623 (D. Del. 2018) (listing factual findings underlying JMOL opinion on written description). The parties dispute whether irreversible EGFR inhibitors used in the claimed method have common structural features, SOF ¶¶ 12, 15, 20, 22, 50-51, and whether the specification discloses them, particularly in light of a POSA's knowledge in 2005. *Id.*

During claim construction, the Court declined to decide whether a POSA would understand that irreversible EGFR inhibitors shared particular structural features necessary for covalent

---

[4] Indeed, AZ copied the patented method with unusual speed. Hausheer-Ex. A ¶ 102.

binding to cys773. D.I. 121 at 15. That the Court ultimately decided the meaning of "irreversible EGFR inhibitor" was functional does not preclude a POSA from understanding that certain structural features were needed to covalently bind cys773 in the kinase domain of EGFR. *See 10X Genomics, Inc. v. NanoString Techs., Inc.*, Case No. 21-cv-653 (D. Del. Nov. 8, 2023) (Order on Plaintiffs' First Motion in Limine). A POSA in 2005 would know that an irreversible EGFR inhibitor capable of covalently binding to cys773 of EGFR had common structural features. SOF ¶¶ 12, 15, 20, 22, 51. The specification need not use specific words to convey them to the POSA. *See UroPep*, 276 F. Supp. 3d at 652. There is at minimum an issue of disputed fact about this element.

AZ also compares the claims here to those in *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330 (Fed. Cir. 2021), arguing that the common structural features of irreversible EGFR inhibitors known to a POSA in 2005 are not "common" to all the inhibitors. D.I. 271 at 13-14. But the *Juno* claims encompassed any scFv that bound to *any* complementary target. *Juno,* 10 F.4th at 1336. Here, the patents provide *one*, *known* binding site—the kinase domain of EGFR and cys773 therein. And as Dr. Jorgensen explained, a POSA would have known, based on the understood crystal structure of EGFR (which is referenced in the patent), the common structural features that allowed existing irreversible EGFR inhibitors to access the kinase domain of EGFR and covalently bind to cys773. SOF ¶¶ 12, 53. AZ's comparison to *Juno*, along with its other allegedly analogous cases, ignores at minimum the different claim scopes and states of the art on irreversible EGFR inhibitors. Again, these are all disputed facts a jury is entitled to weigh here.

### (c) There Is a Correlation Between the Known Structures of Irreversible EGFR Inhibitors and Their Functions

Functional claim language can also meet the written description requirement when the art has established a correlation between structure and function. *Ariad*, 598 F.3d at 1350. By 2005,

there was an established structure-function correlation between an acrylamide-based Michael acceptor and covalent binding leading to irreversible EGFR inhibition, and the specification guides a POSA to that art. SOF ¶ 60.

### 2.      The Claims Are Described for G/E-Resistant NSCLC

According to AZ, the claims lack written description because they "require[] the inhibitor to be administered in an amount expected to be therapeutically effective" for g/e-resistant NSCLC under their plain and ordinary meaning (NSCLC without a sensitizing mutation, NSCLC with KRAS mutation, NSCLC with MET amplification). D.I. 271 at 16. *First*, AZ's arguments fail for the same reasons already discussed—there is a genuine dispute of material fact about whether these types of NSCLC are g/e-resistant NSCLC. *Second*, this Court already rejected AZ's "effectiveness" argument during claim construction: "neither the preambles nor the claims at issue include the words 'effective amount' or 'therapeutically beneficial.'" D.I. 121 at 8.

AZ's flawed interpretation of the claims renders its cited cases inapposite. The claims at issue in those cases explicitly required administering an effective dose. *See Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*, 923 F.3d 1368, 1372 (Fed. Cir. 2019); *Biogen Int'l GmbH v. Mylan Pharms.*, 18 F.4th 1333, 1337 (Fed. Cir. 2021). The present claims and specification contain no effectiveness requirement. *See* D.I. 121 at 8.

In any event, summary judgment would still be inappropriate even if the claims covered the embodiments AZ posits, because the parties dispute what is sufficient to show a "therapeutic effect." Therapeutic effect is "irreversible inhibition of EGFR to address [g/e] resistance in patients having [g/e]-resistant NSCLC." Hausheer-Ex. B ¶ 846. AZ disagrees, wrongly including (as it did during claim construction) the standard for FDA approval—safety and efficacy. SOF ¶ 45; D.I. 82 at 11. The Court already rejected those arguments and construed the claims without an effectiveness requirement. D.I. 121 at 18-20. FDA approval has no relevance to the

written description inquiry. *United Therapeutics*, 74 F.4th at 1371.

### 3. Claim 1 of the '162 Patent Has Adequate Written Description Support for the Exclusion of a Known Compound

While negative claim limitations require written description, there is no "heightened standard" for them. *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016, 1020 (Fed. Cir. 2022), *cert. denied sub nom.*, 143 S. Ct. 1748 (2023). Where the *Novartis* patent was entirely silent about the negative claim limitation, the patents here explicitly discuss CL-387,785, which AZ admits (D.I. 271 at 16 (citing D-Ex. 2 at 18:27-48)), and compare its structure to HKI-272, HKI-357, and EKB-569.[5] SOF ¶ 25.

The case law has repeatedly rejected AZ's argument that a patentee cannot carve out particular embodiments. "[A] patentee can choose to claim any particular embodiments identified in the specification and exclude others, without explanation, as long as the claim does not indicate to persons of skill that it covers embodiments inconsistent with, and therefore unsupported by, the disclosure." *UroPep*, 276 F. Supp. 3d at 658; *see also In re Johnson*, 558 F.2d 1008, 1017-19 (C.C.P.A. 1977) (excluding two species to avoid prior art).

AZ does not allege inconsistency. To the contrary, AZ asserts that without the negative claim limitation, CL-387,785 is encompassed within Claim 1 of the '162 Patent. D.I. 295-3 Ex. C at ¶¶ 181, 183; Ex. 32 at 163:15-25. AZ's cited case—which affirmed the rejection of a negative claim limitation as contradicting the invention—is therefore inapt. *See In re Bimeda Res. & Dev. Ltd.*, 724 F.3d 1320, 1324 (Fed. Cir. 2013).

## V. CONCLUSION

For the reasons discussed above, the Court should deny AZ's motion.

---

[5] The patents' discussion of these structural differences was discussed in the Claim Construction Order. D.I. at 121, 16 (referring to "chloride moieties" and "aniline ring").

OF COUNSEL:

Steven N. Geise
Anthony M. Insogna
Meredith A. Stewart
Miguel A. Alvarez
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
(858) 314-1200

Gasper J. LaRosa
Lisamarie LoGuidice
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939

Jason G. Winchester
Michelle B. Smit
Jeffrey S. Messing
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939

John C. Evans, Ph.D.
JONES DAY
North Point 901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939

Alexis Adian Smith
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
(213) 243-1542

Daniele San Román
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
(202) 879-3939

*Attorneys for Puma Biotechnology, Inc.*

January 12, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Megan E. Dellinger (#5739)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
mdellinger@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs*

Sara T. Horton
Ren-How Harn
Henry C. Thomas
WILKIE FARR & GALLAGHER LLP
300 North LaSalle
Chicago, IL 60654-3406
(312) 728-9040

*Attorneys for Wyeth LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 12, 2024, upon the following in the manner indicated:

Karen E. Keller, Esquire                                              *VIA ELECTRONIC MAIL*
Andrew E. Russell, Esquire
Nathan R. Hoeschen, Esquire
Emily DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendants*

Christopher Sipes, Esquire                                           *VIA ELECTRONIC MAIL*
Einar Stole, Esquire
Kaveh Saba, Esquire
Priscilla Dodson, Esquire
Megan Keane, Esquire
Ashley Winkler, Esquire
Melissa Keech, Esquire
Elaine Nguyen, Esquire
Tobias Ma, Esquire
Alexander Trzeciak, Esquire
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC  20001
*Attorneys for Defendants*

*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)