IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PUMA BIOTECHNOLOGY, INC. and WYETH LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 21-1338 (MFK) **PUBLIC VERSION** |
| v. | ) ) | |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA AB, | ) ) ) | **Confidential Version Filed: April 9, 2024** |
| Defendants.[1] | ) ) | **Public Version Filed: April 16, 2024** |

**[PROPOSED] JOINT PRETRIAL ORDER**

April 9, 2024

---

[1]    **Wyeth and Puma's Statement:** Wyeth and Puma believe it is within the Court's discretion to keep or change the case caption, but note that keeping the case caption allows continuity through case appeal and may reduce confusion in record keeping.  Certainly unless and until the Court changes the case caption, if it so chooses, Wyeth and Puma maintain the caption should remain unchanged.  Wyeth and Puma agree that a double caption should be used for the jury-facing documents so that each parties' role is clear, and that more specific double caption is what should be read to the jury in describing the case.  Wyeth and Puma further disagree with AstraZeneca's deletions of Puma through the Joint PTO and its attachments because Puma remains a named counterclaim defendant.  Mar. 22, 2024, Hearing Tr. at 18:22-25.

**AstraZeneca's Statement:** At the parties' meet and confer with respect to this Joint Pretrial Order on April 5, 2024, Puma confirmed that it does not dispute that it is not a plaintiff in this case. *See also* D.I. 372 at 8–9. Wyeth and Puma, however, will not agree or stipulate to a revised caption, including to revise the caption to identify Puma as a counterclaim defendant only. The caption in this case (and listed above on this Joint Pretrial Order) therefore incorrectly identifies Puma as a plaintiff. AstraZeneca has moved to dismiss its counterclaims against Puma and has requested that the case caption be revised with its proposed order because the Court lacks subject matter jurisdiction over those counterclaims. *See* D.I. 375, 376. The caption in this case should be revised to reflect that Puma is not a party to this proceeding, or at a minimum, that Puma is not a plaintiff but only a counterclaim defendant. An incorrect caption does not avoid unnecessary confusion, but creates it, suggesting that Puma is a plaintiff (or a party) when it is not.

TABLE OF CONTENTS

Page

I.     JURISDICTION ................................................................................................. 1

II.    CLAIMS ............................................................................................................. 2

III.   RELIEF SOUGHT .............................................................................................. 3

IV.    WITNESSES ....................................................................................................... 4

       A.    Witness Lists .......................................................................................... 4

       B.    Witnesses Appearing by Deposition ...................................................... 7

             1.    Wyeth's and Puma's Designations ............................................... 7

             2.    AstraZeneca's Designations ......................................................... 8

       C.    Agreed-Upon Rules and Procedures for Live Witnesses ....................... 9

       D.    Agreed-Upon Rules and Procedures for Testimony by Designation .................. 12

       E.    [AstraZeneca's Position: Other Matters Related to Witnesses ............................ 15

V.     EXHIBITS & DEMONSTRATIVES ................................................................ 16

       A.    Exhibit Lists .......................................................................................... 16

       B.    Agreed-Upon Rules and Procedures for Exhibits ................................. 17

       C.    Agreed-Upon Rules and Procedures for Demonstratives ..................... 23

       D.    Agreed-Upon Rules and Procedures for Opening Statements ............................. 25

VI.    TYPE AND LENGTH OF TRIAL .................................................................... 26

VII.   BIFURCATION .................................................................................................. 27

VIII.  PROPOSED FINDINGS AND CONCLUSIONS ............................................. 28

IX.    PROPOSED VOIR DIRE QUESTIONS ........................................................... 28

X.     PROPOSED JURY INSTRUCTIONS .............................................................. 28

XI.    OTHER MATTERS ........................................................................................... 28

       A.    Settlement .............................................................................................. 28

B.     Number of Jurors ................................................................. 29

C.     Order of Proof ..................................................................... 29

D.     Jury Notes and Jury Procedures ........................................... 30

E.     Handling of Confidential Information at Trial........................ 31

F.     Set-up of Electronic Equipment .......................................... 31

G.     Stipulations Regarding Facts and Evidence.......................... 31

TABLE OF ATTACHMENTS

| Attachment | Description |
|---|---|
| 1A | Wyeth's and Puma's Witness List and AstraZeneca's Statement of Objections to Wyeth's and Puma's Witnesses |
| 1B | AstraZeneca's Witness List and Wyeth's and Puma's Statement of Objections to AstraZeneca's Witnesses |
| 2 | Parties' Objection Keys |
| 3 | Wyeth's and Puma's Deposition Designations |
| 3A | Table of deposition designations of Patrick Scott Alban, Ph.D. (July 20, 2023) |
| 3B | Table of deposition designations of Darren Cross, Ph.D. (Apr. 27, 2023) |
| 3C | Table of deposition designations of M. Raymond V. Finlay, Ph.D. (May 3, 2023) |
| 3D | Table of deposition designations of Serban Ghiorghiu, M.D. (Apr. 25, 2023) |
| 3E | Table of deposition designations of Daniel Haber, M.D., Ph.D. (Apr. 26, 2023) |
| 3F | Table of deposition designations of Eunice Kwak, M.D., Ph.D. (May 5, 2023) |
| 3G | Table of deposition designations of Katy Platt Miller (Apr. 12, 2023) |
| 3H | Table of deposition designations of Raffaella Sordella, Ph.D. (Apr. 21, 2023) |
| 3I | Table of deposition designations of Richard Ward, Ph.D. (May 5, 2023) |
| 4 | AstraZeneca's Deposition Designations |
| 4A | Table of deposition designations of Alan Auerbach (Apr. 27, 2023) |
| 4B | Table of deposition designations of John DeYoung (May 12, 2023) |
| 4C | Table of deposition designations of Daniel Haber, M.D., Ph.D. (Apr. 26, 2023) |
| 4D | Table of deposition designations of Douglas Hunt (May 17, 2023) |
| 4E | Table of deposition designations of Eunice Kwak, M.D., Ph.D. (May 5, 2023) |
| 4F | Table of deposition designations of Sridhar Rabindran, Ph.D. (May 9, 2023) |
| 4G | Table of deposition designations of Jeffrey Settleman, Ph.D. (May 19, 2023) |
| 4H | Table of deposition designations of Robert Smith (May 11, 2023) |
| 4I | Table of deposition designations of Raffaella Sordella, Ph.D. (Apr. 23, 2023) |
| 4J | Table of deposition designations of Keith Wilner, Ph.D. (May 5, 2023) |
| 4K | Table of deposition designations of Alvin Wong (Apr. 14, 2023) |
| 5 | Joint Trial Exhibit List |
| 6 | Wyeth's and Puma's Trial Exhibit List |
| 7 | AstraZeneca's Trial Exhibit List |
| 8 | Findings of Fact and Conclusions of Law Related to Any Bench Trial |
| 8A | AstraZeneca's Findings of Fact and Conclusions of Law Related to Any Bench Trial |
| 8B | Wyeth's and Puma's Findings of Fact and Conclusions of Law Related to Any Bench Trial |
| 9 | Proposed Voir Dire Questions |
| 10 | Proposed Preliminary Jury Instruction |
| 11 | Proposed Final Jury Instructions |
| 12 | Proposed Verdict Form |
| 12A | Wyeth's and Puma's Proposed Verdict Form |
| 12B | AstraZeneca's Proposed Verdict Form |

Plaintiff and Counterclaim-Defendant Wyeth LLC ("Wyeth"),[2] Counterclaim-Defendant

Puma Biotechnology, Inc. ("Puma"), and Defendants and Counterclaim-Plaintiffs AstraZeneca

Pharmaceuticals LP and AstraZeneca AB (collectively "AstraZeneca" or "Defendants") submit

the following Joint Pretrial Order.  *See* D.I. 363.

## I.      JURISDICTION

1.      This is an action for patent infringement arising out of the patent laws of the United

States, 35 U.S.C. §100, *et seq.*

2.      **[Wyeth's and Puma's Position:** This Court has jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.]³  **[AstraZeneca's Position:**[4] The Court

---

[2] Pursuant to the parties' stipulation in this action (*see* D.I. 21), documents, witnesses, and information in the possession, custody, or control of Pfizer, Inc. are in Plaintiff Wyeth's possession, custody, or control.

[3] **Wyeth's and Puma's Statement:** Puma told AstraZeneca during a March 21, 2024, meet and confer that it was Puma's position that Puma remains in the case as a counterclaim defendant and Puma will set forth its written arguments in its opposition due on Wednesday, April 10, 2024.

Moreover, AstraZeneca's statement that it "objects to Puma's participation at trial" is in conflict with its inclusion of Puma witnesses on its witness list.  *See* **Attachment 1B**.  AstraZeneca's statement that it "objects to . . . references to Puma as a party or licensee of the patents asserted in this case" is unsupported and contrary to evidence.  First, Puma currently remains a party to the case, so such references are to Puma as a party are proper.  Second, now (and even in the event Puma were not a party), references to Puma as a licensee are appropriate at least because the Pfizer-Puma license is relevant to a reasonable royalty for AstraZeneca's infringement.  Both parties damages experts rely on the Pfizer-Puma license agreement in their damages analysis and necessarily must discuss the terms (and therefore the parties and rights) of that agreement.

[4] **AstraZeneca's Statement:** Wyeth and Puma have purportedly reserved the right to make changes to various disclosures in this Joint Pretrial Order in the event that Puma is dismissed as a party. As of the filing of this Joint Pretrial Order, Wyeth and Puma have not provided any basis to oppose dismissal of AstraZeneca's counterclaims against Puma or for Puma to remain a party to this proceeding. Puma's refusal to be dismissed from the case prejudices AstraZeneca and its preparation for trial. AstraZeneca therefore objects to attempts by Wyeth or Puma to revise or supplement their disclosures in this Joint Pretrial Order as untimely and prejudicial to AstraZeneca. In the event, however, that Wyeth and/or Puma are permitted to revise or supplement their disclosures in this Joint Pretrial Order, AstraZeneca reserves the right to revise or supplement its disclosures in response.

held that it has subject matter jurisdiction over this action with respect to Plaintiff Wyeth. *See* D.I. 372 at 8–9. Wyeth asserts that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. The Court held that Puma lacks Article III standing and therefore dismissed Puma as a plaintiff in this case. *Id.* at 8–9. AstraZeneca subsequently moved to dismiss its counterclaims against Puma because the Court likewise lacks subject matter jurisdiction over those claims. *See* D.I. 375, 376. AstraZeneca's motion is currently pending. Because the Court lacks jurisdiction as to Puma, AstraZeneca objects to Puma's participation at trial and objects to references to Puma as a party or licensee of the patents asserted in this case (in this pretrial order or at trial).**]**

3.      Venue in this Judicial District is not disputed for the purposes of this action and is based on 28 U.S.C. §§ 1391, 1391(c)(3), and 1400(b).

## II.   CLAIMS

4.      This is a patent case.  Wyeth accuses AstraZeneca of infringing U.S. Patent Nos. 10,603,314 ("the '314 patent") and 10,596,162 ("the '162 patent") (collectively, the "Asserted Patents").

5.      Wyeth owns the '314 and '162 patents, which relate to methods for treating patients having a form of non-small cell lung cancer that is resistant to certain drugs.  Counterclaim-Defendant Puma has been granted an exclusive license under the patents for use with particular compounds.

---

As AstraZeneca has described in its witness list in **Attachment 1B**, AstraZeneca has not removed Puma witnesses from its list at this time because Wyeth and Puma have not removed all Puma witnesses (i.e., Alan Auerbach), and at the parties' April 5, 2024 meet and confer related to the Joint Pretrial Order, AstraZeneca refused to provide any answer as to whether Puma's witnesses would be withdrawn from Wyeth's witness list in the event that Puma is dismissed as a party. In addition, the Puma witnesses that remain on AstraZeneca's witness list provided 30(b)(6) testimony in this case.

6.     Wyeth contends that AstraZeneca is liable for infringing the '314 and '162 patents because AstraZeneca induces doctors and other healthcare providers to prescribe and use AstraZeneca's Tagrisso® product in a manner that infringes claims 1, 3, and 9 of the '314 patent and claim 1 of the '162 patent.  Wyeth contends that it is entitled to recover damages caused by that induced infringement.  Wyeth also contends that AstraZeneca's induced infringement is willful.

7.     AstraZeneca denies that it has infringed or is infringing the '314 and '162 patents and contends that the '314 and '162 patents are invalid. AstraZeneca also denies that its infringement has been willful and disputes that Wyeth is entitled to recover any damages.

8.     *[The parties agree that the following is not to be read to the jury:* AstraZeneca also contends that the '314 and '162 patent are not enforceable.*]*

## III.    RELIEF SOUGHT

9.     Wyeth seeks a reasonable royalty for past damages.  Wyeth expects to present the jury with the amount of past damages through December 31, 2023.  Wyeth intends to update its expert's damages calculations to reflect this timeframe after it receives the updated sales and demand information that the Court ordered AstraZeneca to provide.  *See* D.I. 374.  In the event that the jury finds that one or more claims of the Asserted Patents is infringed by AstraZeneca and not invalid, Wyeth also seeks an accounting and supplemental damages for infringing sales occurring between January 1, 2024, and entry of final judgment.  Wyeth also seeks pre-judgment interest, post-judgment interest, and ongoing royalties for any AstraZeneca infringement after judgment.  Wyeth also seeks enhanced damages pursuant to 35 U.S.C. § 284 and fees and costs pursuant to 35 U.S.C. § 285.

10.     AstraZeneca seeks a judgment declaring that the Asserted Patents are not infringed, are invalid, and are not enforceable.  AstraZeneca also seeks fees and costs pursuant to 35 U.S.C.

§ 285.  AstraZeneca also requests that the Court deny any and all relief sought by Wyeth and grant such other and further relief in law or equity as this Court deems just and proper.

11.     **[Wyeth and Puma's Position:**  Given that this section calls for the relief sought, which is in dispute (hence the need for a trial), no further language is necessary.**]  [AstraZeneca's Position:**  In the event that one or more claims of the Asserted Patents is found to be infringed by AstraZeneca and is found to be not invalid and not unenforceable, AstraZeneca disputes Wyeth's claims for monetary damages, and specifically disputes the amount of monetary damages that would be due.  In addition, in the event that damages are awarded, AstraZeneca reserves the right to object to or dispute Wyeth's request for pre-judgment interest, post-judgment interest, and ongoing royalties.]

## IV.   WITNESSES

### A.   Witness Lists

12.     Each side's list of names and addresses of all witnesses: (a) who will be called; (b) who may be called; and (c) whose deposition may be used at trial is appended hereto as **Attachment 1A (Wyeth and Puma)** and **Attachment 1B (AstraZeneca).**

13.     The parties provided a statement of any objections to witnesses identified by the opposing party in **Attachment 1A** and **Attachment 1B**.  The parties agree that inclusion of a witness on a list is not an admission that any party agrees the witness should necessarily be permitted to testify if called by an opposing party (whether live or by deposition) and does not waive the parties' objections to all or part of the witness's testimony.

14.     Subject to the following reservations, any witness not listed in **Attachment 1A** or **Attachment 1B** will be precluded from testifying absent good cause.  The parties reserve the right to revise, amend, supplement, or modify the witnesses identified in the list based on any rulings by the Court and/or to address any additional issues, arguments, evidence, or other developments

in the case.  The parties reserve the right to amend their answering/rebuttal witness list in view of events at trial or other developments, including evidentiary rulings or other rulings by the Court. In addition to the witnesses identified in **Attachment 1A** and **Attachment 1B**, the parties reserve the right to call a custodian of records should a dispute arise during trial that requires such testimony.  The parties further reserve the right to call any fact witness listed on the opposing side's witness list but not called by the opposing side to testify at trial.

15.    **[Wyeth's and Puma's Position:**[5] The parties should not be permitted to reference the presence or absence of any party's corporate representative, officer, employee, inventor, or

---

[5] **Wyeth's and Puma's Statement:**  The mere fact of a party's corporate representative, officer, employee, inventor, or other witness presence or absence does not have "any tendency to make a fact more or less probable than it would be without the evidence," and it certainly has no bearing on any "fact . . . of consequence in determining the action."  Fed. R. Evid. 401.  Therefore, such information is inadmissible.  *Id.* at 402.  AstraZeneca has not shown otherwise.  Referencing the presence or absence of individuals (particularly or generally) at trial is unfairly prejudicial, particularly provided that the case is limited to just 11 hours per side.  Moreover, any probative value of an individual's presence or absence at trial (Wyeth and Puma contend there is none), is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.  Fed. R. Evid. 403.  Worse yet, AstraZeneca wishes to maintain its ability to use this irrelevant information about any Wyeth's and Puma's corporate representative, officer, employee, inventor, or other witness while preventing Wyeth or Puma to mention the absence of Dr. Godin-Heymann, an inventor of the Asserted Patents and current AstraZeneca employee, or the presence of any other inventor(s).  This imbalanced proposal would unfairly prejudice Wyeth and Puma.  Fed. R. Evid. 403.  In fairness, no party should be able to try the empty chair.  *See also* Standing Order on Motions *in Limine*, E.D. Tex., MIL No. 25 (available at https://txed.uscourts.gov/sites/default/files/judgeFiles/8.11.23%20Patent%20Standing%20Limine%20Order.pdf).

Furthermore, Wyeth and Puma asked AstraZeneca during the parties' meet and confer Friday, April 5th, to identify the witnesses (either currently on Wyeth and Puma's list, or not currently on their list) AstraZeneca wishes to reference the absence of at trial.  AstraZeneca would not provide an answer.  Without assurances that AstraZeneca is not going to reference the absence of witnesses at trial, Wyeth and Puma are not able to further narrow its list.

Contrary to AstraZeneca's Statement below, Wyeth and Puma never entered a stipulation with AstraZeneca prior to exchanging this Joint Pretrial Order regarding referencing Dr. Godin-Heymann at trial.  In contrast, AstraZeneca raised this issue with Wyeth and Puma via email, and Wyeth and Puma invited AstraZeneca to propose suggested language for a stipulation.

other witness for any reason.  The parties should not introduce any evidence, testimony, or argument suggesting that the opposing party failed to call any witness.  The parties should not make any mention or statement of probable testimony of a witness who is absent, unavailable, or will not be called or allowed to testify live or by deposition in this case.  In short, neither party shall "try the empty chair."] [**AstraZeneca's Position:**[6] Neither side may comment on the failure to call a particular fact witness, but may comment on the lack of evidence as to any issue.]

16.     The parties agree that named inventor Nadia Godin-Heymann will not be called to testify at trial.  The parties further agree that neither side will through any argument, witness, exhibit, demonstrative, or otherwise reference or seek to introduce evidence or testimony regarding

---

AstraZeneca did not do so until March 6, 2024, the deadline for Wyeth and Puma to send AstraZeneca an initial draft of the Joint PTO.  Accordingly, Wyeth and Puma included a *revised* proposed stipulation in the draft Joint PTO *deleting* the "and/or Dr. Godin-Heymann's absence from trial" language, precisely for the reasons explained above.

[6] **AstraZeneca's Statement:** AstraZeneca cannot agree to the requested stipulation because it is premature to do so now. Wyeth and Puma have not provided reasonable notice of the witnesses that they intend to appear at trial. On Wyeth's and Puma's witness list they list witnesses as both (1) "will call" and by "deposition," or (2) "may call" and by "deposition." AstraZeneca has repeatedly asked for clarification and understands Wyeth and Puma to represent that their witnesses, may be called to testify live or may be called by deposition. Just before submission of the Joint Pretrial Order, Wyeth and Puma removed three witnesses (two Puma witnesses and one named inventor) from their list. This does not resolve AstraZeneca's concern and request for Wyeth and Puma to provide a reasonable list of the witnesses that they expect in good faith to appear at trial. For example, based on Wyeth's and Puma's current disclosures, they may call five named inventors to appear live at trial, or they may call none. Compounding the prejudice from this ambiguity and lack of disclosure, Wyeth and Puma will not agree to update their witness list until May 6, 2024 (i.e., just one week before the start of trial). *See infra* ¶ 25 & n. 10.

Moreover, AstraZeneca does not intend to "try the empty chair" as it understands the term, but AstraZeneca must be able to point out where there are failures of proof or failures to rebut certain evidence, including with testimony. AstraZeneca's proposal clarifies the bounds of what is permissible.

Dr. Godin-Heymann's employment at AstraZeneca [**AstraZeneca's Proposal:**[7] and/or Dr. Godin-Heymann's absence from trial].

### B.   Witnesses Appearing by Deposition

17.     The parties have agreed upon a disclosure schedule in Section IV.D below to resolve objections to deposition designations to be used at trial pursuant to the parties' agreement to negotiate in good faith as to the identification and exchange of designated deposition testimony to be played at trial and objections to such designated testimony closer to trial.  *See* D.I. 363 at 3 n.4.

18.     The parties provided objections to deposition testimony designated by the opposing side (including both opening and counter designations) in **Attachments 3 and 4**, described above.

19.     The parties' objection keys are provided as **Attachment 2**.

### 1.   Wyeth's and Puma's Designations

20.     Tables containing (a) listings, by page and line, of deposition testimony designated by Wyeth and Puma and counter-designated by AstraZeneca; (b) concise statements of each side's objections and bases for objections; and (c) concise statements of admissibility are attached as **Attachment 3A-3I** as indexed below.

---

[7] **AstraZeneca's Statement:** Prior to the parties' exchange of the Joint Pretrial Order, Wyeth and Puma agreed to stipulate "that neither party will call Dr. Godin-Heyman nor reference or elicit testimony regarding Dr. Godin-Heymann's employment with AstraZeneca *or her absence from trial*, then AstraZeneca can agree to exclude Dr. Godin-Heymann from its witness list." (emphasis added). Wyeth and Puma represented that they were "generally amenable" to the stipulation and did not object to any part of the requested stipulation. Specifically, Wyeth and Puma never objected that no party would reference Dr. Godin-Heymann's absence from trial. AstraZeneca relied on the parties' stipulation in preparing its Witness List as part of the pretrial exchanges and did not include Dr. Godin-Heymann on its witness list. *See* **Attachment 1B** at n.2. During preparation of the Joint Pretrial Order, however, Wyeth and Puma have refused, without any justification, to maintain the parties' stipulation with respect to the agreement to not refer to Dr. Godin-Heymann's absence from trial. Wyeth and Puma should not be permitted to reference her absence from trial in violation of the parties' stipulation.

| Designation & Objections | Witness | Statement of Admissibility of Deposition Testimony |
|---|---|---|
| **Attachment 3A** | Patrick Scott Alban, Ph.D. | FRE 801(d)(2): AstraZeneca 30(b)(6) |
| **Attachment 3B** | Darren Cross, Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3C** | M. Raymond V. Finlay, Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3D** | Serban Ghiorghiu, M.D. | FRE 801(d)(2): AstraZeneca 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3E** | Daniel Haber, M.D., Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3F** | Eunice Kwak, M.D., Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3G** | Katy Platt Miller | FRE 801(d)(2): AstraZeneca 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3H** | Raffaella Sordella, Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 3I** | Richard Ward, Ph.D. | FRE 801(d)(2): AstraZeneca 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |

## 2.    AstraZeneca's Designations

21.     Tables containing (a) listings, by page and line, of deposition testimony designated by AstraZeneca and counter-designated by Wyeth and Puma; (b) concise statements of each side's objections and bases for objections; and (c) concise statements of admissibility are attached as **Attachment 4A-4K** as indexed below.

| Designation & Objections | Witness | Statement of Admissibility of Deposition Testimony |
|---|---|---|
| **Attachment 4A** | Alan Auerbach | FRE 801(d)(2): Puma 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable to AstraZeneca |
| **Attachment 4B** | John DeYoung | FRE 801(d)(2): Wyeth/Pfizer 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4C** | Daniel Haber, M.D., Ph.D. | FRE 801(d)(2): Massachusetts General Hospital 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4D** | Douglas Hunt | FRE 801(d)(2): Puma 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable to AstraZeneca |
| **Attachment 4E** | Eunice Kwak, M.D., Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4F** | Sridhar Rabindran, Ph.D. | FRE 801(d)(2): Wyeth 30(b)(6) |
| **Attachment 4G** | Jeffrey Settleman, Ph.D. | FRE 801(d)(2): Wyeth/Pfizer 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable to AstraZeneca |
| **Attachment 4H** | Robert Smith | FRE 801(d)(2): Wyeth/Pfizer 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4I** | Raffaella Sordella, Ph.D. | FRE 804(b)(1): Declarant Unavailable |
| **Attachment 4J** | Keith Wilner, Ph.D. | FRE 801(d)(2): Wyeth/Pfizer 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable to AstraZeneca |
| **Attachment 4K** | Alvin Wong | FRE 801(d)(2): Puma 30(b)(6)<br>FRE 804(b)(1): Declarant Unavailable to AstraZeneca |

### C.    Agreed-Upon Rules and Procedures for Live Witnesses

22.    Objections to witnesses not made in this Joint Pretrial Order will be deemed waived absent a showing of good cause, except that the parties reserve the right to make objections that are dependent on the manner in which the testimony is introduced.  In addition, the parties agree that nothing in this Joint Pretrial Order prohibits or limits a party's ability to challenge, object, or seek to exclude testimony or evidence by motion *in limine*.

23.    With the exception of expert witnesses and a corporate representative for each party, the parties agree that witnesses should be prevented from hearing the testimony of other

witnesses pursuant to Federal Rules of Evidence 615, and no trial testimony shall be disclosed to such excluded witnesses until after their own testimony has been completed. All witnesses may attend opening statements.

24. Each party will provide the other parties with the name of its designated corporate representative by **6:30 p.m.[8] three days before** the first day of trial (i.e., Friday, May 10).

25. Each side will provide the other with a final list of witnesses (from the list of witnesses in **Attachment 1A** and **Attachment 1B**) that it intends to call live at the trial by [**Wyeth and Puma's Position**:[9] **Monday, May 6** no later than **6:30 p.m.**] [**AstraZeneca's Position**:[10]

---

[8] All times set forth herein are reflected in Eastern Time.

[9] **Wyeth's and Puma's Statement:** The Final Pretrial Conference is set for April 30, 2024. Wyeth and Puma believe it would be most efficient to wait until outstanding issues, including for instance motions *in limine*, are resolved at that conference before providing a final witness list. Wyeth's and Puma's proposed May 6 date is just 6 days after the Final Pretrial Conference and is a full week before the first day of trial. As Wyeth and Puma have explained in response to AstraZeneca's objections to Wyeth's and Puma's witness list, Wyeth and Puma have already narrowed their witness list so it contains 2 fewer witnesses than AstraZeneca's witness list, and, in view of AstraZeneca's refusal to stipulate not to reference the absence of witnesses at trial and AstraZeneca's refusal to stipulate as to business records from the parties' files, among other outstanding evidentiary issues, Wyeth and Puma are not able to further narrow their witness list at this time.

[10] **AstraZeneca's Statement:** Wyeth and Puma have not provided reasonable notice of the witnesses that Wyeth and Puma intend to call at trial. *See also* AstraZeneca's Statement *supra* ¶ 15 n.6; *see also* AstraZeneca's Statement in **Attachment 1A**. AstraZeneca is prejudiced by Wyeth's and Puma's refusal to provide such reasonable notice. *See, e.g.*, *Apple Inc. v. Motorola, Inc.*, C.A. No. 11-08540, D.I. 713 at *1 (N.D. Ill. Apr. 3, 2012) (ordering "a realistic list of witnesses" in advance of the pre-trial conference). Accordingly, disclosure of the witnesses expected to testify at trial should be made more than one week before the start of trial and should be made prior to the Final Pretrial Conference on April 30, 2024. To the extent there are any disputes about the witnesses to be called at trial, such disputes should be resolved at the Final Pretrial Conference, not the first day of trial. In the event that this dispute has not been resolved before the Final Pretrial Conference, AstraZeneca requests that the parties be ordered to promptly disclose updated witness lists no later than May 1, 2024. Finally, Wyeth's and Puma's Statement that their witness list contains 2 fewer witnesses that AstraZeneca's list is misleading. Wyeth and Puma have indicated that they may call up to 14 fact witnesses live.

**Monday, April 22** no later than **6:30 p.m.]**  To the extent that a witness becomes unavailable for trial, the parties agree to timely notify the other parties and supplement their witness list.  In the event a fact witness that either of the parties have identified as testifying live at trial becomes unavailable, a party, upon a showing of good cause, may seek the Court's permission to introduce that witness by deposition, as set forth below in this pretrial order.

26.     Each side will provide the other side with a list, in order of presentation, of witnesses it intends to call (live or by prior deposition) on direct examination by **6:30 p.m. three days before** those witnesses are intended to testify in Court.  For example, if a party intends to call a witness on Monday, that party shall disclose that witness's name to the opposing party no later than 6:30 p.m. on the preceding Friday.  At this same time, if the disclosure includes an expert witness, the parties will identify the subject matter expertise for which the disclosing party intends to qualify any such expert witness.  Procedures for disclosures of witnesses to testify by prior deposition are provided below in Section IV.D.

27.     Each side shall identify any objections to the witness(es) and any description of expert witness(es) qualification statement identified pursuant to the preceding paragraph by **6:30 p.m. the next day** (two days before the date that the witness(es) will testify in Court), and the parties shall meet and confer to resolve any objections at **9:30 p.m. that same day**.  If good-faith efforts to resolve the objections fail, the side objecting shall bring its objections to the Court's attention by **8:00 a.m. the next morning**—i.e., one day before the date on which the witness will be called to testify.  Objections to witnesses expected on the first day of trial (Monday) and the second day of trial (Tuesday) may be addressed by the Court before opening statements on Monday, May 13.  This paragraph applies only to the identification of live witnesses.

**D.      Agreed-Upon Rules and Procedures for Testimony by Designation**

28.      Use of deposition testimony shall be governed by the Federal Rules of Civil Procedure 32 and the Federal Rules of Evidence.

29.      Objections to deposition designations not made in this Joint Pretrial Order will be deemed waived absent a showing of good cause.  The parties agree that nothing in this Joint Pretrial Order prohibits or limits a party's ability to challenge or seek to exclude testimony or evidence by motion *in limine*.

30.      The parties agree that testimony that is affirmatively designated by a party will also be treated as testimony that is counter-designated by that party such that a party is not required to designate the same testimony affirmatively and as counter-designated testimony.

31.      The parties agree that designation of testimony on a list is not an admission that the testimony is necessarily admissible if identified by the other party to be played or read at trial and does not waive objections to all or part of the witness's designated testimony.

32.      The parties agree that, if properly disclosed on their respective witness lists, each side may call a witness by deposition in their case-in-chief even if the other side has already called that witness by deposition in its case, as long as no testimony from that particular witness is played or read, more than once at the trial.

33.      **Attachments 3 and 4** to this Joint Pretrial Order contain the universe of deposition designations, counter-designations, and objections to admission of deposition testimony currently contemplated by the parties; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.  Deposition and other testimony or statements not specifically identified in the parties' deposition designations (whether as affirmative or counter-designations) may be used at trial only for the purpose of impeachment, if otherwise competent for such purpose.

34.     The parties will continue to meet and confer in an effort to address and narrow their respective designations of prior testimony, including objections.

35.     Each side will provide the other with a list of deposition designations (from its previously designated testimony) that it intends to introduce by **6:30 p.m. three days before** the date on which designations are intended to be used in Court. **[AstraZeneca's Position:**[11] The parties should also identify whether deposition designations will be played by video or will be read into the record at this time.**]**  For example, witnesses to be called by designation on Wednesday must be disclosed by 6:30 p.m. the preceding Sunday, along with their proposed testimony.  The other side must identify any objections to the designated testimony and any counter-designations no later than **6:30 p.m. the next day** (two days before the date on which designations are intended to be used in Court).  The original designating side may identify any objections to the counters by **8:30 p.m. that same day**.  The parties shall then meet and confer as to any objections (including with respect to counter-designations) no later than **9:30 p.m. that same day**.  Any unresolved objections will be submitted to the Court by **8:00 a.m. the next morning** by the objecting party—

---

[11] **Wyeth's and Puma's Statement:** Three days before intended use is too early to disclose whether the deposition designations will be played by video or will be read into the record because the parties will not have completed their good faith narrowing of clips and objections for trial.  The parties should have the benefit of knowing the full scope of testimony that is proposed to be played to the jury before deciding whether to play by video or read into the record.  Furthermore, AstraZeneca's proposal is in conflict with the parties' agreed-upon procedure for identifying whether deposition testimony will be read into the record as set forth in paragraph 39, below.

**AstraZeneca's Statement:** Notice of how the testimony by designation will be presented to the jury must be disclosed when the witness testifying by designation is identified. Not only is it possible that the manner of presentation may impact the objections and counter-designated testimony identified by the countering party, but providing timely notice of the manner of presentation (so that it is understood between the parties during the course of exchanges) will reduce last-minute disputes or misunderstandings between the parties. Accordingly, the process of good faith narrowing is benefited, not harmed, by reasonable notice of the manner in which the designations will be presented.

i.e., one day before the date on which the designations are intended to be used in Court.  Objections to witnesses expected on the first day of trial (Monday) and the second day of trial (Tuesday) may be addressed by the Court before opening statements on Monday, May 13. The submission for unresolved objections shall include: (i) a copy of the entire proposed testimony of the witness at issue, clearly highlighting the designations (with Wyeth's and Puma's designations highlighted in yellow and AstraZeneca's designations highlighted in blue); (ii) any exhibits to be introduced with the deposition testimony if there remains a pending objection to that exhibit; and (iii) a cover letter identifying the pending objections, as well as a brief indication (no more than one sentence per objection) of the basis for objection and the offering party's response to the objection.  Failure to comply with these procedures, absent an agreement by the parties and approval of the Court, will result in waiver of the use of the testimony or waiver of objection to the use of the testimony.

36.     All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

37.     The manner of using counter-designations at trial shall be in the same manner (video versus read deposition transcripts) as that used for the designation sought to be rebutted, such that all designations and counter-designations will be played or read to the jury, as the case may be, as one consecutive segment in the order the testimony appears in the transcript.  The party calling the witness by designation shall choose the method of offering the testimony, whether by read-in or by video.

38.     If a party offers video testimony, video clips of the deposition and clip reports shall be provided to the opposing party by **8:30 p.m. one day before** the date on which the designations are intended to be used in Court.  The party offering the witness by deposition will be responsible for cutting video clips that contain both the deposition designation and counter-designations.

39.     If a party does not offer video testimony, that party need not offer video of the other party's counter-designations.  The party shall state in writing by **8:30 p.m. one day before** the date on which the designations are intended to be used in Court that the deposition will be read into the record.

40.     The party who initially proposes the use of the deposition testimony will provide the Court with an accounting of the time for each party's designations based on the parties' proportional share of lines of testimony for read-in testimony and by actual time for video testimony, so that the Court may accurately charge time to the designating parties.  The offering party will provide this accounting in writing to the other party by **8:30 p.m. one day before** the date on which the designations are intended to be used in Court.

41.     The party calling the witness shall provide the Court with two printed copies of the transcript of the designations and counter-designations that will be played.  An additional printed copy shall be provided to the court reporter.  The parties will be charged for all trial time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

42.     For each witness whose prior deposition testimony will be read or played to the jury, the offering party shall be permitted to make a brief transition statement to introduce the witness and his or her role in the litigation.  Counsel shall not be permitted to argue or comment on the evidence during transition statements.

### E.     [AstraZeneca's Position: Other Matters Related to Witnesses

43.     AstraZeneca clarifies for the record that AstraZeneca's witness Dr. P. Scott Alban testified both in his personal capacity pursuant to Wyeth's 30(b)(1) notice and as AstraZeneca's 30(b)(6) designee.  *E.g.*, Alban Tr. at 44:24-45:12 & Alban Ex. 7 (30(b)(1) Notice) (Q: And you understand that you're here to testify in your personal capacity pursuant to 30(b)(1)? A: Yes.); *see*

15

*also* Alban Ex. 8 (30(b)(6) Notice); *cf.* D.I. 372 at 41. AstraZeneca conferred with Wyeth and Puma regarding Dr. Alban's testimony and Wyeth and Puma agreed that they "do not dispute that Dr. Alban was deposed in both his personal capacity and as AstraZeneca's (30(b)(6) designee."]

## V.   EXHIBITS & DEMONSTRATIVES

### A.   Exhibit Lists

44.   The parties' Joint Trial Exhibit List is appended hereto as **Attachment 5**.[12]

45.   Wyeth's and Puma's Trial Exhibit List is appended hereto as **Attachment 6** and that list includes a column that indicates the duplicate AstraZeneca exhibit where applicable. AstraZeneca's Trial Exhibit List is appended hereto as **Attachment 7**.  Each side has set forth objections to any exhibit in the other party's exhibit list with citation to the Federal Rules of Evidence.  Subject to the reservations in this Joint Pretrial Order, exhibits not listed will be

---

[12] **Wyeth's and Puma's Statement:** Wyeth and Puma understood the Court's order at D.I. 363 at 3, to require the Joint Exhibit List to "[i]nclude all exhibits listed on both parties' exhibit lists." However, AstraZeneca refused to include those exhibits, selecting only certain exhibits to which neither party had any objections as to any use of the document.  Thus, Wyeth was unable to prepare a "Joint Trial Exhibit List" that includes all exhibits listed on both parties' exhibit lists.  To minimize the likelihood of duplicative documents being used at trial, Wyeth and Puma added a column to their exhibit list indicating which exhibits also appear on AstraZeneca's list with a different exhibit number.

**AstraZeneca's Statement:** As AstraZeneca understands the issue, there is no dispute for the Court to resolve with respect to the Joint Exhibit List. AstraZeneca did not (and does not) have the same understanding as Wyeth and Puma with respect to the requirements for the Joint Exhibit List in the Stipulation and Order (D.I. 363). AstraZeneca's understanding, consistent with typical practice including in this District, is that exhibits added to a Joint Exhibit List are exhibits to which no side objects. As proposed by Wyeth and Puma, exhibits on the Joint Exhibit List included objections by one and sometimes both parties. Thus, under Wyeth's and Puma's procedure, despite being a "Joint Exhibit," it is likely that a document on the "Joint Exhibit List," may be disputed at trial. It is not clear to AstraZeneca how the Joint Exhibit List under that procedure would be any different from the parties' respective exhibit lists. AstraZeneca does not intend to use exhibits duplicative of Wyeth's or Puma's exhibits at trial. The parties have agreed that once admitted, any exhibit "may be used equally by each party." *Infra* ¶ 55.

excluded from evidence absent a showing of good cause, unless that exhibit is used solely for impeachment.

46.     The Joint Trial Exhibit List, Wyeth's and Puma's Trial Exhibit List, and AstraZeneca's Trial Exhibit List include certain documents that the parties anticipate will be used only for bench trial issues discussed below in Section VII.

47.     The parties' objection keys are provided as **Attachment 2.**

**B.     Agreed-Upon Rules and Procedures for Exhibits**

48.     The parties agree that documents are *prima facie* genuine and authentic and have been prepared in the ordinary course of business on or about the dates that are reflected on the document if they are **[Wyeth's and Puma's Position:**[13] (a) a document produced in this case from

---

[13] **Wyeth and Puma's Statement:** This stipulation should govern party-produced documents *and* third-party documents; not just third-party documents as AstraZeneca proposes. There is very limited time for trial and it would be far more efficient for this presumption to apply to the documents from the party's own files, too. To be clear, Wyeth and Puma are only seeking that "files of any party that on its face appears to have been authored by an employee, officer, or agent of that party," be presumed as business records; not "that all party-produced documents are business records and not hearsay" as AstraZeneca notes in its statement below. Furthermore, there can be no prejudice to AstraZeneca by presuming its own qualifying documents are business records, when the parties expressly reserve the right to contest that presumption as stipulated below. (*See* ¶ 51 "The parties reserve the right with respect to individual documents to adduce proof to the contrary or to require that the offering party provide authenticating evidence or evidence the document is not a business record if the opposing party has a reasonable basis and has a good-faith belief the document is not authentic or not a business record and if an appropriate objection was made by the opposing party on the exhibit lists attached to this Order.").

During the parties' April 5th meet and confer, Wyeth and Puma asked AstraZeneca why it refused to agree to the stipulation, including as to its own documents, but AstraZeneca did not clarify or provide an alternative proposal. Nor could AstraZeneca identify which of the qualifying AstraZeneca-produced documents it believes are *not* business records. AstraZeneca also refused Wyeth's and Puma's request to schedule a follow up call to go through the exhibits to determine which of them AstraZeneca believed are not business records. Such an exercise now is *not* a waste of time or burdensome—indeed it would *save* the Court and the jury time at trial and would not take much time for the parties to accomplish now as AstraZeneca contends. For example, AstraZeneca lodged hearsay objections to 49 AstraZeneca-produced documents included on Wyeth's and Puma's exhibit list. AstraZeneca has not explained why it contends these documents are not business records, nor is it willing to tell Wyeth or Puma which of these exhibits it will

the files of any party that on its face appears to have been authored by an employee, officer, or agent of that party or (b) a document produced in this case from the following third parties: Massachusetts General Hospital d/b/a The General Hospital Corporation (documents bearing Bates prefix "MGH"), Daphne Bell (bearing Bates prefix "INV"), Eunice Kwak (bearing Bates prefix "Kwak"), Raffaella Sordella (bearing Bates prefix "Sordella"), and Sridhar Rabindran (bear Bates prefix "Rabindran").] [**AstraZeneca's Position:**[14] a document produced in this case from

---

ultimately challenge at trial. Indeed, for the previously-produced profit and loss statements that *both* parties' experts use, AstraZeneca has lodged a slew of objections, including Fed. R. Evid. 402, 403, 801, 901, and F ("foundation"). *See* Attachment 6 at PX-113, PX-115.

It is not feasible to resolve hearsay and business record objections using the parties' disclosure schedule just days before trial because Wyeth and Puma have a right to understand whether they will need to call custodians of record from AstraZeneca and need to do so now so that Wyeth and Puma can either prepare to establish each of these documents are business records with the custodians before or during trial.

Furthermore, it is not clear why AstraZeneca *will not* stipulate as to its own documents, but *will* agree to stipulate as to third party documents—other than to waste the Court's, the jury's and the parties' time. AstraZeneca served on a single third party, MGH, 57 Requests for Production that more broadly requested documents than what AstraZeneca *itself* agreed to produce in this case. Thus, any attempt by AstraZeneca to distinguish on the basis that third party documents are more likely to be business records is not well taken.

[14] **AstraZeneca's Statement:** AstraZeneca will agree to the authenticity of documents produced by the parties in this case, *see infra* ¶ 49, but will not agree to a blanket stipulation that party-produced documents are all business records and not hearsay. AstraZeneca's position is that the Federal Rules of Evidence on hearsay, as well as other evidentiary requirements apart from authenticity, continue to apply. The parties' exhibit lists include numerous party-produced documents and not all of these meet the multiple elements of Federal Rule of Evidence 803(6). Nor does Rule 803(6) state that all documents a party produces should qualify as business records. Though Wyeth and Puma have proposed going through every exhibit one-by-one to determine whether it is a business record now, such a procedure would waste time and resources and be overly burdensome relative to the minimal benefit it could produce. Instead, the parties should seek to resolve hearsay and business record objections at the same time that they resolve other objections for exhibits that will be introduced at trial according to the exchange procedures already agreed to in this Joint Pretrial Order, prior to raising with the Court. *See infra* ¶ 63.

With respect to documents produced by a third party in response to a subpoena in this case, AstraZeneca will agree to Wyeth's and Puma's requested stipulation. Importantly, there may be

the following third parties: Massachusetts General Hospital d/b/a The General Hospital Corporation (documents bearing Bates prefix "MGH"), Daphne Bell (bearing Bates prefix "INV"), Eunice Kwak (bearing Bates prefix "Kwak"), Raffaella Sordella (bearing Bates prefix "Sordella"), and Sridhar Rabindran (bear Bates prefix "Rabindran").] These documents shall be presumed to be authentic, true, and complete copies of records in the possession, custody, or control of the producing person or entity.

49.     The parties agree that documents are prima facie genuine and authentic if they are a document produced in this case from the files of any party (for the avoidance of doubt, including Pfizer) that on its face appears to have been authored by an employee, officer, or agent of that party.

50.     **[Wyeth's and Puma's Position:**[15] The documents prepared in the ordinary course of business include, but are not limited to, emails, financials, PowerPoint presentations, meeting minutes, technical reports, letters, business memos, and clinical studies.**]**   With regard to documents prepared in the ordinary course of business, in the event that a date does not appear on the face of a document, the parties agree that metadata produced with the document may be used and introduced.  The parties agree not to object on foundation, identification, and authenticity

---

no witness available to testify at trial from the third parties to provide necessary foundation, and, even where such witnesses available, AstraZeneca will agree to such a stipulation to reduce the burden on such third parties. Further, AstraZeneca maintains that Wyeth and Puma have not provided reasonable notice of the witnesses that they intend to call at trial, including most notably third-party fact witnesses. AstraZeneca will thus stipulate to the authenticity and application of Rule 803(6) for the more limited universe of third party documents in this case, in order to facilitate proper narrowing of Wyeth and Puma's witness list reasonably in advance of trial.

[15] **Wyeth and Puma's Statement:** Similar to above, the trial would be streamlined for the jury if the parties stipulated to that qualifying documents from the parties' own files are presumptively business records, and not hearsay.

**AstraZeneca's Statement:** Please see AstraZenenca's statement *supra* ¶ 48 n.14.

grounds to the admission of such business records, and agree that such documents satisfy the requirements of Rule 803(6) of the Federal Rules of Evidence.

51.     With regard to documents that the parties have stipulated are authentic and/or business records, the parties reserve the right with respect to individual documents to adduce proof to the contrary or to require that the offering party provide authenticating evidence or evidence the document is not a business record if the opposing party has a reasonable basis and has a good-faith belief the document is not authentic or not a business record and if an appropriate objection was made by the opposing party on the exhibit lists attached to this Order.  This stipulation shall not be deemed or interpreted to be a waiver of any other objections a party may have or a stipulation that any document is admissible in evidence.

52.     The parties agree that trial exhibits must be introduced through a sponsoring witness to be admitted, even if there is no objection to the exhibit.  Experts may sponsor exhibits for admission that they rely upon.  If such an exhibit is sponsored by an expert, **[Wyeth's and Puma's Position:**[16] it shall be admitted into evidence without the need for additional authentication or foundation.] **[AstraZeneca's Position:**[17] and it is scientific literature and/or a scientific publication it shall be admitted into evidence, and if it is another non-literature or publication document, it need not be separately authenticated.]  However, nothing in this Joint

---

[16] **Wyeth's and Puma's Statement:** Wyeth and Puma are attempting to fairly streamline issues and to make the admission of evidence more efficient at trial.  AstraZeneca's proposal does not do this and instead seeks only to permit admission of the documents it choses, and AstraZeneca's proposal invites confusion with the vagueness of its descriptions of categories of documents to be treated differently.

[17] **AstraZeneca's Statement:** Wyeth's and Puma's proposal would require admission of any document sponsored by an expert. This broad proposal is an effort to circumvent the Federal Rules of Evidence. AstraZeneca can agree to a more narrowed proposal as to scientific literature and publications.

Pretrial Order changes the requirements or applicability of the Federal Rules of Evidence 402 and 403.

53.     Exhibits not objected to will be received into evidence by the operation of the Joint Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness and moved into evidence as provided above.  If an exhibit is referenced during the presentation of a deposition designation, the exhibit is admitted into evidence if it is included in the joint or offering side's trial exhibit list and is not otherwise objected to.

54.     In order to reduce the number of duplicative exhibits, where a deposition excerpt refers to a document by exhibit number and that identical document is also marked as a different exhibit number, a party may substitute one exhibit or another (including where the only difference between the copies of the documents is whether it is in black and white or in color).

55.     Once admitted, subject to the Court's approval, counsel may publish exhibits to the jury without requesting to do so.  Any exhibit, once admitted, may be used equally by each party.

56.     Any party, with prior notice to the other side and the Court, may read any portion or all of any of their designations of the adverse party's discovery responses to the jury or the Court, and will be charged for the time used to do so.  **[AstraZeneca's Position:**[18] The parties

---

[18] **Wyeth's and Puma's Statement:** Reading pleadings or concise statements of fact to the jury is not proper and would be confusing.  Wyeth and Puma instead propose the parties work to agree on a stipulation of undisputed facts that may be properly read to the jury.  Wyeth and Puma have never suggested it seeks to re-dispute issues; instead, it proposes the parties use the proper means to read such evidence to the jury.

**AstraZeneca's Statement:** To the extent Wyeth and Puma have made admissions or representations on the record in this case, AstraZeneca should be able to rely on those admissions and representations at trial.  Wyeth's and Puma's proposal that the parties may agree on a stipulation of undisputed facts does not resolve the parties' dispute. While the parties may be able to further narrow the disputed facts for trial through a stipulation of undisputed facts, Wyeth and Puma should not be permitted to relitigate, or otherwise revise or shield from the jury, the record that has been created to this point in the proceedings. Moreover, the parties have not reached a

should be able to read an adverse party's pleadings or concise statements of fact to the jury or the Court.]

57.     Nothing in this Joint Pretrial Order shall be construed as a stipulation or admission that any exhibit is entitled to any weight in deciding the merits of this case.

58.     The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

59.     Each side may use an exhibit that is listed on the other side's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by any party, subject to any limitations as to its admission.

60.     The listing of a document on any exhibit list is not an admission that such document is relevant or admissible, when offered by the opposing side for the purpose that the opposing side wishes to admit the document.  Each side reserves the right to object to the relevance of any evidence offered by the other side, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

61.     The parties further agree that nothing in this Joint Pretrial Order prohibits or limits a party's ability to challenge or seek to exclude any evidence or exhibit by motion *in limine*.

62.     The parties stipulate that a duplicate of any document or photograph may be marked for identification, and, if otherwise admissible, offered and received into evidence with the same

---

stipulation of undisputed facts and AstraZeneca does not know whether Wyeth and Puma will attempt to dispute facts contrary its prior statements. There is nothing improper about reading pleadings or concise statements of facts to the jury, nor does Wyeth point to anything suggesting that it is.

force and effect as the original, subject to any and all objections as could be made to the original, and on condition that the original of any such duplicate, if within the custody or control of a party, be available for inspection at the trial upon reasonable notice.

63.     Each side will identify exhibits to be used in connection with the direct examination of each witness by **6:30 p.m. two days before** their intended use.  For any physical exhibits to be used, the side seeking to use the exhibit must make it available for inspection.  Objections will be provided no later than **6:30 p.m.  the following day** (the day before the intended use) and the parties will meet and confer regarding any unresolved objections by **9:30 p.m. that same day**.  If good-faith efforts to resolve the objections fail, the side objecting to the exhibits shall bring its objections to the Court's attention by **8:00 a.m. on the day** on which the witness will be called to testify.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

64.     On or before the first day of trial, each side will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list corresponding to their respective final exhibit lists.  Wyeth and Puma will also deliver a completed AO Form 187 exhibit list corresponding to the Joint Trial Exhibit List.

### C.     Agreed-Upon Rules and Procedures for Demonstratives

65.     The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Joint Pretrial Order.  Wyeth's and Puma's demonstrative exhibits will be identified with PDX numbers.  AstraZeneca's demonstrative exhibits will be identified with DDX numbers.

66.     Demonstratives to be used on direct examination will be exchanged pursuant to the procedures set forth below.  These provisions do not apply to demonstratives created during

testimony[19] or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.

67.     Each side will provide demonstrative exhibits including color and animations as they are intended to be used at trial to be used in connection with direct examination by **6:30 p.m. two days before** their intended use, and objections will be provided no later than **6:30 p.m. the day before** their intended use.  The parties shall then meet and confer as to any objections no later than **9:30 p.m. that same day**.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

68.     The side seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF or other electronic form labeled with the exhibit or demonstrative number.  Any animations or other dynamic content must be exchanged in native format or another format that enables the receiving side to appropriately review the content.  Exchange of large boards is not required, and these demonstrative exhibits may be exchanged in legible 8½" x 11" electronic format that allows the receiving side to appropriately review the content of the demonstrative at the same time as the PDF/electronic exhibits being exchanged.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony, and which contain no additional markings or alterations, are not required to be provided to the other side in advance of their use.

69.     If good-faith efforts to resolve objections to demonstrative exhibits fail, the objecting side shall bring its objections to the Court's attention by **8:00 a.m. on the day of** the

---

[19] Demonstratives created during testimony are limited to demonstratives that are written, drawn, or otherwise prepared by a witness while testifying, and does not include a computer-generated demonstrative, PowerPoint slide, or other demonstrative that is planned or created before testifying.

demonstrative's intended use.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative or waiver of objection to the demonstrative.

### D. Agreed-Upon Rules and Procedures for Opening Statements

70.     According to the above agreed-upon procedures for disclosing exhibits and demonstratives, the parties will exchange demonstratives and a list of exhibits to be used in opening statements by **5:00 p.m.** [**Wyeth's and Puma's Position:**[20] on **Wednesday, May 8**] [**AstraZeneca's Position:**[21] one day before the day of opening statements (i.e., Sunday, May 12)]. The parties will provide any objections to demonstratives to be used in opening statements no later than **5:00 p.m. [Wyeth's and Puma's Position: on Thursday, May 9]** [**AstraZeneca's Position:**

---

[20] **Wyeth's and Puma's Statement:** After giving further thought to how much the Court may need to address before jury selection, and given the short time before the Court will call the jury in on the first day of trial, Wyeth and Puma propose exchanging opening demonstratives and exhibits on Wednesday, May 8 so that any unresolved disputes between the parties may be identified for the Court by Friday, May 10.  This schedule will provide the Court with additional time to review any disputed material before the first day of trial and/or require the parties to arrive earlier to Court, if the Court wishes.

[21]  **AstraZeneca's Statement:** AstraZeneca's current proposal as to the exchange of demonstratives and exhibits for opening statements is the same proposal that Wyeth and Puma initially proposed in the draft Joint Pretrial Order on March 6, 2024. AstraZeneca considered and ultimately agreed to Wyeth's and Puma's proposal to disclose demonstratives and exhibits for opening statements on the day before opening statements. After AstraZeneca had already agreed to Wyeth's and Puma's proposed procedure, they changed course on April 3, 2024, moving the disclosure deadline forward five days. Disclosure in this case should follow Wyeth and Puma's original proposal, which is consistent with other cases in this District. *See, e.g.*, *Sysmex Corp. v. Beckman Coulter, Inc.*, No. 19-cv-1642, D.I. 540 at 17–18 (D. Del. May 27, 2022); *10X Genomics, Inc. v. Nanostring Techs., Inc.*, No. 21-cv-653 at 37 (D. Del. Oct. 20, 2023). At the parties April 5 meet and confer, the only justification that Wyeth and Puma offered for their belated proposal is that it would allow the parties to email the Court with any disputes by Friday, May 10. AstraZeneca, of course, is hopeful that the parties will not need to burden the Court with any disputes regarding opening statements, but in the event there are any, does not understand the advantage of emailing the disputes on Friday. Disputes regarding opening statements may be resolved by the Court before opening statements begin on Monday, May 13, with time charged against the parties as otherwise stipulated in this Joint Pretrial Order. *See infra* ¶ 73.

**that same day** one day before the day of opening statements (i.e., Sunday, May 12)**].**  The parties

shall then meet and confer as to any objections no later than **9:30 p.m. that same day**.  If the

parties cannot resolve the objections, the objecting side shall bring its objections to the Court's

attention by **9:00 a.m. on Friday, May 10**, and any unresolved issues will be addressed with the

Court before opening statements.

## VI.  TYPE AND LENGTH OF TRIAL

71.     This matter is scheduled for a five (5)-day jury trial beginning **Monday,**

**May 13, 2024**, with **trial days beginning at 8:45 a.m.**  D.I. 374 at 1.  The parties respectfully

request, subject to the Court's approval, that the first day of trial commence at 8:30 a.m., with

subsequent trial days beginning at 8:45 a.m.  Until the case is submitted to the jury for

deliberations, the **jury will be excused each day at or about 5:00 p.m.**  D.I. 30, 374.

72.     Considering the Court's procedures for counting time and considering the nature

and extent of the parties' disputes, the parties request 22 hours for jury trial presentation, 11 hours

per side, excluding the opening statements, the charge conference, and closing arguments.

Opening statements shall be limited to 30 minutes per side.  Closing arguments are limited to 1

hour per side.  D.I. 374.  Wyeth and Puma may reserve any portions of their allotted time for

closing argument for rebuttal to AstraZeneca's closing argument.

73.     Unless otherwise ordered, the parties ask that time be charged to a side for its

opening statement, direct and redirect examinations of witnesses it calls, cross-examination of

witnesses called by any other party, and its arguments on any motions for judgment as a matter of

law.  Time for arguments on objections a party raises (outside the presence of the jury) to another

party's witnesses (live or by prior designation) and exhibits and demonstrative exhibits will be

charged to the side who loses.

74.    The Courtroom Deputy will keep a running total of trial time used by counsel.  If any side uses all of its allotted trial time, the Court will terminate that side's trial presentation.

## VII.   BIFURCATION

75.    AstraZeneca also asserts an invalidity defense of indefiniteness under 35 U.S.C. § 112 and equitable defenses of waiver, and unclean hands, and AstraZeneca counterclaims for declaratory judgment of invalidity due to indefiniteness under 35 U.S.C. § 112 and unenforceability due to patent misuse of the Asserted Patents (collectively "AstraZeneca's bench trial defenses and counterclaims").  *See* Defendants' Answer and Counterclaims (D.I. 8).

76.    Because those issues are for the Court to decide (e.g., upon briefing, a hearing, and/or a subsequent bench trial), and not for the jury, the parties propose that AstraZeneca's bench trial defenses and counterclaims be bifurcated from the jury trial in accordance with Federal Rule of Civil Procedure 42(b).  *See e.g., Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987) ("Under Rule 42(b), a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management.  It may, therefore, order a trial on unenforceability separate from an infringement trial that may involve an invalidity defense."); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000) ("The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide.").  Bifurcation would economize the jury trial and avoid prejudice and juror confusion.

77.    [**Wyeth's and Puma's Position:**[22] The parties also agree that during the jury trial no party shall offer evidence relating solely to AstraZeneca's defenses and counterclaims for a bench trial.]

---

[22] **AstraZeneca's Statement:** Wyeth's and Puma's proposed stipulation is ambiguous and is not necessary. The evidence to be presented at the jury trial will be subject to the Federal Rules of Evidence and, among other requirements, must be relevant to the issues to be decided by the jury. *E.g.*, Fed. R. Evid. 402, 403.

78.     According to the parties' Stipulation and the Court's Order (D.I. 363), to the extent a separate bench trial for the bifurcated issues is required, it should be scheduled at a date after the scheduled jury trial at the Court's convenience in Delaware or Illinois.

## VIII.   PROPOSED FINDINGS AND CONCLUSIONS

79.     Proposed findings of fact and conclusions of law relating to the defenses and counterclaims identified above that are for the Court to decide are appended hereto as **Attachment 8A (AstraZeneca's) and Attachment 8B (Wyeth's and Puma's)**.

## IX.   PROPOSED VOIR DIRE QUESTIONS

80.     Pursuant to the Scheduling Order (D.I. 30) and the parties' Stipulation and the Court's Order (D.I. 363), a list of proposed voir dire questions is appended hereto as **Attachment 9**.

## X.   PROPOSED JURY INSTRUCTIONS

81.     Pursuant to the Scheduling Order (D.I. 30) and the parties' Stipulation and the Court's Order (D.I. 363), proposed Preliminary Jury Instructions are appended hereto as **Attachment 10** and proposed Final Jury Instructions are appended hereto as **Attachment 11**.  The parties' proposed Verdict Forms are appended hereto as **Attachment 12A (Wyeth's and Puma's)** and **Attachment 12B (AstraZeneca's).**

## XI.   OTHER MATTERS

### A.     Settlement

82.     The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement.  The most recent discussion occurred on April 8, 2024, via telephone conference between client representatives of Wyeth and AstraZeneca.  The parties have not yet been able to reach agreement.

### B.    Number of Jurors

83.    Subject to the Court's approval by adoption of this Order, the Court shall seat twelve jurors.

### C.    Order of Proof

84.    The parties agree that the presentation of evidence will follow the burden of proof at trial.  Following opening statements, Wyeth will first present its case on infringement and damages.  AstraZeneca may then present its response on infringement and damages along with its case-in-chief on validity.  **[Wyeth's and Puma's Position:**[23]  Wyeth and Puma may then present their response on validity.] [**AstraZeneca's Position:**[24] Wyeth and Puma may then present their

---

[23] **Wyeth and Puma's Statement:** Given the short amount of time for trial, Wyeth and Puma think it would be more efficient for the Court, the jury, and for the parties to omit Wyeth's and Puma's infringement and damages rebuttal and AstraZeneca's validity rebuttal and instead end with Wyeth's rebuttal on validity.  Wyeth's and Puma's position assures neither side has two opportunities to introduce evidence on issues on which they bear the burden of proof.  AstraZeneca undoubtedly bears the burden of proof on invalidity.  Secondary considerations of non-obviousness are a matter for Wyeth and Puma to optionally show in the context of rebutting AstraZeneca's allegations of invalidity.

[24] **AstraZeneca's Statement:** Like disclosures for opening statements above, *see supra* ¶ 70 n.21, AstraZeneca's current proposal for the order of proof is the same proposal that Wyeth and Puma initially made in the initial draft of the Joint Pretrial Order on March 6, 2024. Here again, AstraZeneca considered and ultimately agreed to a presentation of evidence wherein both parties were permitted the opportunity to provide a rebuttal for issues on which they bear the burden. Indeed, such an order of presentation is the routine order in trials in this District, *see, e.g.*, *Int'l Bus. Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, 2018 WL 3007662, at *2 (D. Del. June 15, 2018). Rebuttal is especially necessary here where Wyeth's and Puma's expert reports responding on invalidity are exceptionally lengthy, so it is not possible to meaningfully address every point that Wyeth and Puma could raise in response. Nor have Wyeth and Puma provided meaningful clarity on what fact witnesses they may call in responding to AstraZeneca's invalidity case. Indeed, there are also issues related to invalidity on which Wyeth and Puma carry a burden, but may not raise until their response to AstraZeneca's case (e.g., priority and secondary considerations). Under Wyeth's and Puma's proposal, AstraZeneca would have no opportunity to respond to Wyeth's and Puma's arguments.

Moreover, Wyeth and Puma have offered no basis that would justify a different presentation of evidence here. At the parties' April 5, 2024 meet and confer the only purported justification suggested by Wyeth and Puma was the limited trial time. But that does not explain their last-minute

response on validity and rebuttal on infringement and damages. AstraZeneca may then present its rebuttal on validity. It is not fair for Wyeth and Puma to have the last word on an issue for which AstraZeneca bears the burden of proof.]

### D.     Jury Notes and Jury Procedures

85.     The parties agree that the jurors be permitted to take handwritten notes during the presentations of the parties and that jurors be permitted to bring these notebooks and handwritten notes into the deliberation room.  The parties further propose that the jurors be instructed not to share the notebooks with each other (though they can discuss the contents of their notes) and that the notebooks be collected and destroyed after the verdict without review.

86.     The parties agree that the Federal Judicial Center's video, "The Patent Process: An Overview for Jurors," will be played to jurors during the Preliminary Jury Instructions.  *See* https://www.fjc.gov/publications/patent-process-overview-jurors.  The parties further agree that the time for playing this video will not be charged to any party.

87.     The parties further agree that the juror notebooks will include copies of the Asserted Patents.

88.     The parties agree that the jurors will be provided a chart with the Court's claim constructions at the conclusion of the testimony by the first expert witness with respect to the Court's claim construction.

89.     Wyeth and Puma will provide the juror notebooks, and will provide a sample notebook for AstraZeneca's review no later than **6:30 p.m. on Thursday, May 9**.

---

change. At the time of Wyeth's and Puma's initial proposal, the parties agreed that each side would be limited to eleven hours at trial, and so there has not been any change in the time that is available to the parties to try their case. Moreover, because the parties are time limited there are no concerns about efficiency. Wyeth and Puma may use their eleven hours in the order that they wish, but they should not be able to prevent AstraZeneca from using its eleven hours to include a rebuttal on validity. To be clear, AstraZeneca will stay within the eleven hours allotted to it.

### E.      Handling of Confidential Information at Trial

90.      The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed to protect its own confidential information or to protect the confidential information of a third party or to comply with confidentiality obligations under an agreement with a third party.  If a party makes such a request, subject to the Court's approval, the courtroom shall be cleared of any individuals not qualified under the Protective Order entered in this case.  D.I. 40.

### F.      Set-up of Electronic Equipment

91.      The parties request that the Court grant them access to the Courtroom prior to the commencement of trial, at a date and time convenient to the Court, to allow them to set up electronic and computer devices to be used during the trial.

### G.      Stipulations Regarding Facts and Evidence

92.      The parties may prepare a stipulation regarding uncontested facts for trial that will be submitted to the Court separately.

93.      The parties may prepare a stipulation regarding agreed motions *in limine* that will be submitted to the Court separately.

94.      The parties agree that, in the presence of the jury, they will not seek to introduce evidence, elicit testimony, or make attorney argument referencing the Court's order concerning the summary judgment motions or the *Daubert* motions filed in this matter.

**IT IS HEREBY ORDERED** that this Joint Pretrial Order will control the course of the trial and may not be amended except by consent of the parties, or by order of the Court to prevent manifest injustice.

Morris, Nichols, Arsht & Tunnell LLP

/s/ *Megan E. Dellinger*
_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Megan E. Dellinger (#5739)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
mdellinger@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiff/Counterclaim-Defendants*

April 9, 2024


Shaw Keller LLP

/s/ *Emily S. DiBenedetto*
_____

Karen E. Keller (#4489)
Andrew E. Russell (#5382)
Nathan R. Hoeschen (# 6232)
Emily S. DiBenedetto (# 6779)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com

*Attorneys for Defendants/Counterclaim Plaintiffs*


DATED: _____


_____
The Honorable Matthew F. Kennelly
United States District Judge