IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WYETH, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1338-MFK |
| | ) |
| ASTRAZENECA PHARMACEUTICALS | ) |
| LP and ASTRAZENECA AB, | ) |
| | ) |
| Defendants. | ) |

**RULINGS ON CERTAIN OF DEFENDANTS' MOTIONS IN LIMINE**

in this order, the Court rules on some, but not all, of the motions *in limine* filed by the defendants. On the defendants' remaining motions and the motions filed by the plaintiff, the Court has specific questions or wishes to hear argument. That will be done at the final pretrial conference set for tomorrow, April 30.

The numbered paragraphs below correspond to the numbering used in the defendants' motions.

1. **2014 acquisition proposal**. In their first motion, defendants move to bar any reference to a 2014 proposal by AstraZeneca to acquire Puma. Plaintiff agrees to the relief sought in the motion. The Court grants this motion.

2. **Pre-suit discussions**. In their second motion, defendants move to bar any reference to pre-lawsuit communications between AstraZeneca and Puma, which took place during two periods: 2016 and 2020-21. In 2016, Puma contacted AstraZeneca about licensing its patent portfolio, which evidently included the then-pending application for at least one of one of the patents in suit. Though this contact did

not result in any agreements or even, it appears, extended negotiations, this episode is relevant and admissible on the question of willful infringement, because it tends to show defendants' awareness of the patent(s).

In 2020-21, Puma contacted AstraZeneca regarding sublicensing of rights to Wyeth's intellectual property, including one or both of the patents in suit.  There were proposals that went back and forth, but no deal was concluded.  Defendants contend that nothing about this is admissible pursuant to Federal Rule of Evidence 408; they say that litigation was at least contemplated and that their discussions were conducted under an agreement that said the discussions would be governed by Rule 408.

Rule 408(a) says that evidence of offering a valuable consideration to compromise a claim, and statements or conduct during compromise negotiations about the claim, is not admissible "either to prove or disprove the validity or amount of a disputed claim" or to impeach.  Fed. R. Evid. 408(a).  This, by its terms, does not preclude evidence regarding the discussions for the purpose of showing defendants' knowledge of the patents and the possibility of infringement.  These are the primary purpose for which plaintiff says it wishes to introduce this evidence.  See Pl.'s Resp. to Defs.' Mots. In Limine at 1; *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 860 (N.D. Cal. 2019) (allowing evidence of compromise to prove notice); *Samsung Elecs. Co. v. Quanta Computer, Inc.*, No. C-00-4524, 2006 WL 2850028, at *5 (N.D. Cal. Oct. 4, 2006) (settlement negotiations admissible to show notice of the patent and the patent holder's assertion of infringement).  The Court therefore overrules defendants' motion, but as plaintiff proposes, it must omit anything regarding the proposed royalty rates.  See Pl.'s Resp. to Defs.' Mots. In Limine at 3 n.7.

Plaintiff also contends the evidence of the 2020-21 negotiations is admissible to show "commercial acquiescence," a consideration regarding obviousness that roughly translates to whether the novelty of the patent has effectively been acknowledged via licensing activity.  *See generally Securitypoint Holdings, Inc. v. United States*, 129 Fed. Cl. 25, 48 (Fed. Cl. 2016).  "[B]ut the mere fact of licensing alone may not be enough to prove a patent not obvious if it cannot also be shown that the licensees did so out of respect for the patent rather than to avoid litigation expense."  *Id.* (citing *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 316 (Fed. Cir. 1985)).  This means the context— in particular whether the communications arose from an actual or at least threatened legal claim—is likely determinative, if not on the Rule 408 question, then at least on the probative value of the communications regarding the "commercial acquiescence" issue. On this both sides have punted:  defendants say simply that "[t]here can be no dispute" that litigation was threatened or probable, offering no support; and plaintiff dismisses the point in a footnote, saying that the Court need not decide it.  Both sides should be prepared at the final pretrial conference to provide, on this point, what they failed to provide in their briefs.  The Court will then determine the admissibility of the 2020-21 evidence for this additional purpose.

    3.    **<u>Third party analyst reports</u>**.  The Court grants defendants' motion to bar reference to certain analyst reports discussing the patents in suit or related applications that were referenced in communications from Puma's CEO.  This evidence is classic hearsay, and plaintiff cites no potentially applicable exception to the hearsay rule.  The evidence is excluded—for both sides.

    5.    **<u>Pre-issuance conduct by defendant</u>**.  Defendants ask the Court to bar

reference to their conduct prior to the March 2020 issuance of the patents for the purpose of proving willful infringement and/or inducement of infringement.  The Court denies the motion.  "[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness."  *3M Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992).  The same is true on the question of inducement.  *See Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996).  Defendants' contrary authorities are either inapplicable or unpersuasive.  (The Court also notes in this regard that, as plaintiff points out, concerns in earlier cases regarding one's knowledge of pending patent applications "are no longer valid" after 1999, when the law was changed to provide for routine publication of patent applications eighteen months after the application's effective filing date.  *See WMD Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 n.4 (Fed. Cir. 2018)).

6. **Assertions that Tagrisso is a "copy" of the patents in suit**.  The Court overrules defendants' motion to bar plaintiff from contending that the accused product Tagrisso is a "copy" of the patents in suit.  This is a legitimately disputed point and appropriately a matter for argument.  One significant caveat for plaintiff, however, is that introduction of evidence or argument on this point might well open the door to other evidence that plaintiff has moved to exclude.  *See* Pl.'s Mot. In Limine No. 3 (seeking to exclude evidence of defendants' patents and patent applications).  For this reason, plaintiff should be prepared to tell the Court at the final pretrial conference whether it intends to actually offer testimony or argument on this point.

8. **Payments to expert witnesses reported on Open Payments**.  The

Court overrules defendants' request to preclude plaintiff from introducing evidence regarding payments to defendants' expert witnesses reported on the Open Payments database, which as far as the Court is aware is a government-maintained website reporting payments to medical providers by, among others, pharmaceutical companies. Evidence regarding payments from parties or others affiliated with them is a legitimate topic of cross-examination for bias, so the Court denies the motion. Defendants argue that the Open Payments site is unreliable and sometimes misattributes to an individual physician a payment that actually was made to an institution with which the physician is affiliated. But even then, a payment may be relevant to show bias, so long as the impetus for the payment involved the physician.

For these reasons, witnesses appropriately may be cross examined regarding relevant payments shown on the Open Payments site. That said, plaintiffs have failed to make the case that data from the site is *itself* independently admissible in evidence. To permit that, the party seeking to admit the data would have to lay a foundation for its admission.

9. **Alleged status of the patents in suit as "blocking" patents.** The Court overrules defendants' objection to testimony by plaintiff's infringement expert Dr. Weiss (relied upon by its damages expert Dr. Rao) referring to the patents-in-suit as "blocking patents." The Court understands this term to express the concept that an alleged infringer could not conduct its allegedly infringing activities without practicing the patent. Testimony in this regard is relevant on the question of apportionment of a damages award to the incremental value that the patented invention is claimed to have added to the infringing product. The theory offered by plaintiff's expert on this point is a legitimate

theory, so long as it is supported by the evidence.  *See, e.g., Sprint Comm'cns Co. v. Time Warner Cable, Inc.*, 255 F. Supp. 3d 1134, 1139 (D. Kan. 2017).  And the Court is persuaded that there is sufficient support in the record to allow testimony and argument along these lines.  Whether the theory actually applies here is appropriately a matter for cross-examination and presentation of contrary evidence and argument, not exclusion.  *See, e.g., Plexxicon, Inc. v. Novartis Pharms. Corp.*, No. 4:17-cv-04405, 2021 WL 97544, at *4-5  (N.D. Cal. Jan. 12, 2021).

        **11.**    **Expert testimony regarding AstraZeneca's state of mind.**  Defendants identify two places in which the reports of plaintiff's experts include opinions regarding AstraZeneca's knowledge and/or intent.  Plaintiff's expert Weiss's report includes the following statement:  "*Defendants know and intend* that the commercial manufacture, use, importation, marketing, sale, and/or offer for sale of TAGRISSO® will cause direct infringement" of a particular patent claim.  Weiss Report ¶ 129 (emphasis added).  And plaintiff's expert Hausheer's report includes the following statement:  "AstraZeneca systematically and *intentionally copied* the inventors' work, which led to the discovery and development of TAGRISSO® for use within the claimed methods."  Hausheer Report ¶ 23 (emphasis added).  Opinions regarding knowledge and intent, including those just quoted and others like them, are hereby excluded.  An expert may appropriately address the evidentiary predicate upon which a determination of knowledge or intent may be made, but none of the experts in this case have been shown to have a foundation that would enable them to appropriately render an opinion that would be helpful to the jury regarding whether the evidence shows that a person or entity had knowledge of a fact or acted willfully, intentionally, or recklessly.

## Conclusion

For the reasons described in this order, the Court grants defendants' motions *in limine* 1, 3, and 11 and denies defendants' motions *in limine* 2, 5, 6, 8, and 9. Defendants' motions 4, 7, and 10 and all of plaintiff's motions remain for determination at the final pretrial conference.

Date: April 29, 2024

_____
MATTHEW F. KENNELLY
United States District Judge