IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WYETH LLC, | ) |
|     Plaintiff/Counterclaim-Defendant, | ) **Redacted - Public Version** |
| v. | ) C.A. No. 21-1338-MFK |
| ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA AB, | ) |
|     Defendants/Counterclaim-Plaintiffs. | ) |

**DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF ORDERS GRANTING PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 1 & 3**

OF COUNSEL:
Christopher N. Sipes
Einar Stole
Megan P. Keane
Eric R. Sonnenschein
Kaveh V. Saba
Priscilla Dodson
Alexander Trzeciak
Ashley Winkler
Melissa Keech
Tobias Ma
Elaine Nguyen
Robert T. McMullen
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for AstraZeneca Pharmaceuticals LP and AstraZeneca AB*

Dated: May 10, 2024

# **TABLE OF CONTENTS**

I.　　Wyeth MIL No. 1 ................................................................................................. 1

　　　A.　The Court Should Reverse Its Order Granting Wyeth's MIL No. 1 ........................ 1

　　　B.　In the Alternative, this Court Should Clarify that Post-Priority Evidence Relevant to Written Description and Enablement of the Claimed Method of Treatment by Administration of a Unit Dosage is Admissible at Trial ................... 5

II.　　Wyeth MIL No. 3 ................................................................................................. 7

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. A | Excerpt from the Reply Expert Report of AZ's Expert Dr. Paul J. Reider (Oct. 5, 2023) ("Reider Reply Report") |
| Ex. B | Excerpts from the Transcript of Proceedings before The Honorable Matthew F. Kennelly, held on April 30, 2024 ("Apr. Hearing Tr.") |
| Ex. C | Lecia Sequist et al., *Neratinib, an Irreversible Pan-ErbB Receptor Tyrosine Kinase Inhibitor: Results of a Phase II Trial in Patients with Advanced Non-Small-Cell Lung Cancer*, 28 J. Clinical Oncology 3076 (2010) (DTX-0143) |
| Ex. D | Nadia Godin-Heymann et al., *The T790M "gatekeeper" mutation in EGFR mediates resistance to low concentrations of an irreversible EGFR inhibitor*, 7 Mol. Cancer Ther. 874 (2008) (DTX-0100) |
| Ex. E | Excerpts from the Opening Report of AZ's Expert Dr. Pasi A. Jänne (July 28, 2023) ("Jänne Opening Report") |
| Ex. F | Email from J. Michalik (May 9, 2024) |
| Ex. G | International Patent Publication No. WO 2006/084058A2 (Aug. 10, 2006) (PX-021) |
| Ex. H | U.S. Patent No. 9,732,058 (DTX-0185) |
| Ex. I | U.S. Patent No. 8,946,235 (DTX-0210) |
| Ex. J | Excerpts from the Rebuttal Report of AZ's Expert Dr. Paul J. Reider (Sept. 7, 2023) ("Reider Rebuttal Report") |

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| LR | Delaware Local Rule(s) |
| Defendants or AZ | collectively, AstraZeneca Pharmaceuticals LP and AstraZeneca AB |
| MIL(s) | Motion(s) *in Limine* |
| Plaintiff or Wyeth | Wyeth LLC |
| the AZ Patents or AZ's Patents | U.S. Patent Nos. 8,946,235, 9,732,058, and 10,183,020 (covering the Tagrisso product) |
| the '314 patent | U.S. Patent No. 10,603,314 |
| the '162 patent | U.S. Patent No. 10,596,162 |
| patents-in-suit or Wyeth's patents | '314 patent and '162 patent |
| the Asserted Claims | claims 1, 3, and 9 of the '314 patent and claim 1 of the '162 patent |
| Apr. Hearing Tr. | April 30, 2024 Hearing Transcript |
| FRE | Federal Rule(s) of Evidence |
| D.I. 121 | Claim Construction Memorandum Opinion and Order |
| D.I. 391 | Plaintiff's Brief in Support of Its MILs |
| D.I. 401 | Defendants' Opposition to Plaintiff's MILs |
| D.I. 402 | Declaration of Alexander Trzeciak in Support of Defendants' Opposition to Plaintiff's MILs |
| D.I. 419 or May 7 Order | May 7, 2024 Rulings on Remaining MILs |
| Ex. | Exhibits to Declaration of Robert T. McMullen in Support of Defendants' Motion for Reconsideration and/or Clarification of Orders Granting Plaintiff's Motions *in Limine* Nos. 1 & 3 |

# TABLE OF AUTHORITIES

Pages(s)

**Cases**

*Amgen Inc. v. Sanofi*,
  872 F.3d 1367 (Fed. Cir. 2017)..................................................................................2, 6

*Davis v. Spicer*,
  2023 WL 2126150 (D. Del. Feb. 17, 2023) (Magistrate Judge Opinion and
  Order)................................................................................................................................4

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liability
  Litig.*,
  369 F.3d 293 (3d Cir. 2004)............................................................................................4

*Leonard v. Stemtech Health Sci., Inc.*,
  981 F. Supp. 2d 273 (D. Del. 2013) (Magistrate Judge Order) ................................4

*New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*,
  2020 WL 5593928 (D. Del. Sept. 18, 2020)................................................................1

**Other Authorities**

Fed. R. Evid. 401 ...............................................................................................................5

Fed. R. Evid. 402 ...............................................................................................................5

Fed. R. Evid. 403 ......................................................................................................1, 4, 5

LR 7.1.1 ..............................................................................................................................1

LR 7.1.5 ..............................................................................................................................1

Pursuant to LR 7.1.5, AZ respectfully moves for Reconsideration and/or Clarification of the Court's Order Granting Plaintiff's MILs Nos. 1 and 3 (D.I. 419 (May 7, 2024)). As discussed more fully below, AZ files this motion because there is "a need to correct a clear error of law or fact" in those rulings. *See, e.g.*, *New Balance Athletics, Inc. v. USA New Bunren Int'l Co.*, 2020 WL 5593928, at *1 (D. Del. Sept. 18, 2020). Alternatively, with respect to Plaintiffs' MIL 1, the Court should clarify its order.[1]

## I.   WYETH MIL NO. 1

### A.   The Court Should Reverse Its Order Granting Wyeth's MIL No. 1

The Court should reverse its Order granting Wyeth's MIL No. 1, which Wyeth filed to exclude AZ's evidence "that several irreversible EGFR inhibitors that fall within the specifications of the patents-in-suit failed clinically and/or were not approved by the Food and Drug Administration for treatment of gefitinib and/or erlotinib resistant non-small cell lung cancer (NSCLC)." D.I. 419 at 2. In granting Wyeth's MIL No. 1, the Court accepted Wyeth's contentions that evidence of such clinical failures was irrelevant and subject to exclusion under FRE 403 because (1) the challenged evidence is "post-priority evidence," *i.e.*, generated after the priority date, and (2) some of the evidence related to the failure of the EGFR inhibitors to gain FDA approval. D.I. 391 at 1–2; D.I. 419 at 2–6.

The Court recognized that there "does not appear to be a rule categorically precluding post-priority date evidence on the questions of enablement or written description," but based its exclusion largely on the mistaken premise that AZ had a "total failure to explain how the challenged FDA non-approval and clinical failure is relevant and probative." D.I. 419 at 4–5. But

---

[1] Pursuant to LR 7.1.1, counsel for AZ certifies that a reasonable effort has been made to reach agreement with the opposing party on the matter set forth in this motion.

1

AZ *did* explain the relevance of such evidence, which is *highly probative* to AZ's written description and enablement defenses.

For example, the Court recognized that post-priority evidence may be admissible "to show that the patent purportedly did not disclose a representative number of species" to satisfy the written description requirement, but then mistakenly concluded that this was "not defendants' contention here—at least they don't say in their response that it is their contention." *Id.* at 4. But AZ specifically argued in its opposition that, under Federal Circuit precedent, "[e]vidence showing that a claimed genus does not disclose a representative number of species may include evidence of species that fall within the claimed genus but are not disclosed by the patent" and that "evidence of such species is likely to postdate the priority date." D.I. 401 at 3. As an example, AZ pointed to the proffered testimony of AZ's expert, Dr. Reider, as relying on post-priority art disclosing irreversible EGFR inhibitors within the scope of the claims as support for his opinion that the specification fails to describe representative species (and to enable the full scope of the claims). *Id.* at 5 (citing Ex. A (Reider Reply Report) ¶¶ 107–08 (previously submitted as D.I. 402 Ex. 5)). And the Carmi 2010 publication, which Dr. Reider relied upon for evidence that there were epoxide-containing inhibitors falling within the scope of the Asserted Claims that were neither described in nor enabled by the patents-in-suit, is precisely the sort of post-priority evidence of "species that fall within the claimed genus but are not disclosed by the patent" that should be admitted as evidence that the specification fails to disclose a representative number of species. *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1374 (Fed. Cir. 2017).

AZ also respectfully disagrees with the Court's statement that AZ made "no effort to connect up" its post-priority evidence of clinical failures, including failure to enable "a commercial product," to any "applicable defense." D.I. 419 at 4. AZ explained in its opposition that post-

2

priority evidence showing "failure of an irreversible EGFR inhibitor to achieve FDA approval or some other clinical benchmark" was probative as to whether the irreversible EGFR inhibitors "expressly identified as embodiments in the patents" or encompassed by the Asserted Claims "are capable of being administered to practice the claimed invention"—*i.e.*, to make and use it without undue experimentation. D.I. 401 at 1. As AZ explained, that is because the "asserted claims each recite a method of treating g/e resistant NSCLC in a patient by administering a unit dosage ("a predetermined quantity of active material *calculated to produce the desired therapeutic effect*") of an irreversible EGFR inhibitor." *Id*. AZ responded to the limited specific examples identified in Wyeth's motion. *See* D.I. 391 at 4. For example, AZ specifically explained how DTX-0143 and -0144 (Sequist 2010), show that HKI-272—one of the specification's three embodiments—*could not have been used* by a POSA to practice the invention, and was therefore probative "of whether the claimed inventions were enabled or adequately described as of the priority date and the amount of experimentation that would have been required to practice the claimed inventions." D.I. 401 at 4. At the pre-trial conference, AZ reiterated the relevance of the post-priority evidence of clinical failures to the case here. *E.g.*, Ex. B (Apr. Hearing Tr.) at 38:3–40:10.

Underlying the relevance of such evidence is this Court's claim construction that the Asserted Claims recite a method of treating g/e resistant NSCLC in a patient by administering a "unit dosage"—which this Court has construed to require both the intentional purpose of treating and the administration of "a predetermined quantity of active material ***calculated to produce the desired therapeutic effect*** . . . of an irreversible EGFR inhibitor." D.I. 121 (*Markman* Order) at 2, 19–20 (emphasis added). To satisfy the enablement and written description requirements, Wyeth's patents must enable a POSA reading the specification in 2005–2006 to predetermine, without undue experimentation, a dose of the irreversible EGFR inhibitors of the claims that is "calculated

3

to produce the desired therapeutic effect," and describe to a POSA that the named inventors actually invented a method of treating g/e resistance in a patient by administering the irreversible EGFR inhibitor in an amount calculated to produce such effect.

Regarding the specificity of the MIL arguments, Wyeth sought to exclude a broad class of evidence with limited individual analysis, and AZ's response was directed to the arguments presented by Wyeth. It was *Wyeth* that had "the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Davis v. Spicer*, 2023 WL 2126150, at *1 (D. Del. Feb. 17, 2023) (Magistrate Judge Opinion and Order); *Leonard v. Stemtech Health Sci., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (Magistrate Judge Order).

The Court should therefore reconsider its Order, and deny Wyeth's MIL No. 1 without prejudice to renew depending on the evidence introduced at trial. As case law in this District recognizes, "evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Leonard*, 981 F. Supp. 2d at 276 (emphasis added). As the Third Circuit explained:

> [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial–oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper.

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liability Litig.*, 369 F.3d 293, 314 (3d Cir. 2004) (internal quotations and citations omitted).

**B.     In the Alternative, this Court Should Clarify that Post-Priority Evidence Relevant to Written Description and Enablement of the Claimed Method of Treatment by Administration of a Unit Dosage is Admissible at Trial**

In the alternative, AZ respectfully requests that the Court clarify its ruling with respect to post-priority clinical failures evidence. Clarification of the Court's May 7 Order is critical because Wyeth is now attempting to use the May 7 Order to lodge new FRE 401/402 and FRE 403 objections to at least **40 exhibits** that Wyeth never previously contended should be excluded on these grounds. *See* Ex. F (Email from J. Michalik (May 9, 2024)) at 1 (proposing to lodge "approximately 40 new FRE 401/402 and FRE 403 objections" to AZ exhibits based on the Court's May 7 Order when Wyeth did not contend that those exhibits were subject to such objections when the Pre-Trial Order was filed).

The Court excluded post-priority evidence that the inhibitors of the Asserted Claims "failed clinically and/or were not approved by the Food and Drug Administration for treatment of" g/e resistant NSCLC because "clinical efficacy isn't required by the claims." D.I. 419 at 2, 6. But AZ does not understand this ruling to exclude evidence that addresses the requirements of the Asserted Claims, including, among other requirements, that the method of treatment be carried out with the intentional purpose of treating g/e resistant NSCLC in a patient by administering "a predetermined quantity of active material calculated to produce the desired therapeutic effect." D.I. 121 (*Markman* Order) at 2, 19–20.

For example, AZ believes that post-priority evidence such as Sequist 2010 and Godin-Heymann 2008 remain admissible for that purpose. Sequist 2010 reports that for HKI-272, an express embodiment in the patent specification, neither a 320 mg dose nor a 240 mg dose could be "administered . . . to produce the desired therapeutic effect" to patients with the former dose being intolerable and the latter ineffective. Ex. C (Sequist 2010) at 3081 (previously submitted as D.I. 402 Ex. 3 (Sequist 2010) at DTX-0143.6). Godin-Heymann 2008, a publication from several

5

of the named inventors, reports post-priority testing showing that the concentrations of HKI-272 used in the patents-in-suit were five-times higher than the maximum tolerated dose, meaning that dose-limiting toxicity would preclude its administration in a therapeutic amount. Ex. D (Godin-Heymann 2008) at 877 (previously submitted as D.I. 391 Ex. 24 (Godin-Heymann 2008) at DTX-0100.4). As AZ's expert opined, this evidence is directly relevant to the showing that a specific embodiment in the patent could not be administered in a predetermined amount "calculated to produce the desired therapeutic effect":

> Tellingly, when HKI-272 was tested in patients, it turned out that there was no dose calculated to achieve the desired therapeutic effect in patients with NSCLC having a T790M mutation, since the maximum tolerated dose was well below what might have been the minimum effective dose. Since no response was seen in such patients, it is not clear that there is any effective dose of HKI-272 in patients, but both the clinical study results and the inventors' later in vitro work suggest that any dose of HKI-272 that might have an effect on the cancer would be well above the maximum tolerated dose, such that administration of such a dose would not be calculated to produce the desired therapeutic effect.

Ex. E (Jänne Opening Report) ¶ 415 (previously submitted as D.I. 391 Ex. 1) (citing Sequist 2010 and Godin-Heymann 2008). This evidence is directly probative of issues central to AZ's written description and enablement defenses: does the patent specification show the named inventors invented, and enable a POSA to practice, the full scope of the claimed method, which requires administering to patients "a predetermined quantity of active material calculated to produce the desired therapeutic effect."

Moreover, the fact that such evidence post-dates the priority date is not a basis for exclusion: such evidence is not "categorically" precluded from consideration in questions of enablement or written description (D.I. 419 at 4), and the Federal Circuit has observed that probative evidence is "*likely* to postdate the priority date" on issues of enablement and written description. *Amgen*, at 1374–75 (emphasis added). And the Court's expressed concern of jury

6

confusion would not apply, as such evidence goes directly to a requirement of the Asserted Claims.

## II. WYETH MIL NO. 3

AZ respectfully requests that the Court also reconsider and reverse its order granting Wyeth's MIL No. 3, which sought to exclude evidence that AZ has patents covering the accused product. The Court concluded that the existence of the AZ Patents was "not relevant on the issue of willful infringement," and "would be significantly outweighed by the risk of the jury being confused." D.I. 419 at 9. But such evidence is highly relevant, as the rationale in the Court's decision confirms. In reconciling two Federal Circuit decisions that "came out the opposite way" on whether to exclude evidence of an accused infringer's own patent in a willfulness analysis, the Court wrote:

> The difference between these two cases (aside from the slight difference in standards of review) is that in *King Instrument*, the relevance of the defendant's patent on the question of willful infringement seems to have turned on the fact that the patent was issued over the plaintiff's patent, which had been cited as prior art, whereas in *Advanced Cardiovascular*, this was not the case.

*Id.* at 8.

*King Instrument* favors admission of AZ's Patents because here, as in *King Instrument*, the AZ Patents *were* issued by the Patent Office over a citation to Wyeth's prior art patent application—the only (immaterial) difference being that the prior art in this case was a *patent application* (WO 2006/084058), Ex. G (PX-021), cited in the prosecution of and listed on the face of two of the AZ Patents, rather than, as in *King Instrument*, an *issued* patent. *See* Ex. H (DTX-0185, U.S. Patent No. 9,732,058) at (56) References Cited; Ex. I (DTX-0210, U.S. Patent No. 8,946,235) at (56) References Cited. *See also* Ex. B (Apr. Hearing Tr.) at 43:16–19 ("[T]he *King Instrument* case[] made clear that having a patent on your own product is evidence that you are not willful[.]").

7

## **CONCLUSION**

The Court should grant AZ's motion for reconsideration and reverse its decision granting Wyeth's MIL No. 1, or in the alternative, clarify its ruling. The Court should also reconsider and reverse its ruling granting Wyeth's MIL No. 3.

|  |  |
|---|---|
| | */s/ Andrew E. Russell* |
| | Karen E. Keller (No. 4489) |
| | Andrew E. Russell (No. 5382) |
| | Nathan R. Hoeschen (No. 6232) |
| | Emily S. DiBenedetto (No. 6779) |
| OF COUNSEL: | SHAW KELLER LLP |
| Christopher N. Sipes | I.M. Pei Building |
| Einar Stole | 1105 North Market Street, 12th Floor |
| Megan P. Keane | Wilmington, DE 19801 |
| Eric R. Sonnenschein | (302) 298-0700 |
| Kaveh V. Saba | kkeller@shawkeller.com |
| Priscilla Dodson | arussell@shawkeller.com |
| Alexander Trzeciak | nhoeschen@shawkeller.com |
| Ashley Winkler | edibenedetto@shawkeller.com |
| Melissa Keech | *Attorneys for AstraZeneca* |
| Tobias Ma | *Pharmaceuticals LP and* |
| Elaine Nguyen | *AstraZeneca AB* |
| Robert T. McMullen | |
| COVINGTON & BURLING LLP | |
| One CityCenter | |
| 850 Tenth Street NW | |
| Washington, DC 20001-4956 | |
| (202) 662-6000 | |

Dated: May 10, 2024

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024, this document was served on Puma-TagrissoLitigation@jonesday.com, Wyeth-TagrissoLitigation@willkie.com, and the persons listed below in the manner indicated:

**BY EMAIL:**

Jack B. Blumenfeld
Rodger D. Smith, II
Megan E. Dellinger
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
rsmith@morrisnichols.com
mdellinger@morrisnichols.com

Steven N. Geise
Anthony M. Insogna
Meredith A. Stewart
Miguel A. Alvarez
JONES DAY
4655 Executive Drive, Suite 1500
San Diego, CA 92121-3134
(858) 314-1200
sngeise@jonesday.com
aminsogna@jonesday.com
meredithstewart@jonesday.com
miguelalvarez@jonesday.com

Sara T. Horton
Ren-How Harn
Henry C. Thomas
WILKIE FARR & GALLAGHER LLP
300 North LaSalle
Chicago, IL 60654-3406
(312) 728-9040
shorton@willkie.com
rharn@willkie.com
hthomas@wilkie.com

Daniele San Román
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
(202) 879-3939
dsanroman@jonesday.com

Alexis Adian Smith
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
(213) 489-3939
asmith@jonesday.com

Gasper J. LaRosa
Lisamarie LoGuidice
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
gjlarosa@jonesday.com
llogiudice@jonesday.com

John C. Evans, Ph.D.
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
(216) 586-3939
jevans@jonesday.com

Jason G. Winchester
Jennifer L. Swize
John M. Michalik
Bethany K. Biesenthal
Michelle B. Smit
Jeffrey S. Messing
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939
jgwinchester@jonesday.com
jswize@jonesday.com
jmichalik@jonesday.com
bbiesenthal@jonesday.com
msmit@jonesday.com
jmessing@jonesday.com

/s/ Andrew E. Russell
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for AstraZeneca Pharmaceuticals LP and AstraZeneca AB*